E-filing

1  **PETITION FOR A WRIT OF HABEAS CORPUS BY A PERSON IN STATE CUSTODY**

2  Name  RICHARDS, Daniel Albert

   (Last)        (First)        (Initial)

3

   Prisoner Number  E-00575

4

   Institutional Address  CTF- P.O. Box 689 / East Dorm 8-Up,

5

   Soledad, CA. 93960-0689

6

7  **UNITED STATES DISTRICT COURT**
   **NORTHERN DISTRICT OF CALIFORNIA**

8  Daniel Richards                          )

   (Enter the full name of plaintiff in this action.)    )

9                    CV    08    2651    )

              vs.                          )   Case No. _____

10                                         )   (To be provided by the clerk of court)

    Ben Curry, Warden                      )

11  _____        )   **PETITION FOR A WRIT**

                                           )   **OF HABEAS CORPUS  (PR)**

12  _____        )

                                           )

13  _____        )

                                           )

14  (Enter the full name of respondent(s) or jailor in this action)  )

15

16              <u>Read Comments Carefully Before Filling In</u>

17  <u>When and Where to File</u>

18       You should file in the Northern District if you were convicted and sentenced in one of these

19  counties: Alameda, Contra Costa, Del Norte, Humboldt, Lake, Marin, Mendocino, Monterey, Napa,

20  San Benito, Santa Clara, Santa Cruz, San Francisco, San Mateo and Sonoma. You should also file in

21  this district if you are challenging the manner in which your sentence is being executed, such as loss of

22  good time credits, and you are confined in one of these counties. Habeas L.R. 2254-3(a).

23       If you are challenging your conviction or sentence and you were <u>not</u> convicted and sentenced in

24  one of the above-named fifteen counties, your petition will likely be transferred to the United States

25  District Court for the district in which the state court that convicted and sentenced you is located. If

26  you are challenging the execution of your sentence and you are not in prison in one of these counties,

27  your petition will likely be transferred to the district court for the district that includes the institution

28  where you are confined. Habeas L.R. 2254-3(b).

PET. FOR WRIT OF HAB. CORPUS        - 1 -

1  <u>Who to Name as Respondent</u>

2      You must name the person in whose actual custody you are. This usually means the Warden or

3  jailor. Do not name the State of California, a city, a county or the superior court of the county in which

4  you are imprisoned or by whom you were convicted and sentenced. These are not proper

5  respondents.

6      If you are not presently in custody pursuant to the state judgment against which you seek relief

7  but may be subject to such custody in the future (e.g., detainers), you must name the person in whose

8  custody you are now <u>and</u> the Attorney General of the state in which the judgment you seek to attack

9  was entered.

10  <u>A. INFORMATION ABOUT YOUR CONVICTION AND SENTENCE</u>

11      1. What sentence are you challenging in this petition?

12          (a)    Name and location of court that imposed sentence (for example; Alameda

13          County Superior Court, Oakland):

14          <u>Los Angeles Co. Sup.Ct.    Los Angeles, CA.</u>

15          Court              Location

16          (b)    Case number, if known <u>  A-958631  </u>

17          (c)    Date and terms of sentence <u>07-17-88 / 15 Yrs. to Life</u>

18          (d)    Are you now in custody serving this term? (Custody means being in jail, on

19          parole or probation, etc.)        Yes <u>XX</u>    No <u>   </u>

20          Where?

21          Name of Institution: <u>Correctional Training Facility</u>

22          Address: <u>P.O. Box 689 , Soledad, CA. 93960-0689</u>

23      2. For what crime were you given this sentence? (If your petition challenges a sentence for

24  more than one crime, list each crime separately using Penal Code numbers if known. If you are

25  challenging more than one sentence, you should file a different petition for each sentence.)

26  <u>2nd Degree Murder, P.C. §187</u>

27  <u> </u>

28  <u> </u>

3. Did you have any of the following?

    Arraignment:                      Yes _XX_    No _____

    Preliminary Hearing:          Yes _XX_    No _____

    Motion to Suppress:         Yes _____    No _____

4. How did you plead?

    Guilty _____    Not Guilty _XX_    Nolo Contendere _____

    Any other plea (specify) _____

5. If you went to trial, what kind of trial did you have?

    Jury _XX_    Judge alone _____    Judge alone on a transcript _____

6. Did you testify at your trial?           Yes _XX_    No _____

7. Did you have an attorney at the following proceedings:

    (a)    Arraignment             Yes _XX_    No _____

    (b)    Preliminary hearing      Yes _XX_    No _____

    (c)    Time of plea            Yes _XX_    No _____

    (d)    Trial                  Yes _XX_    No _____

    (e)    Sentencing             Yes _XX_    No _____

    (f)    Appeal                Yes _____    No _____

    (g)    Other post-conviction proceeding    Yes _____    No _____

8. Did you appeal your conviction?        Yes _____    No _XX_

    (a)    If you did, to what court(s) did you appeal?

           Court of Appeal          Yes _____    No _____

           Year: _____    Result: _____

           Supreme Court of California    Yes _____    No _____

           Year: _____    Result: _____

           Any other court           Yes _____    No _____

           Year: _____    Result: _____

    (b)    If you appealed, were the grounds the same as those that you are raising in this

petition?                                      Yes _____    No_____

(c)    Was there an opinion?                   Yes _____    No_____

(d)    Did you seek permission to file a late appeal under Rule 31(a)?

                                               Yes _____    No_____

If you did, give the name of the court and the result:

_____

_____

9. Other than appeals, have you previously filed any petitions, applications or motions with respect to

this conviction in any court, state or federal?    Yes XX _____    No_____

[Note: If you previously filed a petition for a writ of habeas corpus in federal court that

challenged the same conviction you are challenging now and if that petition was denied or dismissed

with prejudice, you must first file a motion in the United States Court of Appeals for the Ninth Circuit

for an order authorizing the district court to consider this petition. You may not file a second or

subsequent federal habeas petition without first obtaining such an order from the Ninth Circuit. 28

U.S.C. §§ 2244(b).]

(a)    If you sought relief in any proceeding other than an appeal, answer the following

        questions for each proceeding. Attach extra paper if you need more space.

I.     Name of Court: U.S. District Ct., Northern Dist.Cal.

        Type of Proceeding: _____

        Grounds raised (Be brief but specific):

        a. Due process violation by board of parole heargs

        b. Due process violation by board of parole heargs

        c. Due process violation by board of parole heargs

        d. _____

        Result: Waiting decision. _____ Date of Result:_____

II.    Name of Court: _____

        Type of Proceeding: _____

        Grounds raised (Be brief but specific):

PET. FOR WRIT OF HAB. CORPUS          - 4 -

1        a._____

2        b._____

3        c._____

4        d._____

5        Result: _____ Date of Result:_____

6    III.  Name of Court: _____

7        Type of Proceeding: _____

8        Grounds raised (Be brief but specific):

9        a._____

10       b._____

11       c._____

12       d._____

13       Result: _____ Date of Result:_____

14    IV.  Name of Court: _____

15       Type of Proceeding: _____

16       Grounds raised (Be brief but specific):

17       a._____

18       b._____

19       c._____

20       d._____

21       Result: _____ Date of Result:_____

22   (b)    Is any petition, appeal or other post-conviction proceeding now pending in any court?

23                                         Yes _____   No_____

24       Name and location of court: _____

25 **B. GROUNDS FOR RELIEF**

26    State briefly every reason that you believe you are being confined unlawfully. Give facts to

27 support each claim. For example, what legal right or privilege were you denied? What happened?

28 Who made the error? Avoid legal arguments with numerous case citations. Attach extra paper if you

PET. FOR WRIT OF HAB. CORPUS    - 5 -

1  need more space. Answer the same questions for each claim.

2  [Note: You must present ALL your claims in your first federal habeas petition. Subsequent

3  petitions may be dismissed without review on the merits. 28 U.S.C. §§ 2244(b); McCleskey v. Zant,

4  499 U.S. 467, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (1991).]

5  Claim One: See attached PETITION FOR WRIT OF HABEAS CORPUS.

6

7  Supporting Facts: See attached PETITIOON FOR WRIT OF HABEAS CORP.

8

9

10

11  Claim Two: See attached PETITION FOR WRIT OF AHBEAS CORPUS

12

13  Supporting Facts: See attached PETITION...

14

15

16

17  Claim Three: See attached PETITION FOR WRIT OF HABEAS CORPUS

18

19  Supporting Facts: See attached PETITION ...

20

21

22

23  If any of these grounds was not previously presented to any other court, state briefly which

24  grounds were not presented and why:

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS        - 6 -

1    List, by name and citation only, any cases that you think are close factually to yours so that they

2   are an example of the error you believe occurred in your case. Do not discuss the holding or reasoning

3   of these cases:

4   Hayward v. Marshall, 512 F.3d (2008), Thomas v. Brown, 513

5   F.Supp.2d, 1124, 1136 (N.D. Cal. 2006), Martin v. Marshall,

6   431 F.Supp.2d, 1038, 1049 (N.D.Cal.2006)Pirtle v. Bd.Pri son,
    2007, WL1140817 (E.D.Cal.)

7   Do you have an attorney for this petition?                    Yes____    No  XX

8   If you do, give the name and address of your attorney:

9   _____

10   WHEREFORE, petitioner prays that the Court grant petitioner relief to which s/he may be entitled in

11  this proceeding.  I verify under penalty of perjury that the foregoing is true and correct.

12

13  Executed on   5-18-08                    Daniel Richardo

14              Date                              Signature of Petitioner

15

16

17

18

19

20  (Rev. 6/02)

21

22

23

24

25

26

27

28

PET. FOR WRIT OF HAB. CORPUS          - 7 -

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA

**INSTRUCTIONS FOR PRISONER'S
IN FORMA PAUPERIS APPLICATION**

You must submit to the court a completed Prisoner's In Forma Pauperis Application if you are unable to pay the entire filing fee at the time you file your complaint or petition. Your application must include copies of the prisoner trust account statement showing transactions for the last six months and a certificate of funds in prisoner's account, signed by an authorized officer of the institution.

**A.    Non-habeas Civil Actions**

Effective April 9, 2006, the filing fee for any civil action other than a habeas is $350.00. Even if you are granted leave to proceed in forma pauperis, you must still pay the full amount of the court's filing fee, but the fee will be paid in several installments. 28 U.S.C. § 1915.

You must pay an initial partial filing fee of 20 percent of the greater of (a) the average monthly deposits to your account for the 6-month period immediately before the complaint was filed or (b) the average monthly balance in your account for the 6-month period immediately before the complaint was filed. The court will use the information provided on the certificate of funds and the trust account statement to determine the filing fee immediately due and will send instructions to you and the prison trust account office for payment if in forma pauperis status is granted.

After the initial partial filing fee is paid, your prison's trust account office will forward to the court each month 20 percent of the most recent month's income to your prison trust account, to the extent the account balance exceeds ten dollars ($10.00). Monthly payments will be required until the full filing fee is paid. If you have no funds over ten dollars ($10.00) in your account, you will not be required to pay part of the filing fee that month.

**If your application to proceed in forma pauperis is granted, you will be liable for the full $350.00 filing fee even if your civil action is dismissed. That means the court will continue to collect payments until the entire filing fee is paid. However, if you do not submit this completed application the action will be dismissed without prejudice and the filing fee will not be collected.**

**B.    Habeas Actions**

The filing fee for a habeas action is $5.00. If you are granted leave to proceed in forma pauperis you will not be required to pay any portion of this fee. If you are not granted leave to proceed in forma pauperis you must pay the fee in one payment and not in installments. **If you use a habeas form to file a non-habeas civil action, you will be required to pay the $350.00 filing fee applicable to all non-habeas civil actions.**

IFP APPLI.-PRISONER (Rev. 2/05)

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | )<br>) | |
|---|---|---|
| Plaintiff, | )<br>)<br>) | CASE NO. _____ |
| vs. | )<br>) | **PRISONER'S** |
| | )<br>) | **APPLICATION TO PROCEED** |
| | )<br>) | **IN FORMA PAUPERIS** |
| Defendant. | )<br>) | |

I, _____, declare, under penalty of perjury that I am the plaintiff in the above entitled case and that the information I offer throughout this application is true and correct. I offer this application in support of my request to proceed without being required to prepay the full amount of fees, costs or give security. I state that because of my poverty I am unable to pay the costs of this action or give security, and that I believe that I am entitled to relief.

In support of this application, I provide the following information:

1.    Are you presently employed? Yes _____ No _____

If your answer is "yes," state both your gross and net salary or wages per month, and give the name and address of your employer:

Gross: _____    Net: _____

Employer: _____

_____

1    Complete all applicable questions in the proper blank spaces. If you need additional space to
     answer a question, you may attach additional blank pages. Make clear the question to which any such
2    continued answer refers.

3    Only one sentence or conviction may be challenged in a single petition. If you challenge more
     than one, you must do so by separate petitions.

4

V.    **After Petition Is Filed**

5

6    You will be notified as soon as the court issues an order. It is your responsibility to keep the
     court informed of any changes of address to ensure that you receive court orders. Failure to do so may
7    result in dismissal of your suit.

8    VI.    **Inquiries And Copying Requests**

9    Because of the large volume of cases filed by inmates in this court and limited court resources,
     the court will not answer inquiries concerning the status of your case or provide copies of documents,
     except at a charge of fifty cents ($0.50) per page. You must therefore keep copies of all documents
10   submitted to the court for your own records.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1   If the answer is "no," state the date of last employment and the amount of the gross and net

2   salary and wages per month which you received.  (If you are imprisoned, specify the last

3   place of employment prior to imprisonment.)

4   _____

5   _____

6   _____

7   2.     Have you received, within the past twelve (12) months, any money from any of the

8   following sources:

9        a.    Business, Profession or           Yes ____ No ____

10           self employment

11        b.    Income from stocks, bonds,       Yes ____ No ____

12           or royalties?

13        c.    Rent payments?               Yes ____ No ____

14        d.    Pensions, annuities, or          Yes ____ No ____

15           life insurance payments?

16        e.    Federal or State welfare payments,   Yes ____ No ____

17           Social Security or other govern-

18           ment source?

19   If the answer is "yes" to any of the above, describe each source of money and state the amount

20   received from each.

21   _____

22   _____

23   3.     Are you married?               Yes ____ No ____

24   Spouse's Full Name: _____

25   Spouse's Place of Employment: _____

26   Spouse's Monthly Salary, Wages or Income:

27   Gross $_____ Net $_____

28   4.    a.     List amount you contribute to your spouse's support:$ _____

b.    List the persons other than your spouse who are dependent upon you for support and indicate how much you contribute toward their support. (NOTE: For minor children, list only their initials and ages. DO NOT INCLUDE THEIR NAMES.).

_____

_____

5.    Do you own or are you buying a home?          Yes _____ No _____

Estimated Market Value: $_____ Amount of Mortgage: $_____

6.    Do you own an automobile?          Yes _____ No _____

Make _____ Year _____ Model _____

Is it financed? Yes _____ No _____ If so, Total due: $_____

Monthly Payment: $ _____

7.    Do you have a bank account? Yes _____ No _____ (Do not include account numbers.)

Name(s) and address(es) of bank: _____

_____

Present balance(s): $ _____

Do you own any cash? Yes _____ No _____ Amount: $ _____

Do you have any other assets? (If "yes," provide a description of each asset and its estimated market value.)   Yes _____ No _____

_____

8.    What are your monthly expenses?

Rent: $ _____ Utilities: _____

Food: $ _____ Clothing: _____

Charge Accounts:

| Name of Account | Monthly Payment | Total Owed on This Acct. |
|---|---|---|
| _____ | $ _____ | $ _____ |
| _____ | $ _____ | $ _____ |
| _____ | $ _____ | $ _____ 9.  Do |

1  you have any other debts? (List current obligations, indicating amounts and to whom they are

2  payable  Do not include account numbers.)

3  _____

4  _____

5  10.     Does the complaint which you are seeking to file raise claims that have been presented

6  in other lawsuits?   Yes ____ No ____

7  Please list the case name(s) and number(s) of the prior lawsuit(s), and the name of the court in

8  which they were filed.

9  _____

10  _____

11        I consent to prison officials withdrawing from my trust account and paying to the court

12  the initial partial filing fee and all installment payments required by the court.

13        I declare under the penalty of perjury that the foregoing is true and correct and

14  understand that a false statement herein may result in the dismissal of my claims.

15

16  _____          _____

17        DATE                          SIGNATURE OF APPLICANT

18

19

20

21

22

23

24

25

26

27

28

1

2                                                        Case Number: _____

3

4

5

6

7

8

9                          **CERTIFICATE OF FUNDS**

10                                       **IN**

11                          **PRISONER'S ACCOUNT**

12

13          I certify that attached hereto is a true and correct copy of the prisoner's trust account

14   statement showing transactions of _____ for the last six months

15   at

16                                   [prisoner name]

17   _____ where (s)he is confined.

18              [name of institution]

19          I further certify that the average deposits each month to this prisoner's account for the

20   most recent 6-month period were $ _____ and the average balance in the prisoner's

21   account each month for the most recent 6-month period was $_____.

22

23   Dated:_____           _____

24                                   [Authorized officer of the institution]

25

26

27

28

- 5 -

Court of Appeal, Second Appellate District, Div. 5 - No. B204259
**S160793**

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

In re DANIEL RICHARDS on Habeas Corpus

The petition for review is denied.

George, C.J., was absent and did not participate.

SUPREME COURT
**FILED**

APR 1 6 2008

Frederick K. Ohlrich Clerk

---

Deputy

**WERDEGAR**

---

Acting Chief Justice

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

**COURT OF APPEAL - SECOND DIST.**
**F I L E D**

JAN 3 1 2008

JOSEPH A. LANE                Clerk

**D. NOLAN**                Deputy Clerk

| | |
|---|---|
| In re | B204259 |
| DANIEL RICHARDS | (Super. Ct. No. BH004255) |
| on | (Steven R. Van Sicklen, Judge) |
| Habeas Corpus. | **O R D E R** |

THE COURT:

The court has read and considered the petition for writ of habeas corpus, filed December 10, 2007. The petition is denied. The record submitted reflects some evidence to support the challenged decision. (*In re Dannenberg* (2005) 34 Cal.4th 1061, 1071, 1080; *In re Rosenkrantz* (2002) 29 Cal.4th 616, 664-665.)

_____     _____     _____
TURNER, P.J.             ARMSTRONG, J.             MOSK, J.

Daniel Richards
CDC:E-00575
Correctional Training Facility
P.O. Box 689
Soledad, CA 93960-0689

Case Number B204259
Division 5

In re DANIEL RICHARDS on Habeas Corpus.

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

**DEPT 100**

| Date: | NOVEMBER 13, 2007 | | | |
|---|---|---|---|---|
| Honorable: | STEVEN R. VAN SICKLEN | Judge | A. ALDANA        . | Deputy Clerk |
| | NONE | Bailiff | NONE | Reporter |

<table>
<tr><td></td><td colspan="2" align="center">(Parties and Counsel checked if present)</td></tr>
<tr><td>BH004255<br>In re,<br>DANIEL A. RICHARDS,<br>      Petitioner,<br>On Habeas Corpus</td><td>Counsel for Petitioner:<br><br>Counsel for Respondent:</td><td></td></tr>
</table>

Nature of Proceeding: ORDER RE: PETITION FOR WRIT OF HABEAS CORPUS

The Court has read and considered the Petition for Writ of Habeas Corpus filed on September 14, 2006 by the Petitioner. Having independently reviewed the record, giving deference to the broad discretion of the Board of Parole Hearings ("Board") in parole matters, the Court concludes that the record contains "some evidence" to support the determination that the Petitioner presents an unreasonable risk of danger to society and is, therefore, not suitable for release on parole. See Cal. Code Reg. Tit. 15, §2402; *In re Rosenkrantz* (2002) 29 Cal.4th 616, 667.

The Petitioner was received in the Department of Corrections on November 7, 1988 after a conviction for murder in the second degree. He was sentenced to 15 years to life. His minimum parole eligibility date was October 10, 1997.

The record reflects that on September 6, 1987, the Petitioner and some accomplices approached the victim and his brother on the street. A fight ensued and witnesses testified that the Petitioner repeatedly hit the victim in the head with a bat. The victim fell to the ground, bleeding, and the Petitioner and his accomplices fled. The victim died nine days later at a hospital. The Petitioner claims that the victim and his brother attempted to rob him and that the victim stabbed him in the hand. He also claims that his accomplices ran over to intervene and he ran into a nearby house. The Petitioner maintains that he was in the house when the victim was hit with the bat and did not commit the murder.

1

# *SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES*
DEPT 100

| Date: | NOVEMBER 13, 2007 | | | |
|---|---|---|---|---|
| Honorable: | STEVEN R. VAN SICKLEN | Judge | A. ALDANA | Deputy Clerk |
| | NONE | Bailiff | NONE | Reporter |

|  | (Parties and Counsel checked if present) |
|---|---|
| BH004255<br>In re,<br>DANIEL A. RICHARDS,<br>Petitioner,<br>On Habeas Corpus | Counsel for Petitioner:<br><br>Counsel for Respondent: |

The Board found the Petitioner unsuitable for parole after a parole consideration hearing held on May 2, 2006. The Petitioner was denied parole for one year. The Board concluded that the Petitioner was unsuitable for parole and would pose an unreasonable risk of danger to society and a threat to public safety. The Board based its decision primarily upon his commitment offense.

The Court finds that there is some evidence to support the Board's finding that the commitment offense demonstrated an exceptionally callous disregard for human suffering. Cal. Code Regs., tit. 15, §2402, subd. (c)(1)(D). The victim was hit with fists, kicked, and beaten with a metal bat. The beating continued even after he fell to the ground. This prolonged infliction of pain and suffering was more violent than is ordinarily seen in a second-degree murder. Therefore, the murder demonstrated an exceptionally callous disregard for human suffering. See *In re Scott* (2004) 119 Cal.App.4th 971, 892.

The Court finds that there is no evidence to support the Board's finding that the Petitioner's motive was very trivial in relation to the offense. Cal. Code Regs., tit. 15, §2402, subd. (c)(1)(E). The Appellate Court opinion's facts, which were referenced by the Board, did not supply a possible motive for the offense. The Petitioner claims he was being attacked when his accomplices began to beat the victim and his brother. If the Petitioner's version is to be believed, the victim provoked him and posed a threat of harm to him at the time of the offense and, thus, his motive was not significantly more trivial than those that conventionally drive people to commit murder, as required. See *Scott, supra,* 119 Cal.App.4th at 893. As there is no other evidence on the record regarding the motive for the

2

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES
DEPT 100

| Date: | NOVEMBER 13, 2007 | | | |
|---|---|---|---|---|
| Honorable: | STEVEN R. VAN SICKLEN | Judge | A. ALDANA | Deputy Clerk |
| | NONE | Bailiff | NONE | Reporter |

| | | (Parties and Counsel checked if present) |
|---|---|---|
| | BH004255 | |
| | In re, | |
| | DANIEL A. RICHARDS, | Counsel for Petitioner: |
| | Petitioner, | |
| | | Counsel for Respondent: |
| | On Habeas Corpus | |

offense, there is no evidence to support the Board's finding that the motive was very trivial in relation to the offense.

The Board also considered the Petitioner's failure to upgrade vocationally and his failure to admit to participating in beating the victim to death. Where guilt is uncontested, a Petitioner's version of events may be evidence that he lacks remorse. See *In re McClendon* (2004) 113 Cal.App.4th 315, 322. However, the Board may not require the Petitioner to admit guilt. Penal Code §5011. The Board's repeated requests that the Petitioner admit to participating in the offense were improper. However, the Board could conclude that the Petitioner lacked sufficient remorse.

The Board also considered the Petitioner's post-conviction gains, however, they still concluded that the Petitioner would pose an unreasonable threat to public safety. Penal Code §3041(b). The Board's decision may be upheld, despite flaws in its findings, if it is clear it would have reached the same decision even absent the errors. See *In re Dannenberg* (2005) 34 Cal.4th 1061, 1100. Here, it is clear that the Board would have denied parole because the offense demonstrated an exceptionally callous disregard for human suffering and because the Board determined that the Petitioner needs additional programming. The Court finds that there is some evidence to support this determination.

Accordingly, the petition is denied.

3

Minutes Entered
11/13/07
County Clerk

## *SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES*

DEPT 100

| Date: | NOVEMBER 13, 2007 | | | |
|---|---|---|---|---|
| Honorable: | STEVEN R. VAN SICKLEN | Judge | A. ALDANA | Deputy Clerk |
| | ·NONE | Bailiff | NONE | Reporter |

(Parties and Counsel checked if present)

BH004255

In re,
DANIEL A. RICHARDS,                      Counsel for Petitioner:

            Petitioner,
                              Counsel for Respondent:

On Habeas Corpus

A true copy of this minute order is sent via U.S. Mail to the following parties:

Daniel A. Richards
E-00575
Correctional Training Facility
P.O. Box 689
Soledad, California 93960-0689

Department of Justice- State of California
Office of the Attorney General
110 West A Street, Suite 1100
San Diego, California 92101
Attn: Ms. Cynthia Lumely

4

Minutes Entered
11/13/07
County Clerk

| | |
|---|---|
| **SUPERIOR COURT OF CALIFORNIA**<br>**COUNTY OF LOS ANGELES** | Reserved for Clerk's File Stamp<br>**FILED**<br>LOS ANGELES SUPERIOR COURT |
| COURTHOUSE ADDRESS:<br>Clara Shortridge Foltz Criminal Justice Center<br>210 West Temple Street<br>Los Angeles, CA 90012 | NOV 2 1 2007 |
| PLAINTIFF/PETITIONER:<br><br>DANIEL A. RICHARDS | BY _____<br>DEPUTY |
| | CASE NUMBER: |
| **CLERK'S CERTIFICATE OF MAILING**<br>CCP, § 1013(a)<br>Cal. Rules of Court, rule 2(a)(1) | BH004255 |

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that this date I served:

☐ Order Extending Time        ☑ Order re: Writ of Habeas Corpus Denied
☐ Order to Show Cause          ☐ Order
☐ Order for Informal Response    ☐ Order re:
☐ Order for Supplemental Pleading   ☐ Copy of Petition for Writ of Habeas Corpus for the
                                       Attorney General

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to the cause. I served this document by placing true copies in envelopes addressed as shown below and then by sealing and placing them for collection; stamping or metering with first-class, prepaid postage; and mailing on the date stated below, in the United States mail at Los Angeles County, California, following standard court practices.

November 21, 2007
DATED AND DEPOSITED

JOHN A. CLARKE, Executive Officer/Clerk

By: _____, Clerk
Alexandre J. Aldana

Daniel A. Richards
E-00575
Correctional Training Facility
P.O. Box 689
Soledad, California 93960-0689

Department of Justice- State of California
Office of the Attorney General
110 West A Street, Suite 1100
San Diego, California 92101
Attn: Ms. Cynthia Lumely

| SUPERIOR COURT OF CALIFORNIA<br>COUNTY OF LOS ANGELES | Reserved for Clerk's File Stamp<br>**CONFORMED COPY**<br>OF ORIGINAL FILED<br>Los Angeles Superior Court |
|---|---|
| COURTHOUSE ADDRESS:<br>Clara Shortridge Foltz Criminal Justice Center<br>210 West Temple Street<br>Los Angeles, CA 90012 | MAY 0 1 2007 |
| PLAINTIFF/PETITIONER:<br><br>DANIEL ALBERT RICHARDS | John A. Clarke, Executive Officer/Clerk<br><br>By_____, Deputy |
| **CLERK'S CERTIFICATE OF MAILING**<br>CCP, § 1013(a)<br>Cal. Rules of Court, rule 2(a)(1) | CASE NUMBER:<br><br>BH004255 |

I, the below-named Executive Officer/Clerk of the above-entitled court, do hereby certify that I am not a party to the cause herein, and that this date I served:

☐ Order Extending Time      ☒ Order re: Writ of Habeas Corpus
☐ Order to Show Cause      ☐ Order
☐ Order for Informal Response      ☐ Order re:
☐ Order for Supplemental Pleading      ☐ Copy of

I certify that the following is true and correct: I am the clerk of the above-named court and not a party to the cause. I served this document by placing true copies in envelopes addressed as shown below and then by sealing and placing them for collection; stamping or metering with first-class, prepaid postage; and mailing on the date stated below, in the United States mail at Los Angeles County, California, following standard court practices.

May 1, 2007
DATED AND DEPOSITED

JOHN A. CLARKE, Executive Officer/Clerk

By: _____, Clerk
         Joseph M. Pulido

Daniel Albert Richards
E-00575
Correctional Training Facility
P.O. Box 689
Soledad, CA 93960-0689

Department of Justice
Office of the Attorney General of the State of California
110 West A Street, Suite 1100
San Diego, CA 92186-9961
Attn: Ms. Cynthia Lumely

## *SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES*

**DEPT 100**

| Date: | APRIL 19, 2007 | | | |
|---|---|---|---|---|
| Honorable: | STEVEN R. VAN SICKLEN | Judge | J. PULIDO | Deputy Clerk |
| | NONE | Bailiff | NONE | Reporter |

|  |
|---|
| (Parties and Counsel checked if present) |

| | |
|---|---|
| BH 004255 | |
| In re, | |
| DANIEL A. RICHARDS, | Counsel for Petitioner: |
| Petitioner, | |
| On Habeas Corpus | Counsel for Respondent: |

Nature of Proceedings: ORDER RE: WRIT OF HABEAS CORPUS

The Court acknowledges the receipt of the petitioner's Writ of Habeas Corpus (herein "petition") on September 14, 2006.

A review of the petition reveals that the petition has not been served on the responding party. (Penal Code, § 1475) The Warden, who is the respondent, is represented in parole suitability matters by the Office of the Attorney General and must be served with any and all papers filed in this matter. (Id; See also, *In re Scott* (1994) 27 Cal. App. 4th 946; *People vs. Romero* (1994) 8 Cal. 4th 728 [custodian has a due process right to notice and an opportunity to be heard.] )

Petitioner is ordered to lodge a complete copy of the petition, along with all exhibits, and a copy of this minute order, directly to: Clara Shortridge Foltz Criminal Justice Center, Department 100, 210 West Temple Street, Los Angeles, California 90012. After receipt, the clerk will serve the Office of the Attorney General with the lodged petition. In the event petitioner fails to lodge a complete copy of the petition with this Court within 60 days of receipt of this order, the petition will be dismissed.

Furthermore, if an Order to Show Cause issues, petitioner will be required to mail an additional copy of his petition to the Court for service on counsel if one is appointed.

In light of the above, the Court extends time to rule on this matter. After a copy of the complete petition is lodged by petitioner and served on respondent by the clerk, the Court will rule on the matter within 60 days of that date, unless the Court finds it necessary to further extend ruling on the matter. (Cal. Rules of Court, rule 4.551(h).)

The clerk is directed to give notice to petitioner and the Office of the Attorney General.

The court order is signed and filed this date.

A true copy of this minute order is sent via U.S. Mail to the following parties:

1

| Minutes Entered |
|---|
| 04-19-07 |
| County Clerk |

## *SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES*

DEPT 100

| Date: | APRIL 19, 2007 | | | |
|---|---|---|---|---|
| Honorable: | STEVEN R. VAN SICKLEN | Judge | J. PULIDO | Deputy Clerk |
| | NONE | Bailiff | NONE | Reporter |

(Parties and Counsel checked if present)

BH 004255
In re,
DANIEL A. RICHARDS,
   Petitioner,
On Habeas Corpus

Counsel for Petitioner:

Counsel for Respondent:

Daniel Albert Richards
E-00575
Correctional Training Facility
P.O. Box 689
Soledad, CA 93960-0689

Department of Justice
Office of the Attorney General of the State of California
110 West A Street, Suite 1100
San Diego, CA 92186-9961
Attn: Ms. Cynthia Lumely

THE DOCUMENT TO WHICH THIS CERTIFICATE IS
ATTACHED IS A FULL, TRUE, AND CORRECT COPY
OF THE ORIGINAL ON FILE AND OF RECORD IN
MY OFFICE.

ATTEST _____ MAY 0 1 2007

JOHN A. CLARKE, Executive Officer/Clerk of the
Superior Court of the State of California for the County
of Los Angeles.
By _____ , Deputy

JOSEPH M. PULIDO, S.C.C.
293219



2

| Minutes Entered |
|---|
| 04-19-07 |
| County Clerk |

# TABLE OF CONTENTS

Title/Caption

Index . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Table of Authorities . . . . . . . . . . . . . . . . . . . . . . . . . . .

PETITION FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

QUESTIONS PRESENTED . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

NECESSITY FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

GROUND ONE:

THE BOARD FINDING OF UNSUITABILITY AND REFUSAL OF THE GRANTING OF PAROLE VIOLATED THE PETITIONER'S RIGHT TO DUE PROCESS AND DEPRIVED HIM OF HIS FEDERALLY PROTECTED LIBERTY INTEREST WHEN THE BOARD DENIED PETITIONER A PAROLE GRANT WITHOUT ANY RELIABLE EVIDENCE OR "SOME EVIDENCE", IN VIOLATION OF THE 5TH AND 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

A. THE BOARD DID NOT MEET THE BURDEN OF PROOF THAT PETITIONER POSES AN "UNREASONABLE RISK" OF THREAT TO PUBLIC SAFETY IF RELEASED ON PAROLE. THE DECISION WAS WITHOUT EVIDENCE AND WAS ARBITRARY AND CAPRICIOUS VIOLATING FUNDAMENTAL DUE PROCESS.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

GROUND TWO:

THE BOARD VIOLATES DUE PROCESS BY REPEATEDLY RELYING ON THE UNCHANGING FACTS OF THE CRIME IN THE FACE OF CLEAR EVIDENCE OF REHABILITATION, & BY MAKING RECOMMENDATIONS OF WHAT TO DO TO BE FOUND SUITABLE AT EACH HEARING. A FINDING OF EGREGIOUSNESS IS BARRED BY THE INMATE'S COMPLIANCE WITH THOSE AGREED TERMS.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

A. CONTINUED RELIANCE ON THE UNCHANGING FACTS OF THE CRIME VIOLATES DUE PROCESS.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . .

B. JUDICIAL OVERSIGHT IS CRITICAL TO SAFEGUARD THE UNDERLYING PURPOSE OF CALIFORNIA'S PAROLE SYSTEM AND THE LIBERTY INTERESTS OF INMATES.

1   THE ESSENCE OF THE PAROLE SYSTEM IS THE RE-ENTRY OF
    PRISONERS WHO NO LONGER POSE A PUBLIC DANGER.
2                                   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

3   C. PRISONERS HAVE A CONSTITUTIONAL LIBERTY INTEREST IN
    PAROLE DECISIONS.
4                                   . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

5   <u>PRAYER FOR RELIEF</u>                  . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

6

7                          **EXHIBITS**

8   Exhibit "A": Superior Court          County Petition For Writ Of
                 Habeas Corpus Decision
9
    Exhibit "B": Fifth District Court Of Appeals Petition For Writ Of
10               Habeas Corpus Decision

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1                              TABLE OF AUTHORITIES

2    Citation/Name/Title

3    Blakely v. Washington
         ____ U.S. ____ DJDAR 7581
4                                              . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

5    Biggs v. Terhune
     334 F.3d 910, 916-917 (9th Cir. 2003)
6                                              . . . . . .

7    Edwards v. Balisok
     (1997) 520 U.S. 641, at 648,
8                                              . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

9    In re Ramirez
     (2001) 94 Cal.App.4th 549, at 564-565
10                                             . . . . . . . . . . . . . . . . . .

11   In re Caswell
     92 Cal.App.4th, 1017, 1029
12                                             . . . . . . . . . . . . . . . . . . . . . . . . . . . .

13   People v. Dubon
     90 Cal.App.4th 949, 952 (2001)
14                                             . . . . . . . . . . . . . . . . . . . . . . . . . . . .

15   Charlton v. Federal Trade Comm.
     543 F.2d 903-907, 908 (D.C. Cir. 1976)
16                                             . . . . . . . . . . . . . . . . . . . . . . . . . . . .

17   In re Smith
     109 Cal.App.4th 489 (2003)
18                                             . . . . . . . . . . . . . . . . . . . . . . . . . . . .

19   McQuillion v. Duncan
     306 F.3d 901 (9th Cir. 2002)
20                                             . . . . . . . . . . . . . . . . . . . . . . . . . . .

21   U.S. v. Guagliardo
     275 F.3d 868-872 (9th Cir. 2002)
22                                             . . . . . . . . . . . . . . . . . . . . . . . . . . .

23   Graynet v. City of Rockford
     408 U.S. 104, 108-109 (1979)
24                                             . . . . . . . . . . . . . . . . . . . . . . . . . . . .

25   Irons v. Warden
     358 F.Supp.2d 936 (E.D. Cal 2005)
26                                             . . . . . . . . . . . . . . . . . . . . . . . . . . .

27   In re Minnis
     (1972) 7 Cal.3d 639, 643
28                                             . . . . . . . . . . . . . . . . . . . . . . . . .

1       POINTS AND AUTHORITIES

2    Name/Title

3    In re Bramble
     (1947) 31 Cal.2d 43, 51 [6] 187 P.2d 411
4                                                . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

5    People v. Stuart
     (1956) 47 Cal.2d 167, 175 [7] 302 P.2d, 5, 55 A.L.R.2d 705
6                                                . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

7    People v. Smith
     (1955) 44 Cal.2d 77, 79 [2] 279 P.2d 33
8                                                . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

9    In re McVickers
     (1946) 29 Cal. 2d 264, 278, 176 P.2d 40
10                                               . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

11   People v. Valentine
     (1946) 28 Cal.2d 121, 143 [20] 159 P.2d 1
12                                               . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

13   People v. Ralph
     (1944) Cal.2d 575, 581 [2] 150 P.2d 401
14                                               . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

15   Biggs v. Terhune
     (9th Cir. 2003) 334 F.3d 910, 914, 915,916
16                                               . . . . . . . . . .

17   In re Ramirez
     (2001) 94 Cal.App.4th 549, 564-565, 571
18                                               . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

19   Edward v. Balisok
     (1997) 520 U.S. 541, 648
20                                               . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

21   In re Caswell
     92 Cal.App.4th 1017, 1029
22                                               . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

23   People v. Dubon
     90 Cal.App.4th, 949, 952 (2001)
24                                               . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

25   Charlton v. Federal Trade Comm.
     543 F.2d 903-907, 908 (D.C. Cir. 1976)
26                                               . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

27   McQuillion v. Duncan
     306 F.3d 901-910, (9th Cir. 2002)
28                                               . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

1        <u>POINTS AND AUTHORITIES</u> (continued)

2    <u>Name/Title</u>

3    In re Smith
     109 Cal.App.4th 489 (2003)
4                              . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

5    Kentucky Dept. of Corrections v. Thompson
     490 U.S. 454, 459-460 (1989)
6                              . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

7    Board of Pardons v. Allen
     (1987) 482 U.S. 369, 376-78
8                              . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

9    Greenholtz v. Inmates of Neb. Penal & Correctional Complex
     (1979) 442 U.S.1 11-12
10                             . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

11   U.S. v. Guagliardo
     275 F.3d 868-872, (9th Cir. 2002)
12                             . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

13   Graynet v. City of Rockford
     408 U.S. 104, 108-109, (1972)
14                             . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

15   Irons v. Warden
     358 F.Supp.2d 936 (E.D. Cal. 2005)
16                             . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

17   In re Scott
     Cal.Rptr.3d at 919-920, 133 Cal.App.4th at 594-595
18                             . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

19   Shaputis
     37 Cal.Rptr.3d at 335
20                             . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

21   In re Rosenkrantz
     29 Cal.4th at 654-661
22                             . . . . . . . . . . . . . . . . . . . . . . . . . . . .

23   In re Smith
     114 Cal.App.4th 343, 370, 372
24                             . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

25   Caswell v. Calderon
     363 F.3d 832, 389 (9th Cir.2004)
26                             . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

27   Scott
     119 Cal.4th at 899
28                             . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

POINTS AND AUTHORITIES (continued)

Name/Title

Scott
133 Cal.App.4th at 595, 34 Cal.Rptr.3d at 919-920
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Superintendent v. Hill
472 U.S. 445, 455-457 (1985)
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

In re Minnis
(1972) 7 Cal.3d 639, 643, n.2
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

People v. Morse
(1964) 60 Cal.2d 631, 643, n.8
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Masoner
2004 WL1080177 *1-2
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Bair
2005 WL2219220 *12 n.3
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Williams v. State of New York
(1949) 337 U.S. 241, 247
. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

CCR, Title 15, Division 2,
    §2000(b)(49)                . . . . . . . . . . . . . . . . . . . . . . . . . . . .
    §2000(b)(62)(90)            . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
    §2402                       . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
    §2402(a)(b)                 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Penal Codes
    §3041                       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
    §3041(a)                    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .
    §3041(b)                    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Evidence Code
    §115                        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

California Constitution, Article V
    §8(b)                       . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

IN THE SUPREME COURT OF THE STATE OF CALIFORNIA

In Re                          )        No.
                               )
                               )        Crim _____
                               )
On Habeas Corpus               )
_____)        Case No.
                                        Fifth Appellat District Court of
                                        Appeals Case No.

## PETITION FOR REVIEW

TO THE HONORABLE RONALD M. GEORGE, CHIEF JUSTICE, AND TO THE HONORABLE ASSOCIATE JUSTICES OF THE SUPREME COURT OF THE STATE OF CALIFORNIA.

## QUESTIONS PRESENTED

1. Is the Board of Parole Hearings violating the petitioner's state and federal due process rights when parole suitability determinations are not supported by "some evidence", having the necessary federally defined indicia of reliability and was the "some evidence" standard correctly applied in this case?

2. Can the California Board of Parole Hearings deprive a prisoner of their federally protected liberty interest by denying parole based on the gravity, i.e., seriousness of their commitment offense after they served the specified Penal Code §3041(a)/CCR. Title 15, §§2282 or 2403(c), Uniform Base Term for the gravity (circumstances) of their crime, when the prisoner has been disciplinary free for a sufficiently lengthy period, has participated in rehabilitation type programs while in prison has an overall positive prison program, minimal or no prior criminal conduct (convictions) of an assaultive nature, and positive CDC Counselor and psychological evaluations.

3. Can the Board of Parole Hearings ignore the United States Supreme Court mandates of Blakely v. Washington, (2004) ____ U.S. ____ DJDAR 7581, and other cases and punish a prisoner by redefining

their offense as particularly egregious and therefore including crime elements which define it as one more serious or of higher degree than found by a jury or agreed at plea, and continue violating a petitioner's state and federal right to due process?

## NECESSITY FOR REVIEW

A grant of review and resolution of these issues by this court are necessary to secure uniformity of decision and to settle important questions of law. The need for uniformity of decision is demonstrated by a comparison of this case with the factually similar In re Ramirez, (2002) 94 Cal.App.4th, 549 and Biggs v. Terhune (9th Cir. 2003) 334 F.3d 910, adn Blakely v. Washington (2004) supra, which resulted in court findings opposite to that in petitioner's case. Petitioner respectfully submits that viewing these cases together demonstrates the lack of uniformity in application of the due process standard and that the decision in the instant case conflicts with the recently announced federal due process standards delineated in Biggs v. Terhune, supra, and Blakely v. Washington, supra. This provides this court with an opportunity to refine the meaning of the "particularly egregious" standard found in In re Ramirez, supra, and In re Rosenkrantz, (2002) 29 Cal.4th 616, 656, 683 and the California parole scheme, or does the Board's repeated denial of parole during that period to substantially over 90% of appearing inmates mathematically reflect their factual historical bias against parole depriving appearing inmates of the federally protected liberty interest.

Further, this case provides the court with an opportunity to determine if the Board can punitively base a decision to deny parole on prior [remote in time] behavior not reflected by a prisoner's

current and directly long term history, precluding its use to deny parole in accordance with federal "some evidence" and due process standards.

In summary, petitioner respectfully submits that in this case "some evidence" having the necessary state and federal indicia of reliability does not support each of the Board's findings as required by the United States Constitution, Fifth and Fourteenth Amendments, the California Constitution, Article I, §15, and numerous state and federal case rulings including In re Mark Smith (2003) 109 Cal.App.4th 489, Biggs v. Terhune, supra, violating his state and federal constitutional right to due process.

///

///                                    Respectfully submitted,


                                       _____
                                       Daniel Richards, E-00575
                                       Petitioner in Pro Per

Dated:   February 8, 2008.

INTRODUCTION

With this petition, petitioner seeks to provide guidance regarding the California Supreme Court's rulings in In re Rosenkrantz and In re Dannenberg, to ensure they are applied in accordance with fundamental notions of Due process and meaningful judicial review.

The California Supreme Court has repeatedly recognized that judicial review of parole decisions is critical to safeguarding the constitutional and statutory rights of California inmates. The court made clear in Rosenkrantz that, although the Board of Prison Terms (hereafter referred to as Board of Parole Hearings or Board) enjoy broad discretion with respect to parole decisions, such discretion is strictly regulated by the statutory framework and must accord with due process of law. Indeed, the Rosenkrantz court specifically and expressly ,rejected the state's argument that the factual basis of parole decisions is not subject to any substantive judicial review, a holding recently echoed by Dannenberg. The Dannenberg, majority - in rejecting the dissent's suggestion that it's opinion, permitted pro forma parole denials insulated from effective judicial review - reaffirmed both that the Board must apply detailed standards in it's parole determinations, and that such determinations are subject to meaningful judicial oversight.

Although both Rosenkrantz and Dannenberg thus affirm the importance of judicial review of the Board's parole decisions, the decisions provide less than clear guidance as to the proper application of the "some evidence" standard articulated in both decisions. Of particular concern is the Danneberg court's brief discussion in dicta of the "commitment offense" factor, which can improperly be read as granting to the Board the ability to deny

Name   Daniel Albert Richards

Address  Correctional Training Facility

      P.O. Box 689 / East Sorm 8-Up

      Soledad, CA. 93960-0689

CDC or ID Number  E-00575

<div align="center">

LOS ANGELES COUNTY SUPERIOR COURT

STATE OF CALIFORNIA

*(Court)*

</div>

| | |
|---|---|
| DANIEL ALBERT RICHARDS<br>Petitioner<br><br>        vs.<br><br>Ben Curry, Warden (A)<br>Respondent | **PETITION FOR WRIT OF HABEAS CORPUS**<br><br>No. _____<br>*(To be supplied by the Clerk of the Court)* |

<div align="center">

## INSTRUCTIONS — READ CAREFULLY

</div>

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Page one of six

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court?  [XX]XYes. If yes, continue with number 13.  [ ] No. If no, skip to number 15.

13. a. (1) Name of court:  (See Exhibits F,G, & H.)

    (2) Nature of proceeding (for example, "habeas corpus petition")   Writ of Habeas Corpus.

    (3) Issues raised: (a)  DUE PROCESS VIOLATION BY BOARD OF PRISON TERMS.

    (b) _____

    (4) Result (Attach order or explain why unavailable):   DENIED

    (5) Date of decision:   March 22, 2006.

  b. (1) Name of court: _____

    (2) Nature of proceeding: _____

    (3) Issues raised: (a) _____

    (b) _____

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

  c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

_____

_____

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

_____

_____

16. Are you presently represented by counsel?  [ ] Yes.   [XXX] No. If yes, state the attorney's name and address, if known:

_____

17. Do you have any petition, appeal, or other matter pending in any court?  [ ] Yes.  [ ] No. If yes, explain:
Petition for Writ of Habeas corpus in the United States District Court,

Northern District of California.

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

_____

_____

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date:  Sep-14-2006

▶ _Daniel Richards_
(SIGNATURE OF PETITIONER)

MC-275 (Rev January 1, 1999)              PETITION FOR WRIT OF HABEAS CORPUS.              Page six of six

Name   Daniel Albert Richards

Address   Correctional Training Facility

P.O. Box 689 / East Sorm 8-Up

Soledad, CA. 93960-0689

CDC or ID Number   E-00575

LOS ANGELES COUNTY SUPERIOR COURT

STATE OF CALIFORNIA

*(Court)*

| DANIEL ALBERT RICHARDS | **PETITION FOR WRIT OF HABEAS CORPUS** |

Petitioner

vs.                          No. _____

Ben Curry, Warden (A)       *(To be supplied by the Clerk of the Court)*

Respondent

## INSTRUCTIONS — READ CAREFULLY

- **If you are challenging an order of commitment or a criminal conviction and are filing this petition in the Superior Court, you should file it in the county that made the order.**

- **If you are challenging the conditions of your confinement and are filing this petition in the Superior Court, you should file it in the county in which you are confined.**

- Read the entire form *before* answering any questions.

- This petition must be clearly handwritten in ink or typed. You should exercise care to make sure all answers are true and correct. Because the petition includes a verification, the making of a statement that you know is false may result in a conviction for perjury.

- Answer all applicable questions in the proper spaces. If you need additional space, add an extra page and indicate that your answer is "continued on additional page."

- If you are filing this petition in the Superior Court, you need file only the original unless local rules require additional copies. Many courts require more copies.

- If you are filing this petition in the Court of Appeal, file the original and four copies.

- If you are filing this petition in the California Supreme Court, file the original and thirteen copies.

- Notify the Clerk of the Court in writing if you change your address after filing your petition.

- In most cases, the law requires service of a copy of the petition on the district attorney, city attorney, or city prosecutor. See Penal Code section 1475 and Government Code section 72193. You may serve the copy by mail.

Approved by the Judicial Council of California for use under Rules 56.5 and 201(h)(1) of the California Rules of Court [as amended effective January 1, 1999]. Subsequent amendments to Rule 44(b) may change the number of copies to be furnished the Supreme Court and Court of Appeal.

Form Approved by the
Judicial Council of California
**PETITION FOR WRIT OF HABEAS CORPUS**
Penal Code, § 1473 et seq.;
Cal. Rules of Court, rules 56.5, 201(h)

This petition concerns:

    ☐ A conviction        ☒☒☒ Parole

    ☐ A sentence          ☐ Credits

    ☐ Jail or prison conditions     ☐ Prison discipline

    ☒☒☒ Other (specify): DUE PROCESS VIOLATION BY BOARD OF PAROLE HEARINGS.

I. Your name: DANIEL ALBERT RICHARDS

2. Where are you incarcerated? Correctional Training Fac., Soledad, CA.,, Monterey,Co.

3. Why are you in custody? ☒☒☒ Criminal Conviction    ☐ Civil Commitment

*Answer subdivisions a. through i. to the best of your ability.*

a. State reason for civil commitment or, if criminal conviction, state nature of offense and enhancements (for example, "robbery with use of a deadly weapon").

    Second Degree Murder

b. Penal or other code sections: Penal Code §187, Second Degree Murder

c. Name and location of sentencing or committing court: Los Angeles County Superior Court,

    Los Angeles, California.

d. Case number: A-958631

e. Date convicted or committed: 09-06-87

f. Date sentenced: 07-17-88

g. Length of sentence: 15 Years to Life

h. When do you expect to be released? Unknown

i. Were you represented by counsel in the trial court? ☒☒☒ Yes.    ☐ No. If yes, state the attorney's name and address:

    J.Yost, Pvt.

4. What was the LAST plea you entered? *(check one)*

☒☒☒ Not guilty   ☐ Guilty   ☐ Nolo Contendere   ☐ Other: _____

5. If you pleaded not guilty, what kind of trial did you have?

☒☒☒ Jury   ☐ Judge without a jury   ☐ Submitted on transcript   ☐ Awaiting trial

6. GROUNDS FOR RELIEF

Ground 1: State briefly the ground on which you base your claim for relief. For example, "the trial court imposed an illegal enhancement." *(If you have additional grounds for relief, use a separate page for each ground. State ground 2 on page four. For additional grounds, make copies of page four and number the additional grounds in order.)*

DUE PROCESS VIOLATION BY BOARD OF PAROLE HEARINGS.

a. Supporting facts:

Tell your story briefly without citing cases or law. If you are challenging the legality of your conviction, describe the facts upon which your conviction is based. *If necessary, attach additional pages.* CAUTION: You must state facts, not conclusions. For example, if you are claiming incompetence of counsel you must state facts specifically setting forth what your attorney did or failed to do and how that affected your trial. Failure to allege sufficient facts will result in the denial of your petition. (See *In re Swain* (1949) 34 Cal.2d 300, 304.) A rule of thumb to follow is: *who did exactly what* to violate your rights at what time *(when)* or place *(where)*. *(If available, attach declarations, relevant records, transcripts, or other documents supporting your claim.)*

(See attached Writ of Habeas Corpus)

b. Supporting cases, rules, or other authority (optional):

*(Briefly discuss, or list by name and citation, the cases or other authorities that you think are relevant to your claim. If necessary, attach an extra page.)*

(See attached Writ of Habeas Corpus)

7  Ground 2 or Ground _____ (if applicable):

DUE PROCESS VIOLATION BY BOARD OF PAROLE HEARINGS.

a. Supporting facts:

(See attached Writ of Habeas Corpus)

b. Supporting cases, rules, or other authority:

(See attached Writ of Habeas Corpus)

8. Did you appeal from the conviction, sentence, or commitment?   ☐ Yes.  ☒☒ No.    If yes, give the following information:

   a. Name of court ("Court of Appeal" or "Appellate Dept. of Superior Court"):

   _____

   b. Result: _____    c. Date of decision: _____

   d. Case number or citation of opinion, if known: _____

   e. Issues raised: (1) _____

      (2) _____

      (3) _____

   f. Were you represented by counsel on appeal?   ☐ Yes.  ☐ No.  If yes, state the attorney's name and address, if known:

   _____

9. Did you seek review in the California Supreme Court?  ☐ Yes.  ☐ No.    If yes, give the following information:

   a. Result: _____    b. Date of decision: _____

   c. Case number or citation of opinion, if known: _____

   d. Issues raised: (1) _____

      (2) _____

      (3) _____

10. If your petition makes a claim regarding your conviction, sentence, or commitment that you or your attorney did not make on appeal,
    explain why the claim was not made on appeal:

    _____

    _____

11. Administrative Review:

    a. If your petition concerns conditions of confinement or other claims for which there are administrative remedies, failure to exhaust
    administrative remedies may result in the denial of your petition, even if it is otherwise meritorious. (See *In re Muszalski* (1975)
    52 Cal.App.3d 500 [125 Cal.Rptr. 286].) Explain what administrative review you sought or explain why you did not seek such
    review:

       No Administrative remedies exist save for Writ of Habeas Corpus

       as of May 17, 2004.

    _____

    _____

    _____

    _____

    _____

    _____

    b. Did you seek the highest level of administrative review available?   ☐ Yes.   ☐ No.
    *Attach documents that show you have exhausted your administrative remedies.*

12. Other than direct appeal, have you filed any other petitions, applications, or motions with respect to this conviction, commitment, or issue in any court?  [XX]Yes. If yes, continue with number 13.  [ ] No. If no, skip to number 15.

13. a. (1) Name of court:  (See Exhibits F,G, & H.)

    (2) Nature of proceeding (for example: "habeas corpus petition"):  Writ of Habeas Corpus.

    (3) Issues raised: (a)  DUE PROCESS VIOLATION BY BOARD OF PRISON TERMS.

      (b) _____

    (4) Result (Attach order or explain why unavailable):  DENIED

    (5) Date of decision:  March 22, 2006.

  b. (1) Name of court: _____

    (2) Nature of proceeding: _____

    (3) Issues raised: (a) _____

      (b) _____

    (4) Result (Attach order or explain why unavailable): _____

    (5) Date of decision: _____

  c. For additional prior petitions, applications, or motions, provide the same information on a separate page.

14. If any of the courts listed in number 13 held a hearing, state name of court, date of hearing, nature of hearing, and result:

15. Explain any delay in the discovery of the claimed grounds for relief and in raising the claims in this petition. (See In re Swain (1949) 34 Cal.2d 300, 304.)

16. Are you presently represented by counsel?  [ ] Yes.  [XX] No. If yes, state the attorney's name and address, if known:

17. Do you have any petition, appeal, or other matter pending in any court?  [ ] Yes.  [ ] No. If yes, explain:
Petition for Writ of Habeas corpus in the United States District Court,

Northern District of California.

18. If this petition might lawfully have been made to a lower court, state the circumstances justifying an application to this court:

I, the undersigned, say: I am the petitioner in this action. I declare under penalty of perjury under the laws of the State of California that the foregoing allegations and statements are true and correct, except as to matters that are stated on my information and belief, and as to those matters, I believe them to be true.

Date:  Sep-14-2006

                ▸ Daniel Richards
                          (SIGNATURE OF PETITIONER)

# CONTENTS

TOPIC                                                                          Pages

Index . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . i,ii

POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . iii,iv,v

GROUND ONE:

    THE BOARD FINDING OF UNSUITABILITY AND REFUSAL OF THE GRANTING OF PAROLE VIOLATED THE PETITIONER'S RIGHT TO DUE PROCESS AND DEPRIVED HIM OF HIS FEDERALLY PROTECTED LIBERTY INTEREST WHEN THE BOARD DENIED PETITIONER A PAROLE GRANT WITHOUT ANY RELIABLE EVIDENCE OR "SOME EVIDENCE" IN VIOLATION OF THE 5TH AND 14TH AMENDMENTS OF THE UNITED STATES CONSTITUTION.
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .1

    A. THE BOARD DID NOT MEET THE BURDEN OF PROOF THAT PETITIONER POSES AN "UNREASONABLE RISK" OF THREAT TO PUBLIC SAFETY IF RELEASED ON PAROLE. THE DECISION WAS WITHOUT EVIDENCE AND WAS ARBITRARY AND CAPRICIOUS VIOLATING FUNDAMENTAL DUE PROCESS.
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . .3

    B. THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT PROHIBITS STATE ACTION THAT DEPRIVES A PERSON OF LIFE, LIBERTY, OR PROPERTY WITHOUT DUE PROCESS OF LAW.
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .7

GROUND TWO:

    THE BOARD VIOLATES DUE PROCESS BY REPEATEDLY RELYING ON THE UNCHANGING FACTS OF THE CRIME IN THE FACE OF CLEAR EVIDENCE OF REHABILITATION & BY MAKING RECOMMENDATIONS OF WHAT TO DO TO BE FOUND SUITABLE AT EACH HEARING. A FINDING OF EGREGIOUSNESS IS BARRED BY THE INMATE'S COMPLIANCE WITH THOSE TERMS.
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . .9

    A. CONTINUED RELIANCE ON THE UNCHANGING FACTS OF THE CRIME VIOLATES DUE PROCESS.
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . .10

    B. CONTINUED RELIANCE UPON FACTS OF THE CRIME VIOLATES DUE PROCESS.
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . .14

    C. JUDICIAL OVERSIGHT IS CRITICAL TO SAFEGUARD THE UNDERLYING PURPOSE OF CALIFORNIA'S PAROLE SYSTEM AND THE LIBERTY INTERESTS OF INMATES. THE ESSENCE OF THE PAROLE SYSTEM IS THE RE-ENTRY OF PRISONERS WHO NO LONGER POSE A PUBLIC DANGER.
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

    D. PRISONERS HAVE A CONSTITUTIONAL LIBERTY INTEREST IN PAROLE DECISIONS.
    . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

1

<div align="center">CONTENTS (continued)</div>

2
TOPIC                                                              Pages

3  CONCLUSION                      ................................19

4  PRAYER FOR RELIEF               ................................19

5

6

<div align="center">EXHIBITS</div>

7  A. Abstract of Judgement, Probation Report, Commitment
      Transmittal, Hearing Notification, Status Summary,
8     Initial Reception Screening, D.O.J. Form 1-4e

9  B. Board Hearing Transcripts from May 2, 2006
      Board Hearing Decision Transcripts from December 7, 2004
10     Board Hearing Decision Transcripts from September 4, 2003
      Board Hearing Decision Transcripts from September 20, 2001

11
   C. Psychological Evaluation Dated November 3, 2004
12     Psychological Evaluation Dated October 7, 1998
      Psychological Evaluation Dated May 31, 1996
13     Anger Management Certificate of Completion
      Self-Help Chronos
14     Laudatory Chronos for Impact, I.E.P., Anger Management,
      Lifeskills Group Participation, Breaking Barriers
15     High School Diploma
      Various Program Participation Certificates
16     Certificate of Proficiency from P.I.A.

17  D. Evaluation Report from Counselor Dated December/2005
      Progress Report
18     Disciplinary Sheet

19  E. Term Calculation Worksheet w/M.E.P.D. date of 10/14/97

20  F. Superior Court Decision of Denial dated 05/09/05

21  G. Appellate Court Decision dated June 16, 2005

22  H. Supreme Court Decision of Denial dated March 22, 2006

23  I. CCR, Title 15, Div. 2, Article 11, §2400 et.seq. with
      Matrix

24

25

26

27

28

<div align="center">-ii-</div>

# POINTS AND AUTHORITIES

Name/Title                                                    Pages

In re Bramble
(1947) 31 Cal.2d 43, 51 [6] 187 P.2d 411
                      ...........................................1

People v. Stuart
(1956) 47 Cal.2d 167, 175 [7] 302 P.2d, 5, 55 A.L.R.2d 705
                      ...........................................1

People v. Smith
(1955) 44 Cal.2d 77, 79 [2] 279 P.2d 33
                      ...........................................1

In re McVickers
(1946) 29 Cal. 2d 264, 278, 176 P.2d 40
                      ...........................................1

People v. Valentine
(1946) 28 Cal.2d 121, 143 [20] 159 P.2d 1
                      ...........................................1

People v. Ralph
(1944) Cal.2d 575, 581 [2] 150 P.2d 401
                      ...........................................2

Biggs v. Terhune
(9th Cir. 2003) 334 F.3d 910, 914, 915,916
                      ..........2,7,8,9,10,11,12,13,14,15,16,19

In re Ramirez
(2001) 94 Cal.App.4th 549, 564-565, 571
                      ...............................4,9,11,13

Edward v. Balisok
(1997) 520 U.S. 541, 648
                      ...........................................4

In re Caswell
92 Cal.App.4th 1017, 1029
                      ...........................................5

People v. Dubon
90 Cal.App.4th, 949, 952 (2001)
                      ...........................................5

Charlton v. Federal Trade Comm.
543 F.2d 903-907, 908 (D.C. Cir. 1976)
                      ...........................................5

McQuillion v. Duncan
306 F.3d 901-910, (9th Cir. 2002)
                      ...........................7,8,14,15,19

1                    POINTS AND AUTHORITIES (continued)

2    Name/Title                                                    Pages

3    In re Smith
     109 Cal.App.4th 489 (2003)

4                           .......................................7

5    Kentucky Dept. of Corrections v. Thompson
     490 U.S. 454, 459-460 (1989)

6                           .......................................7

7    Board of Pardons v. Allen
     (1987) 482 U.S. 369, 376-78

8                           ..................................8,18,19

9    Greenholtz v. Inmates of Neb. Penal & Correctional Complex
     (1979) 442 U.S.1 11-12

10                          ..................................8,18,19

11   U.S. v. Guagliardo
     275 F.3d 868-872, (9th Cir. 2002)

12                          ...................................9,10

13   Graynet v. City of Rockford
     408 U.S. 104, 108-109, (1972)

14                          .......................................9

15   Irons v. Warden
     358 F.Supp.2d 936 (E.D. Cal. 2005)

16                          .......................11,12,14,15,16

17   In re Scott
     Cal.Rptr.3d at 919-920, 133 Cal.App.4th at 594-595

18                          ......................................14

19   Shaputis
     37 Cal.Rptr.3d at 335

20                          ...................................14,15

21   In re Rosenkrantz
     29 Cal.4th at 654-661

22                          ................................14,17,18

23   In re Smith
     114 Cal.App.4th 343, 370, 372

24                          ......................................15

25   Caswell v. Calderon
     363 F.3d 832, 389 (9th Cir.2004)

26                          ......................................15

27   Scott
     119 Cal.4th at 899

28                          ......................................15

-iv-

POINTS AND AUTHORITIES (continued)

Name/Title                                                          Pages

Scott
133 Cal.App.4th at 595, 34 Cal.Rptr.3d at 919-920
                    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15

Superintendent v. Hill
472 U.S. 445, 455-457 (1985)
                    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .15,16

In re Minnis
(1972) 7 Cal.3d 639, 643, n.2
                    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16,17,18

People v. Morse
(1964) 60 Cal.2d 631, 643, n.8
                    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

Masoner
2004 WL1080177 *1-2
                    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

Bair
2005 WL2219220 *12 n.3
                    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .16

Williams v. State of New York
(1949) 337 U.S. 241, 247
                    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .17

CCR, Title 15, Division 2,
    §2000(b)(49)    . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4,6
    §2000(b)(62)(90) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4
    §2402           . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .2,3
    §2402(a)(b)     . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

Penal Codes
    §3041           . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4,6,11,12,18
    §3041(a)        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6,12
    §3041(b)        . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .6

Evidence Code
    §115            . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .4

California Constitution, Article V
    §8(b)           . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .18

GROUND ONE:

THE BOARD FINDING OF UNSUITABILITY AND REFUSAL OF THE GRANTING OF PAROLE VIOLATED THE PETITIONER'S RIGHT TO DUE PROCESS AND DEPRIVED HIM OF HIS FEDERALLY PROTECTED LIBERTY INTEREST WHEN THE BOARD DENIED PETITIONER A PAROLE GRANT WITHOUT ANY RELIABLE EVIDENCE OR "SOME EVIDENCE", IN VIOLATION OF THE 5TH AND 14TH AMENDMENT OF THE UNITED STATES CONSTITUTION.

Section 3041 of the California Penal Code creates substantial presumption that a parole release date shall be set at the initial parole hearing, and in a manner that is uniform to other similar offenses. Subdivision (a) and (b), of §3041 mandates that a parole release date "shall" be set "unless" the Board (BPT) finds that the gravity of the commitment offense or offenses, or the timing and gravity of past convicted offenses are such that a consideration of the public safety warrant not setting a release date at that hearing. "Furthermore, if there be any reasonable doubt as to identity of offense we are bound to resolve that doubt in favor of petitioner." ( In re Bramble, (1947), 31 Cal.2d 43, 51 [6], 187 P.2d 411). Moreover, the rule is established that when language which is reasonably susceptible of two constructions is used in a penal law ordinarily that construction which is more favorable to the offender will be adopted. The defendant is entitled to the benefit of every reasonable doubt, whether it arise out of a question of fact, or as to the true interpretation of words or the construction of language used in a statute. (People v. Stuart (1956), 47 Cal.2d 167, 175 [7], 302 P.2d 5, 55 A.L.R.2d 705: People v. Smith (1955) 44 Cal.2d 77, 79 [2], 279 P.2d 33; In re Bramble, (1947) supra, 31 Cal.2d 43, 51 [6,7], 187 P.2d 441; In re McVickers (1946) 29 Cal.2d 264, 278, 176 P.2d 40; People v. Valentine (1946) 28 Cal.2d 121, 143 [20], 159 P.2d 1;

-1-

1   People v. Ralph (1944), 24 Cal.2d 575, 581 [2], 150 P.2d 401.) There

2   is no other criteria in the statute for denying parole to a

3   prisoner. It appears from the language that "consideration of the

4   public safety" is nonetheless limited to the gravity of the offense

5   and/or the timing and gravity of any past "convicted" offense or

6   offenses. The statute does not encompass or authorize some of the

7   criteria set forth by the Cal. Code of Regulations, Title 15, §2402.

8   It does appear that the statute has been enlarged to include

9   additional criteria not expressly authorized by the statute.

10      Notwithstanding, the argument set forth in the petition is not

11  merely an argument about a state law violation. The presumption

12  vested by the statue is substantial, while the statutory criteria the

13  Board must meet in order to deny parole is limited to criminal

14  conduct at the time of the offense. For the Board to interpret the

15  statute in such a manner as to deny parole solely on the commitment

16  offense after the Board has denied petitioner on the exact same point

17  4 times deprives petitioner of a substantial liberty interest

18  protected by Federal Due Process. (See Biggs at 334 F.3d 917.) The

19  effect of such an interpretation, established by practice, is to

20  subject all prisoners to pro forma decisions, where the Board goes

21  through the motion of due process review, citing post hoc

22  rationalizations to justify the parole denial, that is now always the

23  result. This is little different than a decision to deny parole made

24  without any evidence to support it. Thus, by misinterpretation,

25  whether inadvertently or intentionally, the result is not merely a

26  violation because it is an action the Board is simply not authorized

27  to take by the enabling statue that impinges on Federally protected

28  liberty interests. Petitioner relies on this claim which is now

1  brought before the State Court.

2      A. THE BOARD DID NOT MEET THE BURDEN OF PROOF THAT
   PETITIONER POSES AN "UNREASONABLE RISK" OF THREAT TO
3  PUBLIC SAFETY IF RELEASED ON PAROLE. THE DECISION
   WAS WITHOUT EVIDENCE AND WAS ARBITRARY AND
4  CAPRICIOUS VIOLATING FUNDAMENTAL DUE PROCESS.

5      The regulatory law requires the Board to set a release date

6  unless it finds that the prisoner poses an "unreasonable risk" to

7  public safety if released at that time. (15 CCR,. §2402). This is

8  consistent with the enabling statue which requires the setting of a

9  release date.

10      If the preponderate record before the Board demonstrates that

11  petitioner does not pose the "unreasonable risk" (which the record

12  shows that he does not, from petitioner's last 4 parole hearings), a

13  release date must be set.

14      If the Board denies petitioner parole without making this

15  requisite finding based on relevant and credible facts in the record,

16  then this is not merely a state law violation, but a deprivation of

17  the substantial liberty interest he has in obtaining a release date.

18  Failure of the Board to act in accord with the regulations, in such

19  situations, constitutes a substantive due process violation because

20  it constitutes an abuse of discretion that unfairly and inaccurately

21  deprives the prisoner of his right to that Federally protected liberty

22  interest. The Board needs more than "some evidence" to arrive at

23  their decision, even though once the decision is made, the reviewing

24  court needs only to find "some evidence" to support the decision or

25  findings that were made. As petitioner will point out, the "some

26  evidence" standard is not a "burden of proof" - although the Board of

27  Prison Terms (BPT or Board of Parole Hearings) and the Governor seems

28  to think it is. Petitioner will demonstrate by clear and convincing

-3-

1   facts that the Board's burden of proof is the "preponderance of
2   evidence" standard, but they totally ignore this in arriving at their
3   post hoc rationalization to deny parole in nearly every case. There
4   must be a weighing and balancing process according to a burden of
5   proof.

6        Thus, petitioner alleges that the Board's decision in his case
7   exceeded the bounds of "review" and was made without the procedural
8   safeguards required by the Constitution, and without applying the
9   proper proof necessary to overcome the presumptive right to release
10  delineated in Penal Code, §3041.

11       Statutory law in California applies the "rock bottom" burden of
12  proof in judicatory proceedings as the "preponderance of evidence"
13  level. (Evidence Code, §115). The Board of Prison Terms list under
14  "good cause," the preponderance evidence (15 CCR., Division 2,
15  §2000(b)(49)), and, also lists "relevant" and "material" evidence as
16  the standard for being valid "evidence." (15 CCR., Div. 2,
17  §2000(b)(62)(material evidence), and (90)(relevant evidence). The
18  "good cause" provision is a requirement for decision making that
19  applies to all substantive decisions. These regulatory and statutory
20  provisions initiate the weighing and balancing process of evidence at
21  parole hearings. A responsibility the Board must undertake. The Board
22  cannot apply the "some evidence" standard because it is not a burden
23  of proof. (In re Ramirez, (2001) 94 Cal.App. 4th 549 at 564-565;
24  Edwards v. Balisok, (1997) 520 U.S. 641, at 648). The "some evidence"
25  applies only to questions of evidentiary sufficiency as an
26  "additional requirement of due process, not substituted for other due
27  process requirements." (Ibid.). The "some evidence" standard is
28  applied only by the reviewing court to determine if the Board's

1  (Governor's) decision is supported by "some evidence", if the court

2  finds the Board complied with all other requisite due process

3  requirments. If the Board failed to apply a critical element in the

4  weighing and balancing of evidence, such as a burden of proof, then

5  the court cannot deny the petition because there isn't "some

6  evidence" in the record to support the decision. As the Appellate

7  court in In re Caswell 92 Cal.App. 4th 1017, 1029, pointed out, there

8  is always some evidence in the record of unsuitability of parole,

9  which if invoked, would subject every consideration of parole to an

10 arbitrary standard or political whim, but for a burden of proof, and

11 the burden of producing evidence, is clearly in California law, e.g.,

12 People v. Dubon, 90 Cal.App. 4th, 949, 952 (2001), and applies to all

13 state agencies.

14     Here, where the statute presumes that a parole date "shall

15 normally" be set, the Board must, in their weighing and balancing of

16 all relevant, material, and reliable evidence, present by a

17 preponderance of that evidence, a "rational connection" between the

18 basic facts the Board is asserting as sufficient to deny parole, and

19 the ultimate fact statutorily presumed, i.e., that the prisoner is

20 more than likely not "suitable" for setting a parole release date.

21     Petitioner submits that the Board and the Governor have broad

22 discretion in parole matter, but the requirement of procedural due

23 process embodied in the California Constitution...places some

24 limitations upon these discretionary powers.

25     As heretofore shown, the Board's burden of proof is the

26 preponderance of relevant and material evidence standard. This is the

27 "rock bottom" standard allowed by California law. (Evidence Code

28 §115; see e.g., Charlton v. Federal Trade Comm., 543 F.2d, 903-907,

908, (D.C. Cir. 1976)(Speaking to this standard as being "rock bottom" burden of proof). "Good Cause" is defined in the BPT's regulations as "a finding by the Board based upon a preponderance of the (material and relevant) evidence that there is a factual basis and good reason for the decision made. (Ibid. 2000). Here, in petitioner's case, the Board, based on the "material and relevant" evidence, found petitioner unsuitable for parole solely on the basis of the commitment offense which petitioner has been denied 4 times based primarily on the same issue, i.e., unchanging factors, (commitment offense). This is a clear due process violation and especially where the relevant and reliable evidence concerning public safety, i.e., petitioner's psych report that was presented at petitioner's 3 subsequent parole consideration hearing (in relevant part), "If released to the Community, his violence potential would be considered to be somewhat below average, relative to the average citizen in the community," shows that petitioner does <u>not</u> pose an "unreasonable risk" to the public if released at this time.

The mandatory language in §3041 of the Penal Code, established a rebuttable presumption affecting the Board's burden of producing evidence and the burden of proof implementing public policy regarding the parole of "term to life" prisoners.

Petitioner asserts that the ultimate facts sought is a determination whether the prisoner is currently an "<u>unreasonable risk</u>" of danger to the public safety if released on parole. (Subd. (b), Penal Code §3041; 15 CCR. §2402(a)).

The presumption created by mandatory language in both subdivision (a) and (b) of §3041 is that petitioner "shall normally" have a parole release date set "unless" the presumption is overcome

-6-

1    by the Board which carries the burden of proof as to the existence of

2    the presumed fact. McQuillion v. Duncan, 306, F.3d, 901-902 (9th Cir.

3    2002); Biggs v. Terhune, 334 F.3d., 910, 916-917 (9th Cir.

4    2003)(regarding the presumption in Penal Code §3041). If the Board

5    cannot produce the evidence according to the burden of proof

6    required, then the presumption stands, and the court is obliged to

7    uphold the presumption, and under In re Smith, 109 Cal.App. 4th, 489

8    (2003), must order petitioner released from custody.

9         B. THE DUE PROCESS CLAUSE OF THE FOURTEENTH AMENDMENT
           PROHIBITS STATE ACTION THAT DEPRIVES A PERSON OF

10         LIFE, LIBERTY, OR PROPERTY WITHOUT DUE PROCESS OF
           LAW.

11

12      The due process clause of the Fourteenth Amendment prohibits

13    state action that deprives a person of life, liberty, or property

14    without due process of law. A person alleging a due process violation

15    must first demonstrate that he or she was deprived of liberty or

16    property interest protected by the due process clause, and then show

17    that the procedures that led to the deprivation were constitutionally

18    insufficient. Kentucky Dept. of Corrections v. Thompson, 490 U.S.

19    454, 459-460 (1989); McQuillion v. Duncan, 306 F.3d, 895 900 (9th

20    Cir. 2002).

21      In the parole context, a prisoner alleging a due process claim

22    must demonstrate the existence of a protected liberty interest in

23    parole, and the denial of one or more of the procedural protections

24    that must be afforded when a prisoner has a liberty interest in

25    parole. The Supreme Court held in 1979, and reiterated in 1987, that

26    "a state's statutory scheme, if it uses mandatory language, creates a

27    presumption that parole release will be granted when or unless

28    certain designated findings are made, and thereby gives rise to a

1 | constitutional liberty interest." McQuillion, 306 F.3d, 16 901

2 | (citing Greenholtz v. Inmates of Nebraska Penal, 442 U.S. 1, 7 (1979)

3 | and Board of Pardon v. Allen, 482 U.S. 369, 373 (1987)

4 | The Ninth Circuit has held that California's parole scheme

5 | creates a cognizable liberty interest in release on parole because

6 | Penal Code §3041 uses mandatory language and is similar to the

7 | Nebraska and Montana statutes addressed in Greenholtz and Allen,

8 | respectively. McQuillion, 306 F.3d 15 901-902. As the Ninth Circuit

9 | has explained, "§3041 of the California Penal Code creates in every

10 | inmate a cognizable interest in parole which is protected by the

11 | procedural safeguards of the due process clause," and that interests

12 | arises "upon the incarceration of the inmate." Biggs v. Terhune, 334

13 | F.3d 910, 914-915 (9th Cir. 2003).

14 | ///

15 | ///

16 | ///

GROUND 2 :

> THE BOARD VIOLATES DUE PROCESS BY REPEATEDLY
> RELYING ON THE UNCHANGING FACTS OF THE CRIME IN
> THE FACE OF CLEAR EVIDENCE OF REHABILITATION, &
> BY MAKING RECOMMENDATIONS OF WHAT TO DO TO BE
> FOUND SUITABLE AT EACH HEARING. A FINDING OF
> EGREGIOUSNESS IS BARRED BY THE INMATE'S
> COMPLIANCE WITH THOSE AGREED TERMS.

When the Board repeatedly relies on the unchanging facts of the crime to deny parole, in the face of clear evidence that the inmate has been rehabilitated, due process is violated. (Biggs, supra, at 915-916, Ramirez, supra, at 571). However, here, the Board goes a step further. At the conclusion of each hearing attended by petitioner, the Board gave him a series of recommendations of what to do in order to be found suitable for parole. If the crime was going to continue to be an impediment to parole, then what difference would it make whether petitioner followed those recommendations, since parole would be denied in any event as the crime will never change? How could the Board make those recommendations in good faith if the crime was such that parole was not going to occur no matter how well petitioner programs? Even worse, if he complies with those recommendations and the Board gives him a parole date, if the Governor is permitted to effectively negate this whole process unilaterally taking that parole date away, then the recommendations and compliance are rendered useless acts.

The Board has a duty to make all recommendations "sufficiently clear" to inform petitioner what conduct will result in a grant of parole. (U.S. v. Guagliardo, 278 F.3d 868-872, (9th Cir. 2002)[citing Graynet v. City of Rockford, 408 U.S. 104, 108-109, (1972)]).[1]  Thus,

---

[1]A prisoner's due process rights are violated if parole conditions are not made "sufficiently clear" so as to inform him of what conduct will result in his being returned to prison. Likewise, the Board of Prison Terms has a duty to make.

1  the onus is on the board to clearly and specifically state what

2  conduct will warrant a finding suitability. Therefore, it follows

3  that there is only one way to interpret the recommendations given to

4  petitioner at the Documentation Hearings and at each of the Subsequent

5  parole hearings. They constitute the Board's "clear instructions" as

6  to what petitioner must do to be found suitable. As stated, it is

7  indisputable but that petitioner has complied with every single one

8  of the Board's directives to him, and, thus, the Board must finally

9  find petitioner suitable for release. If the Boards' directions to

10  the inmate are not acknowledged as sincere offers providing

11  legitimate goals for achieving a status of parole suitability, then

12  they are mere "hoops," designed to support elaborate rouse and a

13  further affront to the due process rights of all prisoners who rely

14  upon them.

15    As noted, petitioner sincerely relied upon the recommendation of

16  the prior Board panels, and, he partook to fulfill each one.

17  Petitioner's fulfillment may be recognized through his educational

18  and vocational accomplishments and gains, his ongoing self-help work,

19  and his crime free behavior throughout his nearly 19 years of

20  incarceration. Petitioner has complied with those directives

21  following each and every hearing, and the Board should finally

22  recognize his compliance by granting parole.

23    A.    CONTINUED RELIANCE ON THE UNCHANGING FACTS OF
        THE CRIME VIOLATES DUE PROCESS.

24

25    In Biggs v. Terhune, the 9th Circuit held that even if the

26  commitment offense(s) are sufficient to support a denial of parole,

27  recommendations for parole eligibility "sufficiently clear" so as to inform the

28  inmate of conduct that will wrrant a finding of suitability. (see U.S. v.
    Guagliardo, supra, 278 F.3d 868).

1   the crime alone will not justify repeated denials of parole based

2   upon considerations of due process. Biggs v. Terhune, supra, 334 F.3d

3   at 916. The Ramirez, court also acknowledged that there will always

4   be "some evidence" to support a finding that a prisoner committed

5   the underlying offense. Those facts alone, however, do not justify

6   the denial of parole. Thus, while concluding that there was factual

7   support for the findings as to the crime and priors, the Ramirez

8   court still found the Board's decision arbitrary since there had been

9   7 hearings at that point, 9 years had passed beyond the minimum

10  term and, it was 17 years after entering prison, and, all evidence

11  showed rehabilitation. (Id. at 571). Likewise, as the Biggs court

12  more recently said, despite the fact that there may remain evidence

13  to support a finding of egregiousness of the crime:

> "A continued reliance in the future on an
> unchanging factor, the circumstances of the
> offense and conduct prior to imprisonment, runs
> contrary to the rehabilitative goals espoused
> by the prison system and could result in a due
> process violation." (Biggs, supra, at 916-917).

17  In the recently published case of Irons v. Warden, 358 F.Supp.

18  2d, 936 (E.D. Cal. 2005), the Federal court has applied the dictates

19  of Biggs. In Irons, the court found that the Board violated the

20  prisoner's due process by continuing to rely on the immutable

21  factors. (e.g., the commitment offense and history prior to

22  incarceration) to support the denial of parole. In doing so, the

23  Federal judge there ruled that continuing to rely on those factors

24  that can never change, such as the commitment offense, where there is

25  no proof of continuing bad conduct to support a finding of current

26  threat to the public, offends due process.

27  In interpreting the rule put forth in Biggs, and, the plain

28  language of Penal Code §3041, it is clear that even if the crime may

-11-

1   be considered egregious, under federal due process principles, the
2   denial of parole based on the immutable facts of the crime is only
3   authorized at the first parole consideration hearing. The provisions
4   of Penal Code §3041, only talk of the use of the crime to defer
5   setting of a date at the initial hearing. (Penal Code §3041(a)). After
6   that, to give the statute a constitutional interpretation that is not
7   unreasonably vague, further denials would have to be based on some
8   facts arising subsequent to the crime that show a continued
9   propensity for violence, making the inmate a danger to the public.
10  (Biggs v. Terhune, supra, 334 F.3d at 914-915). To rule otherwise
11  would put petitioner in an impossible situation, where no matter what
12  he shows in terms of positive behavior, reformation, self-help, work
13  skills, parole plans, or just rehabilitation in general, he would
14  never be able to overcome the unchanging facts of the crime. The only
15  logical application of Constitutional Due Process dictates what the
16  court in Irons held, i.e., that any subsequent denial requires the
17  presence of some in-prison behavior showing that the inmate currently
18  presents an unreasonable risk of danger if paroled.

19      Here, the facts of the crime have been used as the real reason
20  for denying parole on 4 separate occasions, yet, those facts have
21  never been tied to current behaviors showing petitioner still
22  presents an unreasonable risk of danger to the public at this time. A
23  rule requiring the presence of in-prison, adverse behavior to justify
24  further denials based on the crime simply recognizes what the 9th
25  Circuit in Biggs alluded when it talked of the rehabilitative goals
26  of the system, and, the need to take into consideration that a person
27  can change. At this point, petitioner has been incarcerated for 19
28  years, eligible for parole for more than 8 of those years. His

-12-

1  programming clearly shows his full rehabilitation. In drawing the
2  line as to when further denials become arbitrary, that line has
3  definitely been crossed in this case, and, in fact, was crossed as
4  soon as the crime was used in the second parole hearing without the
5  presence of facts showing a continued risk of danger based on how
6  petitioner was programming in prison. To the contrary, the in-prison
7  facts are exclusively positive.

8      As the Ramirez court noted, the paroling authority must do more
9  than merely commend petitioner for the hard work done to rehabilitate
10  himself while in prison. They must actually consider these factors "as
11  ... circumstance[s] tending to show his suitability for parole."
12  Ramirez, supra, 94 Cal.App. 4th at 571-572 [emphasis original]. Of
13  course, all the Board did with petitioner's extensive accomplishments
14  was to brush them aside with several terse lines, and, issue a
15  superficial compliments. The Biggs rule is clear that if an inmate
16  continue[s] to demonstrate exemplary behavior and evidence of
17  rehabilitation, denying him a parole date simply because of the
18  nature of his offense and prior conduct would raise serious questions
19  involving his liberty interest in parole. Biggs v. Terhune, supra,
20  334 F.3d at 916. Here, the evidence of actual rehabilitation is
21  beyond dispute.

22      In comparing the present case with Biggs, it is undeniably clear
23  that the Board lacks any justification whatsoever to continue to deny
24  petitioner a parole date. In Biggs, the inmate was convicted of the
25  premeditated and deliberate 1st Degree Murder of a witness in a major
26  theft case against the defendants, and, yet, the court was quick to
27  caution the Board that it could not continue to solely rely on the
28  commitment offense to deny the inmate parole, even though it was only

-13-

1   his initial hearing at that point. Yet, petitioner has been denied
2   parole on 4 separate occasions, each time effectively relying
3   virtually exclusively upon the unchanging facts of his commitment
4   offense. The continued reliance upon the commitment offense is simply
5   arbitrary, particularly in the face of the Board's acknowledgements
6   of petitioner's model behavior in prison and extensive
7   accomplishments, all of which are conceded by the statement of
8   decision. Therefore, as the court stated in Biggs, denying him a
9   parole date simply because of the nature of the offense, not only
10  raises serious questions involving his liberty interests in parole,
11  but blatly violates due process. (see Biggs v. Terhune, supra, 334
12  F.3d at 915-916; Irons, supra.).

13          B. CONTINUED RELIANCE UPON FACTS OF THE CRIME VIOLATES
              DUE PROCESS.
14

15      First, continued reliance upon these unchanging factors makes a
16  sham of California's parole system and amounts to an arbitrary denial
17  of petition's "liberty interest in release on parole," and his
18  "presumption that parole release will be granted." (See McQuillion v.
19  Duncan, 306 F.3d 895, 902 (9th Cir. 2002), Biggs, 334 F.3d at
20  914-915, Rosenkrantz 29 Cal. 4th at 654, 661.) Petitioner has been
21  denied parole on 4 different occasions. Continued reliance upon
22  these unchanging factors amounts to converting petitioner's offense
23  to a term of life without the possibility of parole. (See Irons, 358
24  F.Supp.2d at 947 ["continuous reliance on the unchanging
25  circumstances transforms an offense into a de facto life imprisonment
26  without the possibility of parole"]; Scott, Cal.Rptr.3d at 919-920,
27  133 Cal.App.4th at 594-595; Shaputis, 37 Cal.Rptr.3d at 335).
28      Second, the circumstances of the crime and petitioner's conduct

-14-

1   prior to imprisonment do not amount to some evidence supporting the
2   conclusion that petitioner "currently" poses an unreasonable risk of
3   danger if released. (See In re Smith, 114 Cal.App.4th 343, 370, 372
4   [Evidence must show "that a prisoner currently would pose an
5   unreasonable risk of danger if released at this time."] In re
6   Shaputis, (2006) 37 Cal.Rptr.3d 324, 334-335). In the parole context,
7   the requirements of due process can only be met if "some evidence"
8   supports the decision" and the evidence underlying the decision is
9   supported by "some indicia of reliability." Biggs, 334 F.3d at 914;
10  Caswell v. Calderon, 363 F.3d 832, 389 (9th Cir. 2004); Scott, 119
11  Cal.4th at 899; Superintendent v. Hill, 472 U.S. 445, 455-457 (1985);
12  McQuillion v. Duncan, 306 F.3d 895, 903 (9th Cir. 2002).

13      While it may have been reasonable to rely on petitioner's
14  offense and conduct prior to imprisonment as an indicator of
15  dangerousness for some period of time, continued reliance on such
16  unchanging circumstances after 19 years of incarceration and
17  4 parole suitability hearings, violates due process because these
18  factors now lack predictive value with regards to petitioner's
19  present and future dangerousness. After 19 years of rehabilitation in
20  which petitioner's eligible parole date for release was passed on
21  October 14, 1997, (Exhibit "E" , Initial M.E.P.D.), the ability to
22  predict petitioner's future dangerousness based simply on the
23  circumstances of the crime is nil. (See Irons, 358 F.Supp.2d at 947
24  n.2 ["four prior times in finding [Irons] unsutiable for parole" and
25  "after 15 years" imprisonment, ability to assess dangerousness "is
26  near zero."]; Scott, 133 Cal.App.4th at 595, 34 Cal.Rptr.3d at
27  919-920["the predictive value of the commitment offense may be very
28  questionable after a long period of time."].

1    Petitioner's record is replete with evidence of petitioner's
2  rehabilitation, which was expressed by the Board, including
3  Psychological Reports, Correctional Counselor's Reports, extensive
4  self-improvement through vocational, education, self-help therapy and
5  disciplinary free incarceration for the past 8  years. (See Exhibit
6  D ).

7    While the Board may initially have been entitled to rely upon
8  the commitment offense and petitioner's conduct prior to imprisonment
9  to find petitioner unsuitable for parole, under these circumstances,
10 petitioner submits that the continued reliance and sole reliance of
11 the convicted offense do not now constitute "some evidence" with
12 "some indicia of reliability" of petitioner's current dangerousness.
13 (See Hill, 472 U.S. at 445; Biggs, 334 F.3d at 917; Irons, 358
14 F.Supp.2d at 947; Masoner, 2004 WL1080177 *1-2; Bair, 2005 WL2219220,
15 *12n3; Scott, 133 Cal.App.4th at 594-595, 34 Cal.Rptr.3d at 919-920.)

16    C. JUDICIAL OVERSIGHT IS CRITICAL TO SAFEGUARD THE
      UNDERLYING PURPOSE OF CALIFORNIA'S PAROLE SYSTEM
17    AND THE LIBERTY INTERESTS OF INMATES. THE ESSENCE
      OF THE PAROLE SYSTEM IS THE RE-ENTRY OF PRISONERS
18    WHO NO LONGER POSE A PUBLIC DANGER.

19    Parole, the release of the imprisoned before they have served
20 the maximum time set by their sentences, has long been part of the
21 California penal system. The Indeterminate Sentencing Law, requiring
22 the trial judge to set a minimum but not a maximum sentence was enacted
23 in 1917. In re Minnis, (1972) 7 Cal.3d 639, 643 n.2  ("the court in
24 imposing  the sentence shall not fix the term or duration of the
25 period of imprisonment")(citation and internal quotation omitted).
26 The goal of indeterminate sentences and the California parole system
27 is not only to punish, but also to provide for reformation and
28 rehabilitation:

> "The belief no longer prevails that every offense in a like legal category calls for an identical punishment without regard to the past life and habits of a particular offender ... retribution is no longer the dominant objective of the criminal law. Reformation and rehabilitation of offenders have become important goals of criminal jurisprudence."

People v. Morse, (1964) 60 Cal.2d 631, 643 n.8 (quoting Williams v. State of New York, (1949) 337 U.S. 241, 247). In a lengthy discussion of this topic, the California Supreme Court stated as follows:

> [T]he purpose of the indeterminate sentence law, like other modern laws in relation to the administration of the criminal law, is to mitigate the punishment which would otherwise be imposed upon the offender. These laws place emphasis upon the reformation of the offender. They seek to make the punishment fit the criminal rather than the crime. The endeavor to put before the prisoner great incentive to well-doing in order that his will to do well would be strengthened and confirmed by the habit of well-doing.
>
> [...]
>
> [T]he interests of society require that under prison discipline every effort should be made to produce a reformation of the prisoner ... The Legislative policy [was to provide a system whereby] a hope was to be held out to prisoners that through good conduct in prison and a disposition shown toward reformation, they might be permitted a conditional liberty upon restraint under which they might be restored again to society...
>
> [...]
>
> Although good conduct while incarcerated and potential for reform are not the only relevant factors, the court has acknowledged their significance. Furthermore, the authority has declared that these factors are among those of "paramount importance."

In re Minnis, Cal.3d at 644-45. The Rosenkrantz court, citing Minnis, reaffirmed the principles. "[E]ven before factors relevant to parole

1   decisions had been set forth expressly by statue and by regulations,

2   we concluded that [a]ny official or Board vested with discretion, is

3   under obligation to consider all relevant factors [citations], and

4   the [official or Board] cannot, consistently with its obligation,

5   ignore post conviction factors unless directed to do so by

6   Legislature." In re Rosenkrantz, (2002) 29 Cal.4th 616, 656 (quoting

7   Minnis, 7 Cal.3d at 645).

8        D. PRISONERS HAVE A CONSTITUTIONAL LIBERTY INTEREST
           IN PAROLE DECISIONS.
9

10       "[P]arole applicants in this California have an expectation that

11  they will be granted parole unless the Board finds, in the exercise

12  of its discretion, that they are unsuitable for parole in light of

13  the circumstances specified by statute and by regulation."

14  Rosenkrantz, 29 Cal.4th at 659-61 (holding that the California

15  Constitution, Article V, §8(b) and California Penal Code §3041, "give

16  rise to a protected liberty interest" in that "a prisoner granted

17  parole by the Board has an expectation that the Governor's decision

18  to affirm, modify, or reverse the Board's determination will be based

19  upon the same factors the Board is required to consider," and that

20  "this liberty interest underlying a Governor's parole review

21  decisions is protected by due process law.")

22       Federal courts have also unequivically held that California's

23  parole system gives rise to a liberty interest constitutionally

24  protected by due process. (See Board of Pardons v. Allen (1987) 482

25  U.S. 369, 376-78; Greenholtz v. Inmates of Neb. Penal & Correctional

26  Complex (1979) 442 U.S. 1, 11-12 (holding a state's statutory parole

27  scheme that uses mandatory language may create a presumption that

28  parole release will be granted upon certain circumstances or

                                 -18-

1 | findings, thus, giving rise to a constitutionally protected liberty

2 | interest); McQuillion v. Duncan (9thCir. 2002) 306 F.3d 896, 902-03

3 | n.1, 903 (holding that because California's parole scheme uses

4 | mandatory language and is largely parallel to the schemes found in

5 | Allen and Greeholtz, to give rise to a protected liberty interest in

6 | release on parole, "California's parole scheme gives rise to a

7 | cognizable liberty interest in release on parole.") Biggs v. Terhune

8 | (9th Cir. 2003) 334 F.3d 910, 915-916.

9 | <center>CONCLUSION</center>

10 | Because there is nothing which, either singly or in conjunction

11 | with other evidence, that could support any decision other than

12 | parole suitable, the Board's decision should be vacated and

13 | petitioner ordered released.

14 | <center>PRAYER FOR RELIEF</center>

15 | Petitioner is without remedy save for Habeas Corpus. Accordingly, petitioner requests that the court:

16 | 1. Issue a Writ of Habeas Corpus granting petitioner's

17 | Due Process violation claim;

18 | 2. Issue an Order To Show Cause;

19 | 3. Declare the rights of petitioner;

19 | 4. Appoint counsel to represent petitioner;

20 | 5. Issue an Order releasing petitioner based on

21 | supporting evidence;

22 | 6. Grant any an all relief found necessary or

22 | appropriate.

23 | Dated this 14 day of Sep , 2006.

24 | Respectfully submitted,

25 | *Daniel Richards*

26 | Daniel Albert Richards

27 | Petitioner in Pro Se

27 | ///

28 | ///

Exhibit "A"

OK' ') GO S/W NOTED NOV - 3 1988

DEPT 119

SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

| Date: | OCTOBER 28, 1988 | | G BARR | |
|---|---|---|---|---|
| HONORABLE: | CURTIS B RAPPE | JUDGE | M BRACCI | , Deputy Clerk |
| | W DOWNS | Deputy Sheriff | | , Reporter |

(Parties and counsel checked if present)

| A958631 | PEOPLE OF THE STATE OF CALIFORNIA | Counsel for Plaintiff | FIRA A REINER , DISTRICT ATTY. BY |
| | | X | K FRIEDENBERG          DEPUTY |
| | VS | Counsel for Defendant | |
| X | RICHARDS, DANIEL | X | J YOST   PVT |
| | X223059 | | |

NATURE OF PROCEEDINGS  PROBATION AND SENTENCE          (Boxes checked if order applicable)

pay restitution fine in sum of $100.00 pursuant to section 13967(a) government code payable to restitution fund. Court advises defendant of his appeal rights.

PROBATION DENIED. SENTENCE AS INDICATED BELOW.

Whereas the said defendant having........been................duly..............found...............................................
guilty in this court of the crime of MURDER (187(a) PC), as charged in the information, which the Jury found it to be Murder of the SECOND DEGREE IN COUNT 1; (no finding as to used allegation )

C.I.M.R & R CENTRAL
'88 NOV -7 A7 :45

It is Therefore Ordered, Adjudged and Decreed that the said defendant be punished by imprisonment in the State Prison for the term of  15 years to LIFE.

☒ Defendant is given credit for....570.....................days in custody (includes___190_days good time/work time).
It is further Ordered that the defendant be remanded into the custody of the Sheriff of the County of Los Angeles and delivered by him into the custody of the Director of Corrections at the California State Institution
    ☒ for Men at Chino, California
    ☐ for Women at Frontera, California
    ☐ ..............................................................

ENTERED
10-28-88

☐ Remaining count(s) dismissed in interests of justice.
☐ Bail exonerated.

FRANK S ZOLIN
COUNTY CLERK
AND CLERK OF THE
SUPERIOR COURT

2    76J805A (REV. 7-82) 7-82
C-109

JUDGMENT  1h

/3 P&S

**SUPERIOR** _ OF _ FORNIA, COUNTY OF LOS ANGELES _ /T.

Date 10/28/88

HONORABLE CURTIS B. RAPPE JUDGE G. BARR Deputy Clerk

310 _ DOWNS Deputy Sheriff M. BRACCI Reporter

CASE NO. A958631

PEOPLE OF THE STATE OF CALIFORNIA — Counsel for People: K FRIEDENBERG DEPUTY DISTRICT ATTY.

vs

02 RICHARDS, DANIEL Counsel for Defendant: J YOST PVT

CHARGE 187.A 01CT

(BOX CHECKED IF ORDER APPLICABLE) X 223059

NATURE OF PROCEEDINGS    P&S    REM    SECOND DEGREE

71 ☐ _ IS SWORN AS THE ENGLISH/ _ INTERPRETER

☐ PUBLIC DEFENDER APPOINTED, D.P.D. _ ☐ OATH FILED PER SECTION 68560 GOVERNMENT CODE.

☐ DUE TO CONFLICT OF INTERESTS, PUBLIC DEFENDER RELIEVED. PURSUANT TO PENAL CODE SECTION 987.2/GOVERNMENT CODE SECTION 31000 ALTERNATE DEFENSE COUNSEL _ IS APPOINTED.

72 ☐ CRIMINAL PROCEEDINGS ADJOURNED/RESUMED.

73 ☐ DEFENDANT ORDERED DELIVERED TO DEPARTMENT OF CORRECTIONS PER SECTION 1203.03 PENAL CODE.

74 ☐ ON _ MOTION, PROBATION AND SENTENCE HEARING/FURTHER PROCEEDINGS CONTINUED TO _

AT _ A.M. IN DEPT. _ ☐ SUPPLEMENTAL PROBATION REPORT/PROGRESS REPORT ORDERED

75 ☐ DEFENDANT PERSONALLY AND ALL COUNSEL WAIVE TIME FOR SENTENCING. _ ☐ DEFENDANT ORDERED TO RETURN.

76 ☒ PROBATION DENIED /PROCEEDINGS SUSPENDED / SENTENCE IMPOSED AS FOLLOWS:
☒ IMPRISONED IN STATE PRISON FOR ☐ TERM PRESCRIBED BY LAW ☒ TOTAL OF 15 YEARS TO LIFE
☒ COURT SELECTS THE 15 years 70 to 11 years AS FOR THE BASE TERM AS TO COUNT ONE
☐ PLUS _ YEAR(S) PURSUANT TO PENAL CODE SECTION _
☐ PLUS _ AS INDICATED IN BOX 88 BELOW
☐ COMMITTED TO CALIFORNIA YOUTH AUTHORITY, THE TERM OF IMPRISONMENT TO WHICH THE DEFENDANT WOULD HAVE BEEN SENTENCED PURSUANT TO SECTION 1170 PENAL CODE IS _ YEARS
☐ IMPRISONED IN LOS ANGELES COUNTY JAIL FOR TERM OF _ DAYS
☐ FINED IN SUM OF $ _ PLUS ADDITIONAL FINE OF $ _ (11372.5 HEALTH & SAFETY CODE) FOR A TOTAL FINE OF $ _ PLUS $ _ ASSESSMENT AND SURCHARGE (1464 PC & 76000GC), TO BE PAID TO COUNTY CLERK. ☒ PAY RESTITUTION FINE IN SUM OF $ 100.00 PURSUANT TO SECTION 13967(a) GOVERNMENT CODE PAYABLE TO RESTITUTION FUND

77 ☐ SENTENCE IS SUSPENDED.

78 ☐ PROBATION GRANTED FOR A PERIOD OF _ YEARS ☐ — PROBATION TO BE WITHOUT FORMAL SUPERVISION.
1 ☐ — SPEND FIRST _ DAYS IN COUNTY JAIL. ☐ — PROBATION TO BE WITHOUT FORMAL SUPERVISION.
☐ WORK FURLOUGH PROGRAM RECOMMENDED. ☐ NOT TO BE ELIGIBLE FOR COUNTY PAROLE
2 ☐ FINED IN SUM OF $ _ PLUS ADDITIONAL FINE OF $ _ (11372.5 HEALTH & SAFETY CODE) FOR A TOTAL FINE OF $ _ PLUS $ _ ASSESSMENT AND SURCHARGE (1464 PC & 76000GC), TO BE PAID TO PROBATION OFFICER IN SUCH MANNER AS HE SHALL PRESCRIBE.
3 ☐ MAKE RESTITUTION OF $ _ TO THE VICTIM/RESTITUTION FUND PURSUANT TO SECTION 1203.04 PENAL CODE IN SUCH MANNER AS THE PROBATION OFFICER SHALL PRESCRIBE. ☐ TOTAL AMOUNT OF RESTITUTION TO INCLUDE _ % SERVICE CHARGE AS AUTHORIZED BY SECTION 1203.1 P.C.
☐ PAY RESTITUTION FINE IN SUM OF $ _ PURSUANT TO SECTION 13967(a) GOVERNMENT CODE PAYBLE TO PROBATION DEPARTMENT IN SUCH MANNER AS THEY PRESCRIBE. ☐ SAID FINE TO BE STAYED WHILE DEFENDANT PAYS RESTITUTION AND/IF RESTITUTION IS PAID IN FULL STAY SHALL BE PERMANENT.
4 ☐ — MINIMUM PAYMENT OF FINE RESTITUTION TO BE $ _
5 ☐ — NOT DRINK ANY ALCOHOLIC BEVERAGE AND STAY OUT OF PLACES WHERE THEY ARE THE CHIEF ITEM OF SALE.
6 ☐ — NOT USE OR POSSESS ANY NARCOTICS. DANGEROUS OR RESTRICTED DRUGS OR ASSOCIATED PARAPHERNALIA, EXCEPT WITH VALID PRESCRIPTION, AND STAY AWAY FROM PLACES WHERE USERS CONGREGATE.
7 ☐ — NOT ASSOCIATE WITH PERSONS KNOWN BY YOU TO BE NARCOTIC OR DRUG USERS OR SELLERS.
8 ☐ — SUBMIT TO PERIODIC ANTI-NARCOTIC TESTS AS DIRECTED BY THE PROBATION OFFICER. SUCH TESTING TO BE SUSPENDED WHILE THE DEFENDANT IS IN CUSTODY, IS HOSPITALIZED, OR IS IN A RESIDENTIAL DRUG TREATMENT PROGRAM APPROVED BY PROBATION OFFICER.
9 ☐ — HAVE NO BLANK CHECKS IN POSSESSION. NOT WRITE ANY PORTION OF ANY CHECKS. NOT HAVE BANK ACCOUNT UPON WHICH YOU MAY DRAW CHECKS.
10 ☐ — NOT GAMBLE OR ENGAGE IN BOOKMAKING ACTIVITIES OR HAVE PARAPHERNALIA THEREOF IN POSSESSION, AND NOT BE PRESENT IN PLACES WHERE GAMBLING OR BOOKMAKING IS CONDUCTED.
11 ☐ — NOT ASSOCIATE WITH _
12 ☐ — COOPERATE WITH PROBATION OFFICER IN A PLAN FOR _
13 ☐ — SUPPORT DEPENDENTS AS DIRECTED BY PROBATION OFFICER.
14 ☐ — SEEK AND MAINTAIN TRAINING, SCHOOLING OR EMPLOYMENT AS APPROVED BY PROBATION OFFICER.
15 ☐ — MAINTAIN RESIDENCE AS APPROVED BY PROBATION OFFICER.
16 ☐ — SURRENDER DRIVER'S LICENSE TO CLERK OF COURT TO BE RETURNED TO DEPARTMENT OF MOTOR VEHICLES.
17 ☐ — NOT DRIVE A MOTOR VEHICLE UNLESS LAWFULLY LICENSED AND INSURED.
18 ☐ — NOT OWN, USE OR POSSESS ANY DANGEROUS OR DEADLY WEAPONS.
19 ☐ — SUBMIT PERSON AND PROPERTY TO SEARCH OR SEIZURE AT ANY TIME OF THE DAY OR NIGHT BY ANY LAW ENFORCEMENT OFFICER. WITH OR WITHOUT A WARRANT.
20 ☐ — OBEY ALL LAWS, ORDERS, RULES AND REGULATIONS OF THE PROBATION DEPARTMENT AND OF THE COURT.

79 ☒ DEFENDANT TO BE GIVEN CREDIT FOR 570 DAYS IN CUSTODY (INCLUDES 190 DAYS GOOD TIME/WORK TIME)

80 ☐ SENTENCE/COUNTS TO RUN CONSECUTIVELY TO/CONCURRENTLY WITH _

81 ☐ STAY OF EXECUTION OF _ GRANTED TO _

82 ☐ ON MOTION OF PEOPLE, COUNTS _ DISMISSED IN FURTHERANCE OF JUSTICE.

83 ☒ COURT ADVISES DEFENDANT OF HIS APPEAL RIGHTS.

84 ☒ "NOTICE RE CERTIFICATE OF REHABILITATION AND PARDON" GIVEN TO DEFENDANT.

85 ☐ DEFENDANT TO PAY COSTS OF PROBATION SERVICES IN AMOUNT OF $ _

86 ☐ COURT FINDS THAT DEFENDANT DOES NOT HAVE THE PRESENT ABILITY TO PAY COSTS OF INCARCERATION/LEGAL SERVICES RENDERED/ _ PROBATION SERVICES RENDERED.

87 ☐ DEFENDANT IS REFERRED TO TREASURER/TAX COLLECTOR FOR FINANCIAL EVALUATION.

88 ☐ — FURTHER ORDER AS FOLLOWS/ADDITIONAL CONDITIONS OF PROBATION:

89 ☐ — SHERIFF IS ORDERED TO ALLOW DEFENDANT _ PHONE CALLS AT DEFENDANT'S OWN EXPENSE

90 ☐ DEFENDANT FAILS TO APPEAR WITH/WITHOUT SUFFICIENT EXCUSE.

91 ☐ BAIL, IF POSTED, FORFEITED/O.R. REVOKED. BENCH WARRANT ORDERED ISSUED/REISSUED/AND HELD UNTIL _
☐ NO BAIL/BAIL FIXED AT $ _

92 ☐ DEFENDANT APPEARING BENCH WARRANT ORDERED RECALLED/QUASHED ☐ RECALL NO. _ ☐ WRITTEN ☐ ABSTRACT FILED

| ☒ REMANDED | ☐ BAIL | ☐ BAIL EXON. | ☐ BOND NO. | MINUTES ENTERED |
|  | ☐ O.R. | ☐ O.R. DISCHARGED | ☐ ON PROBATION | 10/28/88 |
| ☐ RELEASED |  |  |  |  |

ERIOR COURT OF CALIFORNI.
COUNTY OF LOS ANGELES

JUDGMENT CLERK

PROBATION OFFICER'S REPORT

REPORT SEQUENCE NO.    1

| DEFENDANT'S NAME(S) | | | | COURT | JUDGE | COURT CASE NO. |
|---|---|---|---|---|---|---|
| DANIEL ALBERT RICHARDS | | | | 119 | RAPPE | A958631 |

| ADDRESS (PRESENT/RELEASE) | | | | HEARING DATE | DEFENSE ATTY. | PROSECUTOR |
|---|---|---|---|---|---|---|
| 3713 E. MICHIGAN EAST LOS ANGELES, CA 90063 (213/264-5011) | | | | 9-7-88 | YOST/PD | FRIEDENBERG/DA |

| BIRTHDATE | AGE | SEX | RACE | DPO | AREA OFFICE | PHONE NO. |
|---|---|---|---|---|---|---|
| 9-4-66 | 22 | MALE | HISPANIC | | | |
| CITIZENSHIP STATUS | | DRIVER'S LICENSE/EXP. DATE | | | | |
| U.S. | | C5474591 | | HUDSON | CAI | 974-3406 |

| PROBATION NO. | CII NO. | BOOKING NO. |
|---|---|---|
| X- 223059 | A08605405 | 9328378 |

TYPE REPORT
X Probation and sentence
___ Pre-Conviction (131.3 CCP)
___ Post sentence
___ Diversion (Specify) _____

| DAYS IN JAIL THIS CASE | CUSTODY STATUS/RELEASE DATE |
|---|---|
| X☒ ESTIMATED ☐ VERIFIED 329 | REMANDED |

RESENT OFFENSE: LEGAL HISTORY

CHARGED with the crimes of (INCLUDE PRIORS, ENHANCEMENTS OR SPECIAL CIRCUMSTANCES)

CT. 1 - 187(A) PC (MURDER)
CT. 2 - 664/187(A) PC (ATTEMPTED MURDER)

CONVICTED of the crimes of (INCLUDE PRIORS, ENHANCEMENTS OR SPECIAL CIRCUMSTANCES)

CT. 1 - 187(A) PC (SECOND DEGREE MURDER)

| ONVICTED BY | DATE OF CONVICTION/XXXRXAX | COUNT(S) CONTINUED TO P & S FOR DISPOSITION |
|---|---|---|
| JURY | 8-17-88 | N/A |

| ROPOSED PLEA AGREEMENT | SOURCES OF INFORMATION |
|---|---|
| N/A | D.A. FILE |

| ATE(S) OF OFFENSE | TIME(S) |
|---|---|
| 9-6-87 | 9:31 P.M. |

DEFENDANT: ☒ N/A          ☐ SENTENCED TO STATE PRISON/COUNTY JAIL ON CASE _____
(SEE PRIOR   ☐ ON PROBATION   ☐ PENDING PROBATION VIOLATION   ☐ PENDING NEW CASE
RECORD
SECTION)    ☐ ON PAROLE-REMAINING TIME _____

HOLD/WARRANTS:
☐ YES ☒ NO

ECOMMENDATION:

| ☐ PROBATION | ☒ DENIAL | ☐ DIAGNOSTIC STUDY | ☐ C.YA | ☐ OTHER _____ |
|---|---|---|---|---|
| | ☐ COUNTY JAIL | ☐ 707.2 WIC | | |
| | ☒ STATE PRISON | ☐ 1203.03 PC | | |

PRESENT OFFENSE:
(CONTINUED)

SOURCES OF INFORMATION (this page)
D.A. FILE

| ARREST DATE | TIME | BOOKED AS | OFFENSE | LOCATION OF ARREST | ARRESTING AGENCY |
|---|---|---|---|---|---|
| 10-15-87 | 10:30PM | DANIEL RICHARDS | 187 PC | 3713 E. MICHIGAN ELA, CA | ELASO |

| CO-DEFENDANT(S) | CASE NO. | DISPOSITION |
|---|---|---|
| RUDY FERNANDEZ | A958631 | FOUND GUILTY OF 664/187(A)-PC |

ELEMENTS AND RELEVANT CIRCUMSTANCES OF THE OFFENSE:

DEFENDANT TOOK VICTIM'S LIFE. ON SEPTEMBER 6, 1987 AT APPROXIMATELY 9:31 P.M. IN THE VICINITY OF 323 ROWAN AVENUE, EAST LOS ANGELES, CALIFORNIA, VICTIM LOPEZ AND COMPANION HAD BEEN WALKING DOWN THE STREET WHEN THEY WERE APPROACHED BY SEVERAL PEOPLE INCLUDING DEFENDANT AND CO-DEFENDANT. ONE OF THE PEOPLE SAID "WHAT DID YOU SAY?" IN A HOSTILE AND PROVOKING MANNER. DEFENDANT AND CO-DEFENDANT THEN BEGAN TO HIT AND KICK THE VICTIM AND HIS COMPANION. VICTIM'S BROTHER WAS BEING HIT AND KICKED. DEFENDANT AND CO-DEFENDANT WERE INVOLVED IN THE SITUATION. SOMEONE HAD A BASEBALL BAT AND BEGAN TO HIT VICTIMS. THE VICTIMS FELL TO THE GROUND BLEEDING. DEFENDANT AND CO-DEFENDANT AS WELL AS OTHERS RAN TO 303 NORTH ROWAN AND OTHERS RAN TO A DATSUN B210 WHICH WAS PARKED IN FRONT OF THAT ADDRESS. THE ADDRESS WAS THAT OF CO-DEFENDANT AND HE WAS IDENTIFIED AS BEING ONE OF THE CULPRITS INVOLVED IN THE ASSAULT. DEFENDANT WAS ALSO AT THAT ADDRESS AND HAD WHAT APPEARED TO BE FRESH BLOOD ON HIS SHOES. THE BLOOD WAS MATCHED TO THE VICTIM'S. ALSO, IN THE YARD WAS FOUND A BASEBALL BAT, ROD, AND TRANSMISSION

-2- (RICHARDS)

1 | SHAFT BY DEPUTIES.  ADDITIONALLY, WAS FOUND A WOODEN CLUB AND A
2 | TOOLED ROD IN THE STREET NEAR WHERE THE ASSAULT TOOK PLACE.  THE
3 | BAT WAS POSITIVELY IDENTIFIED BY ONE OF THE VICTIMS AS THE ONE USED
4 | ON THE DECEASED.  THE TRANSMISSION SHAFT WAS ALSO IDENTIFIED AS A
5 | WEAPON USED IN THE ASSAULT.  DEFENDANT AND CO-DEFENDANT WERE
6 | ARRESTED AT THE TIME FOR ASSAULT WITH A DEADLY WEAPON.

7 | VICTIM RUBEN LOPEZ LIVED IN THE HOSPITAL FROM
8 | SEPTEMBER 6, 1987 UNTIL HE WAS PRONOUNCED DEAD AT 10:40 P.M. ON
9 | SEPTEMBER 15, 1987..  THE CORONER'S OFFICE ATTRIBUTED THE DEATH TO
10 | BLUNT FORCE TRAUMA TO THE HEAD WHICH IS CONSISTENT WITH THE BASEBALL
11 | BAT.  A WITNESS TO THE ASSAULT IDENTIFIED THE DEFENDANT AND
12 | CO-DEFENDANT AS HAVING HIT THE VICTIM WITH A BASEBALL BAT.  DEFENDANT
13 | AND CO-DEFENDANT WERE THEN ARRESTED FOR ATTEMPTED MURDER AND MURDER.

14

15

16

17

18

19

20

21

22

23

-3- (RICHARDS)

| VICTIM: | SOURCES OF INFORMATION (this page) |
|---|---|
| | ARREST REPORT AND VICTIM'S BROTHER |

**NAME**
RUBEN LOPEZ

**COUNT(S)**
1 & 2

**INJURY: PROPERTY LOSS (TYPE / COST / ETC.)**
LOSS OF LIFE.

**INSURANCE COVERAGE**
N/A

| LOSS: ☒ YES ☐ NO | ESTIMATED LOSS<br>LIFE | RESTITUTION ALREADY MADE<br>NONE | APPLIED FOR VICTIM RESTITUTION FUND<br>☒ UNK ☐ YES ☐ NO |
|---|---|---|---|

**VICTIM STATEMENT:**

THIS OFFICER TRIED TO CALL VICTIM'S WIFE AND LEFT A MESSAGE ON HER HOME TELEPHONE BUT AT TIME OF DICTATION NO RESPONSE HAS BEEN RECEIVED.

VICTIM'S BROTHER THINKS THAT THE MURDER WAS GANG-RELATED AND THAT DEFENDANT SHOULD BE HELD RESPONSIBLE. THE VICTIM'S BROTHER DID NOT WANT TO ADD ANYTHING MORE TO THIS.

| RESTITUTION | TOTAL NUMBER OF VICTIMS<br>1 | ESTIMATED LOSS TO ALL VICTIMS<br>LIFE | VICTIM(S) NOTIFIED OF P&S HEARING NEXT<br>☒ YES ☐ NO OF KIN |
|---|---|---|---|
| DOES DEFENDANT HAVE INSURANCE<br>TO COVER RESTITUTION:<br>N/A<br>☐ YES ☐ NO | | INSURANCE COMPANY NAME/ADDRESS/TELEPHONE NO.<br>N/A | |

-4- (RICHARDS)                                    _____ VICTIM LIST CONTINUES NEXT PAGE

PRIOR RECORD:

SOURCES OF INFORMATION (this page)
CLETS (8-22-88), AND DEFENDANT

AKA'S:    NONE.

JUVENILE HISTORY:

NO RECORD.

ADULT HISTORY:

NO RECORD.

-5  (RICHARDS)

PERSONAL HISTORY:

SOURCES OF INFORMATION (this page)
DEFENDANT

SUBSTANCE ABUSE:

_____ No record, indication, or admission of alcohol or controlled substance abuse.

_____ Occasional social or experimental use of _____ acknowledged.

__X___ See below: Indication / admission of significant substance abuse problem.

Referred to Narcotic Evaluator ☐ Yes ☒ No                    _____ Narcotic Evaluator's report attached

Additional information    DEFENDANT STATES THAT HE DRINKS BEER IN THE AMOUNT OF

TWO TO THREE BEERS ON WEEKENDS STARTING AT AGE 18; NEVER USED

MARIJUANA, PHENCYCLIDINE (PCP), HEROIN, COCAINE, STIMULANTS,

DEPRESSANTS, OR HALLUCINOGENS.  DEFENDANT STATES HE HAS NEVER BEEN IN A

DRUG OR ALCOHOL TREATMENT PROGRAM.

PHYSICAL / MENTAL / EMOTIONAL HEALTH:

_____ No indication or claim of significant physical/mental/emotional health problem.

__X___ See below:  Indication / claim of significant physical/mental/emotional health problem.

PERSONAL HISTORY (CONTD.):

PHYSICAL, ETC./ADDITIONAL INFORMATION:

DEFENDANT STATES HE IS IN GOOD HEALTH AT THE PRESENT TIME BUT BROKE HIS RIGHT ARM IN 1972 AND TORE SOME LIGAMENTS IN HIS LEFT ANKLE IN 1985 OR 1986.  DEFENDANT REPORTS NO OTHER PHYSICAL OR EMOTIONAL PROBLEMS OR ALLERGIES.

-7- (RICHARDS)

| PERSONAL HISTORY: (CONTINUED) | | SOURCES OF INFORMATION (this page) DEFENDANT | | |
|---|---|---|---|---|

| RESIDENCE | TYPE RESIDENCE HOUSE | LENGTH OF OCCUPANCY 15.YRS. | MORTGAGE/RENT NONE | RESIDES WITH/RELATIONSHIP GRANDMOTHER |
|---|---|---|---|---|
| RESIDENTIAL STABILITY LAST FIVE YEARS STABLE | | CAME TO STATE / FROM BIRTH | | CAME TO COUNTY / FROM BIRTH |

Additional information

DEFENDANT STATES THAT HE WAS BORN IN THE LOS ANGELES AREA AND HAS LIVED HERE EVER SINCE. DEFENDANT STATES THAT HIS PARENTS SEPARATED AT HIS BIRTH AND DEFENDANT CURRENTLY HAS SEVEN OR EIGHT HALF-BROTHERS ON HIS FATHER'S SIDE.

| MARRIAGE / PARENTHOOD | MARITAL STATUS SINGLE | NAME OF SPOUSE / PRESENT COHABITANT N/A |
|---|---|---|
| LENGTH OF UNION N/A | NO. OF CHILDREN THIS UNION NONE | SUPPORTED BY N/A |
| NO. PRIOR MARRIAGES / COHABITATIONS NONE | NO. OF CHILDREN THESE UNIONS NONE | SUPPORTED BY N/A |
| NO. OF OTHER CHILDREN 1 | SUPPORTED BY GIRLFRIEND | |

Additional information

DEFENDANT STATES THAT HE HAD A CHILD NAMED JOSEPH DANIEL RICHARDS (TWO TO THREE MONTHS) BY A CASUAL RELATIONSHIP WITH TRUDY MASERATI (AGE 17).

| FORMAL EDUCATION: | DEFENDANT STATES THAT HE COMPLETED THE 12TH GRADE AND LEFT SCHOOL AT THE AGE OF 18. DEFENDANT WOULD LIKE TO GO TO TRUCK DRIVING SCHOOL. DEFENDANT WAS GOING TO A MACHINIST SCHOOL FOR A WHILE BUT LOST INTEREST AND DROPPED OUT. |
|---|---|

**PERSONAL HISTORY:**
(CONTINUED)

SOURCES OF INFORMATION (this page)
DEFENDANT

| EMPLOYMENT STATUS | ☐ EMPLOYED ☒ UNEMPLOYED | REFERRED TO WORK FURLOUGH ☐ YES ☒ NO | EMPLOYER AWARE OF PRESENT OFFENSE |  |  |
|---|---|---|---|---|---|
|  |  |  | ☒ N/A | ☐ YES | ☐ NO |

PRESENT/LAST EMPLOYER / ADDRESS / PHONE

COMMUNITY YOUTH GANG
SERVICES
FETTERLY AVE.
ELA, CA

☐ VERIFIED   ☒ UNVERIFIED

OCCUPATION
TREE TRIMMER

PERIOD OF EMPLOYMENT
3 YRS. DURING
SUMMER OF 1985.*

GROSS MONTHLY WAGE
$4.25 PER HR.

EMPLOYMENT STABILITY LAST 5 YEARS
UNSTABLE

TYPES OF PREVIOUS EMPLOYMENT
INVENTORY WORKER AND
DRIVER

Additional information

*1986, AND 1987

DEFENDANT STATES THAT HE WORKED FOR CALIFORNIA DESIGNER
AND DISTRIBUTORS ON RAMONA BOULEVARD IN EL MONTE DURING THE SCHOOL
YEAR OF 1984 UNTIL HIS ARREST IN OCTOBER OF 1987. DEFENDANT WORKED AS
AN INVENTORY KEEPER AND DRIVER FOR $6.50 PER HOUR (CONTD. ON PAGE 10)

| FINANCIAL STATUS | INCOME STABILITY UNSTABLE | NET MONTHLY INCOME NONE |  |
|---|---|---|---|
| PRIMARY INCOME SOURCE NONE | SECONDARY INCOME SOURCE(S) NONE | EST. TOTAL ASSETS 0 | EST. TOTAL LIABILITIES NONE |

MAJOR ASSETS / ESTIMATED VALUE

PERSONAL EFFECTS - 0.

MAJOR LIABILITIES / ESTIMATED AMOUNT (MONTHLY)
NONE

Additional information

DEFENDANT STATES THAT HE HAS NOTHING ANYMORE BECAUSE HIS
FAMILY HAS TAKEN EVERYTHING. DEFENDANT STATES THAT HE IS TOTALLY
DEPENDENT AT THE PRESENT TIME SINCE HE HAS NO INCOME.

GANG ACTIVITY   ☐ YES   ☒ NO          Name of Gang _____

R. (RICHARDS)

1 | PERSONAL HISTORY (CONTD.):

2 | EMPLOYMENT STATUS/ADDITIONAL INFORMATION:

3 | AS A TEMPORARY JOB.  DEFENDANT REPORTS NO OTHER WORK HISTORY.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

-10- (RICHARDS)

1  OTHER RELEVANT DEFENDANT INFORMATION:

2                    MILITARY EXPERIENCE:

3           :           NONE.

4  DEFENDANT'S STATEMENT:

5                    DEFENDANT FEELS THAT HE IS INNOCENT OF THIS CRIME.

6  INTERESTED PARTIES:

7                    INVESTIGATING OFFICER PEAVY OF LOS ANGELES POLICE

8  DEPARTMENT (LAPD) STATES THAT DEFENDANT AND CO-DEFENDANT GOT INTO A

9  FIGHT WITH VICTIM AND APPEARED TO START THE FIGHT.  DEFENDANT WAS

10 OBSERVED BY A WITNESS TO HIT THE DECEASED WITH A BASEBALL BAT

11 WHEN HE WAS DOWN.  DEFENDANT WAS NOT AFFILIATED WITH THE GANG BUT

12 YOUNGER GANG MEMBERS BECAME INVOLVED.  DEFENDANT SHOULD BE HELD

13 RESPONSIBLE AND SHOULD BE INCARCERATED DUE TO THE LOSS OF A LIFE AND

14 THE SERIOUSNESS OF THE CRIME.

15 EVALUATION:

16                    THE DEFENDANT IS A THREAT TO THE COMMUNITY IN THAT HE

17 APPEARS TO HAVE TAKEN A LIFE IN A SITUATION WHICH HAS GANG-RELATED

18 COMPONENTS.  THE VICTIM'S BROTHER FEELS THAT THE ASSAULT WAS

19 GANG-RELATED AND FEELS THAT THE DEFENDANT SHOULD BE HELD RESPONSIBLE.

20 THE DEFENDANT ACCEPTS NO RESPONSIBILITY FOR THE CRIME AND FEELS THAT

21 HE IS INNOCENT.  THE DEFENDANT APPEARS TO DISPLAY NO REMORSE.

22                    THE NATURE, SERIOUSNESS AND CIRCUMSTANCES OF THE

23 CRIME DO NOT INDICATE PREMEDITATION BUT THERE IS SOME SOPHISTICATION

        -11- (RICHARDS)

76C692G — PROB. 5A

1    INASMUCH AS THE WEAPONS WHICH WERE USED.

2              THE DEFENDANT HAS NO PRIOR CRIMINAL RECORD AND HAS

3    NEVER BEEN PLACED ON PROBATION.  ON THIS FACT THE DEFENDANT WOULD

4    APPEAR TO BE A GOOD CANDIDATE FOR A GRANT OF PROBATION.  HOWEVER,

5    DUE TO THE FACT THAT DEFENDANT INVOLVED HIMSELF IN A SITUATION IN

6    WHICH A LIFE WAS LOST THROUGH EXTREME VIOLENCE STATE PRISON WOULD

7    BE APPROPRIATE SINCE THE LOSS CAN NEVER BE REVERSED.

8              SENTENCING CONSIDERATIONS:

9              THE DEFENDANT IS INELIGIBLE FOR PROBATION PURSUANT

10   TO SECTION 1203(E) PENAL CODE UNLESS THE COURT DETERMINES THIS IS

11   AN UNUSUAL CASE.

12              FACTORS IN AGGRAVATION ARE:

13              1.   THE CRIME INVOLVED GREAT VIOLENCE, GREAT BODILY
                     HARM, THREAT OF GREAT BODILY HARM, OR OTHER ACTS
14                   DISCLOSING A HIGH DEGREE OF CRUELTY, VICIOUSNESS
                     OR CALLOUSNESS.
15
                2.   THE DEFENDANT WAS ARMED WITH OR USED A WEAPON
16                   AT THE TIME OF THE COMMISSION OF THE CRIME.

17              FACTORS IN MITIGATION ARE:

18              1.   THE DEFENDANT HAS NO PRIOR RECORD OR AN
                     INSIGNIFICANT RECORD OF CRIMINAL CONDUCT
19                   CONSIDERING THE RECENCY AND FREQUENCY OF PRIOR
                     CRIMES.
20
21              THE TWO FACTORS IN AGGRAVATION WOULD APPEAR TO

22   OUTWEIGH THE SINGLE FACTOR IN MITIGATION, HOWEVER, SINCE THE

23   DEFENDANT HAS NO PRIOR RECORD THE MID-BASE TERM WOULD APPEAR TO BE

     -12- (RICHARDS)

1     APPROPRIATE IN THIS CASE.

2     RECOMMENDATION:

3     :         IT IS RECOMMENDED THAT PROBATION BE DENIED AND THAT

4     DEFENDANT BE SENTENCED TO STATE PRISON WITH PREIMPRISONMENT CREDIT

5     OF 329 DAYS; THAT THE COURT ORDER THE DEFENDANT TO PAY A RESTITUTION

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

-13- (RICHARDS)

1  FINE AS PROVIDED IN SUBDIVISION (A) OF SECTION 13967 OF THE GOVERNMENT

2  CODE.

3  RESPECTFULLY SUBMITTED,

4  BARRY J. NIDORF
   PROBATION OFFICER

5

6  BY _____

7     RONALD D. HUDSON, DEPUTY
      CENTRAL ADULT INVESTIGATIONS

8     213/974-3406

9  READ AND APPROVED:                        I HAVE READ AND CONSIDERED
                                             THE FOREGOING REPORT OF THE
10                                           PROBATION OFFICER.

11 _____
   WILLIAM C. NIENHUIS, SDPO

12 (SUBMITTED: 8-28-88)                      _____
                                            JUDGE OF THE SUPERIOR COURT
13 (TYPED:    8-31-88)
   RDH:SS (7)

14
              IF PROBATION IS GRANTED, IT IS RECOMMENDED THAT
15
   THE COURT DETERMINES DEFENDANT'S ABILITY TO PAY COST OF PROBATION
16
   SERVICES PURSUANT TO SECTION 1203.1B PENAL CODE.  COST OF PRESENTENCE
17
   INVESTIGATION AND PRESENTENCE REPORT - $429.00.  COST OF SUPERVISION
18
   - $28.00 PER MONTH.
19

20

21

22

23

   -14- (RICHARDS)



## ADULT COMMITMENT TRANSMITTAL

RECEIVED
RECORDS OFFICE

89 OCT 10 PM 2:32

R.J. DONOVAN CORR. FACILITY STAMP

**ROUTING**

1. Retain Green copy for Probation Case File.
2. Send 1st & 2nd copies, with carbon intact and necessary reports attached, to:

   STATE COMMITMENT EXPEDITER
   320 W. Temple St., Suite 180
   Los Angeles, Ca. 90012

The Los Angeles County Probation Department State Commitment Expediter transmits this form and attached reports to:

☐ California Youth Authority
☒ Department of Corrections
☐ Department of Mental Hygiene

DOB 9-4-66

| SEX | DEFENDANT'S NAME — LAST, FIRST, MIDDLE INITIAL | EXPEDITER USE ONLY |
|---|---|---|
| ☒ M  ☐ F | RICHARDS, DANIEL A. AKA: RICHARDS, DANIEL ALBERT | CDC NO. E00575 |

| PROBATION NO. | INVESTIGATION | | SUPERVISION | | DELIVERY DATE Arine |
|---|---|---|---|---|---|
| X— 223059 | AREA OFFICE CAI | | AREA OFFICE | | 11-7-88 |
| | DPO NO. HUDSON | | DPO NO. | | |

| DATE OF COURT ORDER | | | COMMITTING COURT | DISTRICT | DEPT./DIV. | COURT NUMBER(S) |
|---|---|---|---|---|---|---|
| month 10 | day 28 | year 88 | LOS ANGELES | CENTRAL | 119 | A958631 |

SHERIFF'S BOOKING NUMBER / JUV. HALL

9328378

| PAROLE STATUS | ORDERED COMMITTED TO: |
|---|---|
| ☒ NOT ON PAROLE  ☐ ACTIVE CASE | ☐ PRISON (1203.03 P.C.)  ☐ HOSPITAL (MDSO or other DMH)  ☐ CYA |
| ☐ CYA  ☐ Dept. of Corrections  ☐ C.R.C. | ☐ CYA DIAGNOSTIC STUDY (707.2 W.I.C.)  ☒ STATE PRISON |
| STATE NO. _____ | ☐ PRISON (1170 P.C.) |
| TERMINATION DATE _____ | ☐ PRISON (1731.5(d) |

| REPORTS ATTACHED | CYA DIAG. | CYA | STATE PRISON | DMH |
|---|---|---|---|---|
| | | | Required Copies of Each | |
| 1. P&S INVESTIGATION REPORTS (ALL)  9/7/88 | 3 | 3 | 1 | 1 |
| 2. VIOLATION/MODIFICATION/SUPPLEMENTAL REPORTS | N/A | 3 | 1 | 1 |
| 3. AVAILABLE PSYCHIATRIC OR PSYCHOLOGICAL REPORTS | 2 | 2 | | |
| 4. AVAILABLE MEDICAL REPORTS | 2 | 2 | | |
| 5. AVAILABLE DEPARTMENT OF MENTAL HYGIENE REPORTS | 2 | 2 | | |
| 6. YOUTH AUTHORITY FORM NO. Y.A. 1.411 | 1 | 1 | | |
| 7. ARREST REPORT ON OFFENSES(S) REFERRED | 2 | | | |
| 8. CALIFORNIA EDUCATIONAL CUMULATIVE RECORD/SCHOOL REPORT | 1 | | | |

| REVIEWED FOR COMPLETENESS AND MAILED BY | |
|---|---|
| INITIALS | DATE |
| PMY | 11/4/88 |

76A295S—Prob. 898 (Rev. 5/84)



# LOS ANGELES COUNTY DISTRICT ATTORNEY'S OFFICE
BUREAU OF PROSECUTION SUPPORT OPERATIONS
LIFER HEARINGS UNIT

STEVE COOLEY • District Attorney                                    JOHN PAUL BERNARDI • Director
CURT LIVESAY• Chief Deputy District Attorney
SHARON J. MATSUMOTO • Assistant District Attorney

September 25, 2003


D. S. LEVORSE, C&PR
BOARD OF PRISON TERMS
CTF SOLEDAD
P. O. BOX 686
SOLEDAD, CA 93960

In Re:    DANIEL RICHARDS E00575

The above inmate hadhis parole consideration hearing at your
institution on 9-4-03.

At that time the Board requested the enclosed documents. This
office would like the enclosed reports to be placed in the inmates
Cfile. Please place in Legal Document and DO NOT PLACE IN
CONFIDENTIAL.

Thank you for your assistance.

Very truly yours,

STEVE COOLEY
DISTRICT ATTORNEY

David Dahle

DAVID DAHLE
HEAD DEPUTY DISTRICT ATTORNEY
213-974-3852


17-304 Criminal Courts Building
210 West Temple Street
Los Angeles, CA 90012

AL STATUS SUMMARY  TYPE-   D     CTF-C                    04/13/2004 21:48

| DC NUMBER | NAME | ETHNIC | BIRTHDATE |
|---|---|---|---|
| E00575 | RICHARDS,DANIEL | MEX | 09/04/1966 |

| ERM STARTS | LIFE TERM STARTS | MIN ELIGIBLE PAROLE DTE |
|---|---|---|
| 11/07/1988 | 11/07/1988 | 10/14/1997 |

|  | PAROLE PERIOD |
|---|---|
| E TERM 15/00 + ENHCMNTS   0/00 = TOT TERM  15/00 TO LIFE | LIFE |

E-PRISON + POST SENTENCE CREDITS
SE    P2900-5 P1203-3 P2900-1 CRC-CRED MH-CRED P4019   P2931 POST-SENT  TOT

58631    380                                   190                9    579

296 DNA COMPLETED
TIFICATION REQUIRED PER PC3058.6

C. HEARING: --/----    DEFENSE ATTORNEY: YOST, J
IT. HEARING: 10/1996   INVESTIGATING AGENCY:  LOS ANGELES CO/SO

ECV DT/ COUNTY/    CASE    SENTENCE DATE                    CREDIT    OFFENSE
ENT      OFF-CODE  DESCRIPTION                              CODE      DATE

NTROLLING PRINCIPAL & CONSECUTIVE   (INCLUDES ENHANCEMENTS/OFFENSES):

CONTROLLING CASE ---
/07/1988 LA    A958631       10/28/1988
01 P187 2ND   MURDER 2ND                                32  09/06/1987
              (B)WPN

AN                                    RULE        D A Y S
PE    DATE    END DATE LOG NUMBER   NUMBER  ASSESS LOST REST DEAD

3 11/07/1988            ******BEG BAL******
 CURRENT PC BALANCE:   408          CURRENT BC BALANCE:   1224

## SOCIAL FACTORS

| PARENTS | NAME | DOB/AGE | OCCUPATION | ADDRESS |
|---------|------|---------|------------|---------|
| MOTHER: Sara Chacon | | 40 | Welfare | 3713 E.Michigan Ave Los Angeles, CA |
| FATHER: Albert Richards | | 44 | Unknown | Nelson Street LaPuente, CA |

===========================================================================

| SIBLINGS | DOB/AGE | SIBLINGS | DOB/AGE |
|----------|---------|----------|---------|
| Anthony Richards | 20 | | |
| Michael Richards | 17 | | |
| Stevewn Guiterrez | 9 | | |

===========================================================================

| MARRIAGES | LOCATION | DATE | CURRENT ADDRESS | OUTCOME |
|-----------|----------|------|-----------------|---------|
| None | | | | |

NOT LEGALIZED

Trudy Maserati - Casual Relationship only

===========================================================================

| CHILDREN | DOB/AGE | SUPPORTED BY | LIVING WITH |
|----------|---------|--------------|-------------|
| Joseph | 1 year | SSI Benefits | Mother/Trudy M. |

===========================================================================

FAMILY ARREST HISTORY

Anthony (Brother) - GTA - Local
1Michael (Brother) - Assault P/O - Local

===========================================================================

SOCIAL SECURITY NUMBER:    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/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
DRIVER'S LICENSE:          C-5474591 - States expired 1988
RELIGION:

| NAME | RICHARDS, DANIEL | NUMBER | E-00575 | DATE | 12/88 |
|------|------------------|--------|---------|------|-------|

hsh

INITIAL PSYCHOLOGICAL SCREENING

TESTS ADMINISTERED:          California Achievement Test, Shipley Institute
                             of Living Scale, Minnesota Multiphasic
                             Personality Inventory, Sentence Completion,
                             Draw-A-Person, Who-Are-You, Personal
                             Information.

INTELLECTUAL
CLASSIFICATION:              05/Average


                             John T. Freeman, Ph.D.
                             Senior Psychologist


A Battery

INSTITUTIONAL STAFF RECOMMENDATION SUMMARY

SOURCES OF REPORT:  Personal interview, Los Angeles County Probation
Officer's Report dated 9/7/88, Abstract of Judgment in Case #A958631.

CONFIDENTIAL INFORMATION:  None.

HOLDS/DETAINERS:  None per file or subject.

MEDICAL/DENTAL:  Full duty and camp.  Dental Class:  II

PSYCHIATRIC/PSYCHOLOGICAL:  Referral indicated due to nature of offense.
                          Dr. John T. Freeman, Senior Psychologist

WORK SKILLS:  Claimed:  Driver/Inventory Clerk/Tree Trimmer.

NARCOTICS/DRUGS/ALCOHOL:  States has never used any illegal form of
dangerous drugs and/or narcotics.

Alcohol:  States social drinker.

ESCAPE HISTORY:  None per file or subject.

ARSON HISTORY:  None per file or subject.

SEX RELATED OFFENSES:  None per file or subject.

ACADEMIC/VOCATIONAL:  GPL:  7.9       Shipley/Hartford I.Q.:  95

Academic:  A claimed high school graduate who expresses interest in
college level engineering courses during present term.

Vocational:  Claims to have attended machinist school in East Los
Angeles Trade Center for one semester in 1983 and one and a half
semesters in 1984.  Expresses interest in continued trade training but
undecided with regard to a specific choice.

CASEWORK FOLLOW-UP:  Abstract of Judgment in this case contains a court
ordered restitution fine of $100.

EVALUATION:  Richards is a 22 year old first termer with no apparent
prior arrest record.  With regard to his second degree murder commitment
in which he and crime partner Fernandez were two of several people who
attacked the victim and his brother, hitting and knifing the deceased
until he was knocked to the ground where he was subsequently assaulted
with a baseball bat and a transmission shaft, Richards maintains he is
guilty of assault only, stating he is covering up for his younger
brother Michael and his companions, all of whom are members of the
Thompson Street Boys gang.

RICHARDS          E-00575          RCC/CIM          12/5/88          HSH

Available information reflects the victim died nine days later of blunt force injuries to the head connected with the baseball bat attack upon him.  A witness stated the subject and crime partner Fernandez attacked the deceased with the baseball bat, and blood on Richards' shoes subsequently was tested and found to match that of the victim.  However, subject maintains this information is in error, and the results of blood testing revealed that the blood found on his shoes was his, not the victim's.   Noted is the fact that the victim's brother feels this murder was gang-related, and subject is responsible.  Investigating Officer Peavy advises Richards was observed by a witness to strike the victim with a baseball bat when the deceased was down.

Management problem potential in this case is anticipated to be average.

RE-ENTRY PLANS:  Not applicable.

CLASSIFICATION SCORE:  50                CUSTODY LEVEL:  III

INSTITUTION RECOMMENDATION:  CTF/DVI/RJD    Subject requests latter facility to facilitate visiting.

REASON FOR OUT OF CLASS RECOMMENDATION:

CORRECTIONAL COUNSELOR:  C. D. Goes, CC I              12/2/88

SUPERVISOR'S RECOMMENDATION:    CTF/CDC-812 clear

N. Brown, CC-II   12/5/88          LJW   12/7/88              RCC/CIM

RICHARDS            E-00575          RCC/CIM            12/5/88        HSH

E-0057

1-4e (Rev 11-22-77)

# UNITED STATES DEPARTMENT OF JUSTICE
## FEDERAL BUREAU OF INVESTIGATION
### IDENTIFICATION DIVISION
### WASHINGTON,D.C. 20537

PAGE     1

03/21/89

Use of the following FBI record, NUMBER    617 241 HA4        is REGULATED BY LAW.  It is furnished FOR
OFFICIAL USE ONLY and should ONLY BE USED FOR PURPOSE REQUESTED.  When further explanation of arrest charge    02
or disposition is needed, communicate directly with the agency that contributed the fingerprints.

| Contributor: Identifier (ORI) Name Case Number (OCA) | Subject: Name State Number (SID) | Arrested or Received | C — Charge  D — Disposition |
|---|---|---|---|
| NATIONAL CRIME INFORMATION CENTER FGPT. | | CLASS: | PM 13 13 11 12 PM 11 17 11 07 |
| CA0190000 SHERIFF'S OFFICE LOS ANGELES,CA 9273439 | RICHARDS, DANIEL CA08605405 | 09/06/87 | C-ADW NO FIREARMS/GBI |
| CA0190000 SHERIFF'S OFFICE LOS ANGELES,CA 9328378 | RICHARDS, DANIEL ALBERT CA08605405 | 10/14/87 | C-MURDER |
| CA036015C INSTITUTE FOR MEN CHINO,CA E-00575 | RICHARD, DANIEL CA08605405 | PRT REC 03/10/89 DOS: W | C-CT1 MURDER 2ND D-15 YEARS TO LIFE |
| CONTRIBUTOR COPY CA036015C INSTITUTE FOR MEN CHINO,CA | | | |

RID 58
13-9

STATE OF CALIFORNIA                REQUESTED FOR:CAS CORRECTIONS
DEPARTMENT OF JUSTICE              ATTN:
BUREAU OF CRIMINAL                 REQUESTED BY:CA0349400   MNEMONIC:CXD
IDENTIFICATION                     DATE:04-07-89  TIME-10:16:25  PAGE:001

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CRIMINAL HISTORY TRANSCRIPT          FOR OFFICIAL USE ONLY
        *UNAUTHORIZED USE IS A CRIMINAL OFFENSE*

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

***III CALIFORNIA ONLY RECORD

CII NUMBER    DOB      SEX  RACE   HGT  WGT  EYE   HAIR   POB
A08605405  09-04-1966   M    H     507  178  BRO   BRO    CA

NAMES
01 RICHARDS,DANIEL                 02 RICHARDS,DANIEL ALBERT
03 RICHARD,DANIEL

MISCELLANEOUS NUMBERS
FBI-617241HA4
CDL-C5474591
SOC-968392920    568392920
INN-CDC-E00575

SCARS/MARKS/TATTOOS
SC R ELB

OCCUPATIONS
MACHINIST

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

DATE      AGENCY/FILE NUMBER    NAME  COUNT        ACTION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ARREST/DETAINED/CITED
09-06-87  CASOLOS ANGELES         01    01   245(A)(1) PC-ADW OR GBI
          9273439-871267502                 FORCE:NOT FIREARM

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

ARREST/DETAINED/CITED
10-14-87  CASOLOS ANGELES         02    01   -WARRANT
          9328378                           187(A) PC-MURDER
                                       COM:
                                       WARR A958631

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

CDC CUSTODY
11-07-88  CASDCORRECTIONS         03    01   187 PC-MURDER:SECOND
          E00575                             DEGREE
                                       SEN:
                                       015 YEARS TO LIFE PRISON
                                         COUNTY SENTENCED FROM:
                                         LOS ANGELES CO
                                       COURT #:A958631

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

END OF TRANSCRIPT                                          09000

Exhibit "B"

SUBSEQUENT PAROLE CONSIDERATION HEARING

STATE OF CALIFORNIA

BOARD OF PAROLE HEARINGS

In the matter of the Life )
Term Parole Consideration )
Hearing of:               )        CDC Number E-00575
                          )
DANIEL RICHARDS           )
                          )
_____)

INMATE COPY

CORRECTIONAL TRAINING FACILITY

SOLEDAD, CALIFORNIA

MAY 2, 2006

PANEL PRESENT:

ARCHIE JOE BIGGERS, Presiding Commissioner
ROLANDO MEJIA, Deputy Commissioner

OTHERS PRESENT:

DANIEL RICHARDS, Inmate
LAWRENCE MORRISON, Deputy District Attorney
KATERA E. RUTLEDGE, Attorney for Inmate
Correctional Officer, Unidentified

CORRECTIONS TO THE DECISION HAVE BEEN MADE

_____  No      See Review of Hearing
_____  Yes     Transcript Memorandum

**Ruby M. Dougherty, Peters Shorthand Reporting**

ii

## INDEX

| | PAGE |
|---|---|
| Proceedings | 1 |
| Case Factors | 10 |
| Pre-Commitment Factors | 26 |
| Post-Commitment Factors | 28 |
| Parole Plans | 33 |
| Closing Statements | 54 |
| Recess | 69 |
| Decision | 70 |
| Adjournment | 77 |
| Transcriber Certification | 78 |

--oOo--

1

1        P R O C E E D I N G S

2            DEPUTY COMMISSIONER MEJIA:   -- record

3        now.

4            PRESIDING COMMISSIONER BIGGERS:  Okay.

5        This is a subsequent parole consideration

6        hearing for a Daniel Richards, R-I-C-H-A-R-D-S,

7        CDC No. E-00575.  Today's date is May the 2nd,

8        2006, and we are located at the Correctional

9        Training Facility in Soledad.  Inmate was

10       received on November the 7th, 1988, from Los

11       Angeles County.  The life term began on November

12       the 7th, 1988.  Controlling offense for which

13       the inmate has been committed is murder, second-

14       degree, Case No. A958631, Count One which is a

15       violation of Penal Code PC187.  The inmate

16       received a term of 15 years to life.  This

17       hearing is being tape-recorded and for the

18       purpose of voice-identification, each of us will

19       state our first and last name, spelling our last

20       name.  When we get to you, Mr. Richards, would

21       you please give us -- after you spell your last

22       name, please give us your CDC number.

23           INMATE RICHARDS:  Okay.

24           PRESIDING COMMISSIONER BIGGERS:  I will

25       start and move to my left.  My name is Archie

26       Joe Biggers, B-I-G-G-E-R-S, and I'm a

27       Commissioner.

2

 1          DEPUTY COMMISSIONER MEJIA:  Rolando

 2     Mejia, M-E-J-I-A, Deputy Commissioner.

 3          DEPUTY DISTRICT ATTORNEY MORRISON:

 4     Lawrence Morrison, M-O-R-R-I-S-O-N, Los Angeles

 5     District Attorney.

 6          ATTORNEY RUTLEDGE:  Katera E. Rutledge,

 7     R-U-T-L-E-D-G-E, attorney for Mr. Richards.

 8          INMATE RICHARDS:  Daniel Richards,

 9     R-I-C-H-A-R-D-S, E-00575.

10        [Recording equipment malfunction, recording

11     speed, placement of equipment, background noise,

12          and volume of participants resulted in

13                 indiscernible content.]

14          PRESIDING COMMISSIONER BIGGERS:  Thank

15     you very much.  For the record, note that there

16     are -- one Correctional Officer present for

17     security purposes only who will not be

18     participating in the hearing.  Mr. Richards

19     there is a ADA Statement right under your folder

20     right there.  Could you please read that out

21     loud for us?

22          INMATE RICHARDS:  "The Americans

23               with Disabilities Act, ADA, is a

24               law to help people with

25               disabilities.  Disabilities are

26               problems that make it harder for

27               some people to see, hear, breathe,

3

1             talk, walk, learn, think, work, or

2             take care of themselves than it is

3             for others.  Nobody can keep out

4             of public places or activities

5             because of a disability.  If you

6             have a disability you have the

7             right to ask for help to get ready

8             for your BPT hearing, to get to

9             the hearing, talk, read forms and

10            papers, and understand the hearing

11            process.  BPT will look at what

12            you ask for to make sure that you

13            have a disability that is covered

14            by the ADA, and that you have

15            asked for the right kind of help.

16            If you do not need help, or if you

17            don't think you got the kind of

18            help you need, ask for a BPT 1074

19            Grievance Form.  You can also get

20            help to fill it out."

21            **PRESIDING COMMISSIONER BIGGERS:**  Okay.

22 What does that mean to you, sir?

23            **INMATE RICHARDS:**  If I have a disability,

24 I'll ask for help.

25            **PRESIDING COMMISSIONER BIGGERS:**  Yeah,

26 but what kind of disability?

27            **INMATE RICHARDS:**  Any kind.

4

1          PRESIDING COMMISSIONER BIGGERS:  Okay.

2          INMATE RICHARDS:  It says right here --

3          PRESIDING COMMISSIONER BIGGERS:  -- get

4    it in your own words to make sure that your

5    rights are being protected.  Do you wear

6    glasses, sir?

7          INMATE RICHARDS:  No, I don't.

8          PRESIDING COMMISSIONER BIGGERS:  You

9    don't wear glasses.  You don't have any hearing

10   problems or --

11         INMATE RICHARDS:  No, I don't.

12         PRESIDING COMMISSIONER BIGGERS:  Have you

13   ever been involved with the Triple CMS or EOP?

14         INMATE RICHARDS:  No, I haven't.

15         PRESIDING COMMISSIONER BIGGERS:  The

16   record reflects that on August 16th in 2005 you

17   signed a form 1073 indicating that you had no

18   ADA issues.

19         INMATE RICHARDS:  Yes.

20         PRESIDING COMMISSIONER BIGGERS:  Is that

21   still correct?

22         INMATE RICHARDS:  Yes.

23         PRESIDING COMMISSIONER BIGGERS:  So

24   there's nothing that -- do you suffer from

25   anything -- any disability that would prevent

26   you from participating in today's hearing?

27         INMATE RICHARDS:  No (indiscernible).

5

1          PRESIDING COMMISSIONER BIGGERS:  Okay.

2   This hearing is being conducted pursuant to

3   Penal Code Section 3041 and 3042 and the rules

4   and regulations of the Board of Prison Hearings

5   governing parole consideration hearings for life

6   inmates.  The purpose of today's hearing is to

7   once again consider the number and the nature of

8   the crimes you were committed for, you prior

9   criminal and social history, and your behavior

10  and programming since your commitment.  We've

11  had the opportunity to review your Central File

12  and your prior transcript, and you will be given

13  the opportunity to correct or clarify the

14  record.  We will reach a decision today and

15  inform you whether or not we find you suitable

16  for parole and the reasons for our decision.  If

17  you are found suitable, the length of your

18  confinement will be explained to you.  Nothing

19  that happens here today will change the finding

20  of the Court.  The Panel is not here to retry

21  your case.  Do you understand that?

22          INMATE RICHARDS:  Yes.

23          PRESIDING COMMISSIONER BIGGERS:  The

24  Panel is here for the sole purpose of

25  determining your suitability for parole.  Do you

26  understand this?

27          INMATE RICHARDS:  Yes.

6

1          **PRESIDING COMMISSIONER BIGGERS:**   The

2    hearing will be conducted in three phases.   I

3    will discuss with you your crime for which you

4    were committed, your prior criminal and social

5    history.   Deputy Commissioner Mejia will discuss

6    with you your progress since your commitment,

7    counselor's report, the psychological

8    evaluation, and your parole plans.   Then I will

9    come back and speak any letters of opposition

10   that may be in your file.   Deputy Commissioner

11   will also talk about your support letters.   Once

12   that is concluded, both Commissioners the

13   District Attorney and your attorney will be

14   given the opportunity to ask you questions.

15   Questions from the District Attorney shall be

16   asked through the Chair, and you will direct

17   your answers to the Panel.   Next the District

18   Attorney, then your attorney then you will be

19   given an opportunity to make a final statement

20   regarding your parole suitability.   Your

21   statement should address why you feel you're

22   suitable for parole.   Do you understand that?

23          **INMATE RICHARDS:**   Yes, Sir.

24          **PRESIDING COMMISSIONER BIGGERS:**   The

25   Panel will then recess, clear the room and

26   deliberate.   Once the deliberations are

27   complete, the Panel will resume the hearing and

7

1    announce its decision.  The California Code of

2    Regulations states that regardless of time

3    served a life inmate shall be found unsuitable

4    for and denied parole if in the judgment of the

5    Panel the inmate would pose an unreasonable risk

6    of danger to society if released from prison.

7    You have certain rights.  These rights include

8    the right to a timely notice of this hearing,

9    the right to review your Central File -- did you

10   review your Central File at this

11   (indiscernible)?

12         INMATE RICHARDS:  Yes, I did.

13         PRESIDING COMMISSIONER BIGGERS:  Yeah, I

14   noticed in the record that you didn't review it

15   in 2004.  Was there a reason for that?

16         INMATE RICHARDS:  No (indiscernible)

17   wasn't.

18         PRESIDING COMMISSIONER BIGGERS:  Just

19   decided not to do it?

20         INMATE RICHARDS:  No, I -- I just glanced

21   at it and that was it.

22         PRESIDING COMMISSIONER BIGGERS:  Okay.

23   But you did do it for this hearing?

24         INMATE RICHARDS:  Yes.

25         PRESIDING COMMISSIONER BIGGERS:  -- and

26   the right to present relevant documents.  Ms.

27   Rutledge, do you feel that your client's rights

8

1   have been met?

2          **ATTORNEY RUTLEDGE:**  Yes.

3          **PRESIDING COMMISSIONER BIGGERS:**  Thank

4   you.  You have an additional right to be heard

5   by an impartial Panel.  Do you have any

6   objections to the Panel members?

7          **INMATE RICHARDS:**  No, I don't.

8          **PRESIDING COMMISSIONER BIGGERS:**  Okay,

9   thank you.  You will receive a written notice of

10   our tentative decision today.  The decision

11   becomes effective within 120-days.  A copy of

12   the decision and a copy of the transcript will

13   be sent to you and you will have 90 days from

14   that date to appeal if you so desire.  The Board

15   has eliminated its appeals process.  If you

16   disagree with anything at today's hearing you

17   have the right to go directly to the Court

18   (indiscernible).  Do you understand this?

19          **INMATE RICHARDS:**  Yes, Sir.

20          **PRESIDING COMMISSIONER BIGGERS:**  You are

21   not required to admit your offense or discuss

22   your offense.  However, the Panel does accept

23   the findings of the Court to be true.  Do you

24   understand this?

25          **INMATE RICHARDS:**  Yes.

26          **PRESIDING COMMISSIONER BIGGERS:**

27   Commissioner Mejia is there any confidential

9

1   information in the file?

2       **DEPUTY COMMISSIONER MEJIA:**  No, no

3   confidential information.

4       **PRESIDING COMMISSIONER BIGGERS:**  Thank

5   you.  I'm going to pass over to your attorney

6   and the District Attorney what I will mark as

7   Exhibit One.

8       **DEPUTY DISTRICT ATTORNEY MORRISON:**  The

9   DA has all the documents, thank you.

10      **ATTORNEY RUTLEDGE:**  Yes, thank you, we

11  have all the documents.

12      **PRESIDING COMMISSIONER BIGGERS:**  Thank

13  you.  Thank you both.  Are there any additional

14  documents to be submitted, Ms. Rutledge?

15      **ATTORNEY RUTLEDGE:**  No, Sir.

16      **PRESIDING COMMISSIONER BIGGERS:**  Are

17  there any preliminary objections?

18      **ATTORNEY RUTLEDGE:**  Yes, we would object

19  to all the contents of the letter submitted by

20  the Sheriff's Department.

21      **PRESIDING COMMISSIONER BIGGERS:**  On what

22  grounds?

23      **ATTORNEY RUTLEDGE:**  Wait a minute.  I'm

24  sorry.  Excuse me.  That's not (indiscernible)

25  got my hearing's mixed up.  I withdraw that.

26      **PRESIDING COMMISSIONER BIGGERS:**  Thank

27  you.  Are there any others?

10

1          **ATTORNEY RUTLEDGE:**  No.

2          **PRESIDING COMMISSIONER BIGGERS:**  Thank

3    you very much.  Will the inmate be speaking with

4    us today?

5          **ATTORNEY RUTLEDGE:**  Yes.

6          **PRESIDING COMMISSIONER BIGGERS:**  Okay.

7    Will you raise your right hand Mr. Richards?  Do

8    you solemnly swear or affirm that the testimony

9    you give at this hearing will be the truth and

10   nothing but the truth?

11         **INMATE RICHARDS:**  Yes, I do.

12         **PRESIDING COMMISSIONER BIGGERS:**  Okay.

13   Thank you very much.  I'm going to read the --

14   into the record the Summary of the Crime from

15   the Board Report -- 2004 Board Report.  It's not

16   very clear in the Appellate Decision.

17              "On September the 6th, 1987, at

18              approximately 9:31 p.m. at 323

19              Wrowan, W-R-O-W-A-N, One Avenue

20              East in East Los Angeles,

21              California, victim Lopez and a

22              companion had been walking down

23              the street where they were

24              approached by several people

25              including Mr. Richards and

26              co-defendant.  One of the

27              individuals said, what did you

11

1       say, in a hostile and provoking

2       manner.  Mr. Richards and

3       co-defendant then began to hit and

4       kick the victim and his companion.

5       Someone had a baseball bat and

6       began to hit the victim.  The

7       victim fell to the ground,

8       bleeding.  Mr. Richards and

9       co-defendant as well as others ran

10      to 303 North Wrowan -- I'm sorry,

11      Wrowan One Avenue.  Some ran to a

12      Datsun B210 who was parked in

13      front of the address.  The address

14      was that of the co-defendant, and

15      he was identified as being one of

16      the culprits involved in the

17      assaults.  Mr. Richards was also

18      at that address and had what

19      appeared to be fresh blood on his

20      shoes.  The blood was matched to

21      the victim.  In the yard was a

22      baseball bat, rod, and

23      transmission shaft discovered by

24      the deputies.  In addition a

25      wooden club and a tool rod was

26      found in the street near where the

27      assault took place.  The bat was

12

1          positively identified by one of

2          the victims as the one used on the

3          deceased.  The transmission shaft

4          was also identified as a weapon in

5          the assault.  The defendant and

6          co-defendants were arrested at the

7          time of the assault with a deadly

8          weapon.  The victim, Reuben Lopez,

9          lived in the hospital from

10         September 6th, 1987, until he was

11         pronounced dead at 10:40 p.m. on

12         September the 15th, 1987.  The

13         coroners attributed his death to a

14         blunt force trauma to the head,

15         which is consistent with the

16         baseball bat.  A witness of the

17         assault identified Mr. Richards

18         and the co-defendant as having hit

19         the victim with a baseball bat.

20         Mr. Richards and co-defendant were

21         then arrested for attempted murder

22         and murder."

23  Does that sound like a -- true?

24         **INMATE RICHARDS:**  No.

25         **PRESIDING COMMISSIONER BIGGERS:**  Okay.

26         **INMATE RICHARDS:**  I was the one that was

27  accosted at first.  I was stabbed in the hand,

13

1   and I was bleeding.  The blood -- the blood they

2   says was matched to the victim, on my last

3   hearing they had the DA check about the blood,

4   and the blood wasn't -- it was found that it

5   didn't match the victim.  The blood was my

6   blood.

7       PRESIDING COMMISSIONER BIGGERS:  Did you

8   -- I don't have any.  At this point I'll ask the

9   District Attorney, did you get a request for

10  that, sir?

11      DEPUTY DISTRICT ATTORNEY MORRISON:  I

12  haven't looked at the transcript, but we have no

13  information in the file.  The previous DA did

14  not make any arrangements for tests.

15      PRESIDING COMMISSIONER BIGGERS:  I don't

16  have anything in my file that indicates that as

17  well.

18      ATTORNEY RUTLEDGE:  If you give me the

19  transcript, I'll look through it for you, unless

20  --

21      DEPUTY DISTRICT ATTORNEY MORRISON:  We

22  have the police reports that have previously

23  been provided --

24      INMATE RICHARDS:  (Indiscernible) should

25  have brought my court transcripts and my

26  transcripts from last time --

27      ATTORNEY RUTLEDGE:  Yes, okay, it's --

14

1          PRESIDING COMMISSIONER BIGGERS:   It was

2   not in the decision.

3          ATTORNEY RUTLEDGE:   No, it's not in the

4   decision, but -- I'll check (indiscernible)

5          DEPUTY COMMISSIONER MEJIA:   I think

6   someone in 2000 --

7          INMATE RICHARDS:   -- and three, the last

8   hearing.

9          PRESIDING COMMISSIONER BIGGERS:   Mr.

10  Richards I have a couple other questions I'd

11  like to talk to you about.  You said that you

12  were provoked into this incident?

13         INMATE RICHARDS:   They were rob -- they

14  were going to rob me.

15         PRESIDING COMMISSIONER BIGGERS:   How were

16  they gonna rob you?

17         INMATE RICHARDS:   They asked me for my

18  money.  The victim tried to get my chain.  I

19  told him I didn't have no money, and when he

20  came to get my chain I hit him, and when I hit

21  him he got up, he stabbed me into the hand and I

22  went into shock.

23         PRESIDING COMMISSIONER BIGGERS:   Went

24  into shock -- you say you went into shock

25  mentally?

26         INMATE RICHARDS:   Yeah, well, I was

27  scared.  He told me he was going to kill me.  I

15

1  was backing up out of the alley.  At that time

2  my brother's friends came running down the alley

3  from the other side -- seen what was happening,

4  and when I seen a lot of people there I didn't

5  know where they were at first.  My

6  co-defendant's little brother --

7        PRESIDING COMMISSIONER BIGGERS:  Your

8  little brother or your co-defendant's little

9  brother?

10        INMATE RICHARDS:  My little brother came

11  running from the alley, from the other side.  My

12  co-defendant's little brother came running from

13  the house, from 303 Wrowan and he seen what

14  happened and he got me and he told me to run and

15  so I ran to my co-defendant's house and I seen a

16  lot of bodies.  A lot of people and about five

17  minutes later when the officer's came and they

18  arrested -- there was about seven of us that got

19  arrested and they arrested me for having blood.

20        PRESIDING COMMISSIONER BIGGERS:  How was

21  your little brother involved?

22        INMATE RICHARDS:  Well, they seen what

23  was happening and they came to -- I guess to my

24  rescue.

25        PRESIDING COMMISSIONER BIGGERS:  Came to

26  your rescue.  Did he hit the victim?

27        INMATE RICHARDS:  He was involved.

16

1          PRESIDING COMMISSIONER BIGGERS:  He was

2   involved.

3          INMATE RICHARDS:  He was involved.

4   Well, I ask you again, did he hit the victim?

5          INMATE RICHARDS:  I don't really know,

6   but I know he was involved.

7          PRESIDING COMMISSIONER BIGGERS:  I'm

8   looking at the Appellate Decision here, and

9   according to the Appellate Decision -- have you

10  seen a copy of this?

11         INMATE RICHARDS:  Yes.

12         PRESIDING COMMISSIONER BIGGERS:  Okay.

13  It's a little bit different than what you just

14  mentioned to us.  Is that correct?

15         INMATE RICHARDS:  It's been awhile since

16  I seen it, but --

17         PRESIDING COMMISSIONER BIGGERS:  It

18  indicated that -- that you and Fernandez arrived

19  after a group of approximately 15 men came down

20  from the alley.  That -- that you attacked

21  Reuben with a metal baseball bat.  That you

22  swung the bat back and forth from the left and

23  right and real fast.  And you struck Reuben in

24  the head and chest four times and that --

25         INMATE RICHARDS:  That's what I was

26  convicted OF, but my argument is if I had the

27  bat, knowing I was bleeding, it should have my

17

1  blood on it.

2      **PRESIDING COMMISSIONER BIGGERS:**  Well --

3      **INMATE RICHARDS:**  I was convicted of it.

4  I understand that --

5      **PRESIDING COMMISSIONER BIGGERS:**  Yes.

6      **INMATE RICHARDS:**  -- and I take

7  responsibility for that now.

8      **PRESIDING COMMISSIONER BIGGERS:**  What do

9  you think about the victim?

10      **INMATE RICHARDS:**  I feel sorry for him

11  and for his family.  I mean, it was a tragic

12  mistake.  I wish I could take it back.  I wish I

13  could go back to that day and I wouldn't be

14  there.

15      **PRESIDING COMMISSIONER BIGGERS:**  But at

16  the same time you keep saying that your little

17  brother was involved, but you don't want to say

18  to what his involvement was.

19      **INMATE RICHARDS:**  I really don't know his

20  complete involvement in it, you know.  He told

21  me he was there; he was involved.  I mean, he

22  told me, just -- I told him I was riding this

23  because that's the way I was brought up.  I'm

24  the oldest and to me you were brought up to look

25  after your family no matter what.

26      **PRESIDING COMMISSIONER BIGGERS:**  Oh,

27  really?

18

1        INMATE RICHARDS:  And the no matter what
2   is what cost me.  I went to trial and there was
3   a conflict of interest in my trial because my
4   attorney represented me and my --
5        PRESIDING COMMISSIONER BIGGERS:  Okay,
6   but anyway, hey, we're not gonna get into the --
7        INMATE RICHARDS:  I understand that.  I
8   understand --
9        PRESIDING COMMISSIONER BIGGERS:  --
10  talking about the commitment offense.
11        INMATE RICHARDS:  I understand that.
12        PRESIDING COMMISSIONER BIGGERS:  We're
13  not here -- what has happened in your trial, if
14  you feel that you have the grounds to appeal it,
15  then you appeal it.  But, in reading the
16  Appellate Transcript, theY affirmed everything
17  -- they thought everything to be true.  So as
18  far as the crime itself, you have been found
19  guilty.
20        INMATE RICHARDS:  I understand that.
21        PRESIDING COMMISSIONER BIGGERS:  My
22  question to you, sir, is that since you have
23  been found guilty of the crime do you have any
24  remorse as to what took place?
25        INMATE RICHARDS:  Yes.
26        PRESIDING COMMISSIONER BIGGERS:  In what
27  fashion?

19

1          INMATE RICHARDS:  A vic -- an individual

2     lost his life.  His kids will never see him

3     again.  His family will never see him again.  I

4     mean, I don't know, he could -- he could have

5     probably been something in life, but his life

6     was taken from him.  And sorry -- sorry doesn't

7     take away the hurt that his family went through

8     or what he went through, but that's truly the

9     way I feel.  I'm sorry.

10          PRESIDING COMMISSIONER BIGGERS:  Well,

11     who were the other people with you?  According

12     to the Appellate Decision, there were four or

13     five of you that were (indiscernible)?

14          INMATE RICHARDS:  I know my co-defendant

15     -- we're the only ones arrested and convicted of

16     it.

17          PRESIDING COMMISSIONER BIGGERS:  I didn't

18     ask you that.  The Appellate Decision said there

19     were four of you that surrounded Mr. Lopez --

20          INMATE RICHARDS:  There was no other

21     people with me.  That's what the witness

22     testimony said -- there was people with me, but

23     it was the other way around.  They were with

24     him.

25          PRESIDING COMMISSIONER BIGGERS:  Okay.

26     And you said, five men got around you and tried

27     to arrest you, but they let you go?

20

1        **INMATE RICHARDS:**  When they stabbed me --
2   the guy that stabbed me was coming after me.
3   They got out of his way.  I was backing up.
4        **PRESIDING COMMISSIONER BIGGERS:**  Why do
5   you think that he would need to have a knife to
6   stab you when he had five other people there to
7   help him in --
8        **INMATE RICHARDS:**  I have no idea.
9        **PRESIDING COMMISSIONER BIGGERS:**  -- rob
10  you.
11        **INMATE RICHARDS:**  When he tried to hit --
12  to get my chain, ask me for my money, I hit him.
13        **PRESIDING COMMISSIONER BIGGERS:**  You hit
14  him.  Well, it says here that you hit the guy,
15  but then it says here that
16            "When you struck him -- the victim
17            in the face with your fist that
18            the victim stepped back.  Another
19            one of the five men ran down an
20            adjacent alley.  Shortly
21            thereafter a group of 15 men
22            walked quietly down the alley
23            towards Vermontez (phonetic)
24            Aldaba, A-L-D-A-B-A and Reuben.
25            They were carrying were carrying
26            bats, sticks, and bottles."
27  So they were coming to your rescue, supposedly.

21

1    As they neared, they began throwing bottles and

2    tried to hit Reuben and Vermontez with sticks.

3    They yelled out a gang name -- was this gang

4    related --

5           INMATE RICHARDS:   No, I'm not from a

6    gang.

7           PRESIDING COMMISSIONER BIGGERS:   Was your

8    brother part of a gang?

9           INMATE RICHARDS:   Yes, Sir.

10          PRESIDING COMMISSIONER BIGGERS:   Okay.

11   And then it says your brother, "Salvador --

12          INMATE RICHARDS:   That isn't my brother.

13          PRESIDING COMMISSIONER BIGGERS:   --

14          "Reuben's brother, Salvador Lopez

15          -- and Salvador is spelled

16          S-A-L-V-A-D-O-R -- pulled up in

17          his car and parked beside the

18          alley.  He approached the men

19          surrounding Reuben and attempted

20          verbally to calm the situation.

21          He was successful, but only

22          momentarily.  As Salvador walked

23          back towards his car the group

24          attacked -- or the attack on the

25          deceased was renewed."

26   And that's when they said that you were swinging

27   a metal baseball bat back and forth.  Which

22

1    again, is entirely contradictory with what

2    you're saying here today?

3             INMATE RICHARDS:  I understand that, Sir.

4             PRESIDING COMMISSIONER BIGGERS:  So, are

5    you still saying that you didn't swing the bat?

6             INMATE RICHARDS:  No, I didn't.

7             PRESIDING COMMISSIONER BIGGERS:  Okay.

8             ATTORNEY RUTLEDGE:  We need -- this is

9    2003 -- we need the 2004 transcript --

10            PRESIDING COMMISSIONER BIGGERS:  Well,

11   why would you think, sir, or why would you feel

12   that someone would say that they had a witness

13   that saw you swinging the bat and --

14            INMATE RICHARDS:  Because the witness was

15   his brother-in-law, the victim's brother-in-law.

16   He didn't know me.  He knew my brother.

17            PRESIDING COMMISSIONER BIGGERS:  Okay --

18            INMATE RICHARDS:  So, he -- I would

19   assume you tell on the person you don't know

20   than you tell on the person that you do know

21   that's from a gang.

22            PRESIDING COMMISSIONER BIGGERS:  Okay.

23   Did -- in your 2004 hearing, the Panel said that

24   you need therapy to -- that you may want to look

25   into the insight into your commitment offense.

26            INMATE RICHARDS:  Yes.

27            PRESIDING COMMISSIONER BIGGERS:  Did you

23

1    do anything about that?

2        INMATE RICHARDS:  I took Anger

3    Management, I took a self-help class, you know.

4        PRESIDING COMMISSIONER BIGGERS:  But did

5    you take in to -- any self-help program to look

6    in to the realization as -- that you have been

7    found guilty of murder and that you need to take

8    responsibility for your action?

9        INMATE RICHARDS:  The self-help I took,

10   it taught me how to not put myself into

11   situations where I can't get out of them

12   (indiscernible) situation where I was arrested

13   and convicted of --

14       PRESIDING COMMISSIONER BIGGERS:  Did it

15   also tell you that it's great to take, you know,

16   responsibility for it, but you need to come to

17   grips in your own mind that you were in fact the

18   individual that hit the man in the head with the

19   baseball bat.  And, to this day you're still

20   telling us that you didn't swing the bat.

21       INMATE RICHARDS:  I know.  I understand

22   that.

23       PRESIDING COMMISSIONER BIGGERS:  But yet

24   we have -- your record reflects with the witness

25   and everything that you were convicted of, that

26   you were in fact swinging the bat.

27       INMATE RICHARDS:  I can't -- I can't

24

1  fight this all over again in Court.  I mean --

2         PRESIDING COMMISSIONER BIGGERS:    --

3  brother is currently in camp; is he not?

4         INMATE RICHARDS:  No, he's not.  He was

5  paroled.  He's been out about two years now.  He

6  discharged parole.  He moved to Texas.

7         PRESIDING COMMISSIONER BIGGERS:  Moved to

8  Texas.  I was reading your file someplace where

9  it said that you made a statement about your

10 brother.  Do you remember what that was?

11        INMATE RICHARDS:  No, I don't.

12        PRESIDING COMMISSIONER BIGGERS:  "I can't

13 do anything about it.  I did what I had to do.

14 Inmate says he feels hurt and angry at his

15 little brother because he gave him a second

16 chance at life and he didn't take the

17 opportunity."  This was done in your version in

18 the 2004 Report.  What did you mean by that?

19        INMATE RICHARDS:  Well, when I came in

20 here he didn't have to come in here because I

21 rode this beef.  I rode the charges, so he was a

22 youngster.  He was a minor.  He had all his life

23 ahead of him.  He didn't hve to come into

24 prison.  He messed up.  He started doing drugs,

25 kicking back with his friends still.  He got

26 incarcerated, and when he did that it broke my

27 heart.  It broke my heart.

25

1       PRESIDING COMMISSIONER BIGGERS:  Well, if

2  you knew he was part of a gang and dealing in

3  gang mentality and you saw all of those gang

4  members coming down the alley you should have

5  known that something was going to transpire --

6       INMATE RICHARDS:  I was afraid, Sir --

7       PRESIDING COMMISSIONER BIGGERS:  --

8  excuse me.  At the same time, you should have

9  probably defused the situation, I would think.

10      INMATE RICHARDS:  When I was stabbed I

11  was afraid.  I was bleeding from my hands and --

12      PRESIDING COMMISSIONER BIGGERS:  But you

13  went into the house.

14      INMATE RICHARDS:  I ran into the house --

15  the house was half --

16      PRESIDING COMMISSIONER BIGGERS:  But you

17  came back out.

18      INMATE RICHARDS:  No, I didn't.  I was

19  arrested inside the house.

20      PRESIDING COMMISSIONER BIGGERS:  Okay.

21  All right.  Did I leave anything out of the

22  commitment offense at this point?  Anything you

23  want to add?

24      INMATE RICHARDS:  No.

25      PRESIDING COMMISSIONER BIGGERS:  Okay.

26      ATTORNEY RUTLEDGE:  We're still checking

27  on the blood issue.

26

1          PRESIDING COMMISSIONER BIGGERS:  Right,

2    yeah.  So, you were -- your parents were

3    separated at birth; is that a fact?

4          INMATE RICHARDS:  Yes.

5          PRESIDING COMMISSIONER BIGGERS:  Okay.

6    You currently have seven or eight half-brothers

7    on your father's side.

8          INMATE RICHARDS:  Yes.

9          PRESIDING COMMISSIONER BIGGERS:  No

10   sisters?

11         INMATE RICHARDS:  No.

12         PRESIDING COMMISSIONER BIGGERS:  You

13   dropped out of high school in the 12th grade,

14   why'd you do that?

15         INMATE RICHARDS:  They threw me out when

16   I turned 18 years old.

17         PRESIDING COMMISSIONER BIGGERS:  When you

18   turned 18?

19         INMATE RICHARDS:  Yes.

20         PRESIDING COMMISSIONER BIGGERS:  That's a

21   new one on me.

22         INMATE RICHARDS:  I was held back a

23   semester, and when I turned 18 -- said they

24   didn't want me in school no more.

25         PRESIDING COMMISSIONER BIGGERS:  Who told

26   you that?

27         INMATE RICHARDS:  The counselors there.

27

1          PRESIDING COMMISSIONER BIGGERS:    The

2    counselors there.   I know some 18 year olds that

3    are still going to school, because if you're

4    over six years of age at a certain time -- six

5    years old at a specified time, you'd be 18

6    before you graduate.   And no military

7    experience?

8          INMATE RICHARDS:   No.

9          PRESIDING COMMISSIONER BIGGERS:   And you

10   have one son, right?

11          INMATE RICHARDS:   Yes, Sir.

12          PRESIDING COMMISSIONER BIGGERS:   How old

13   is your son?

14          INMATE RICHARDS:   He'll be 18 July 1st.

15          PRESIDING COMMISSIONER BIGGERS:

16   Eighteen.   Does he come and see you?

17          INMATE RICHARDS:   No, he doesn't.

18          PRESIDING COMMISSIONER BIGGERS:   Why not?

19          INMATE RICHARDS:   His mother doesn't let

20   him and I don't want him come to this

21   environment.

22          PRESIDING COMMISSIONER BIGGERS:   Do you

23   correspond with his mother?

24          INMATE RICHARDS:   Yes.

25          PRESIDING COMMISSIONER BIGGERS:   Okay.

26   Do you correspond with your son?

27          INMATE RICHARDS:   Yes, I do.   I write

28

1    him, I talk to him.  He goes to my grandmother's

2    house I talk to him there.

3         PRESIDING COMMISSIONER BIGGERS:  When was

4    the last time you seen your son?

5         INMATE RICHARDS:  About nine years ago.

6         PRESIDING COMMISSIONER BIGGERS:  Nine

7    years ago.  You had no juvenile record or no

8    adult record.  That's correct?

9         INMATE RICHARDS:  Yes, Sir.

10        PRESIDING COMMISSIONER BIGGERS:  But yet

11   you still don't want to take responsibility for

12   this crime, and I'm puzzled by that and -- okay.

13   Commissioner Mejia do you have any questions on

14   the crime and the Personal Factors -- do you

15   have anything?

16        DEPUTY COMMISSIONER MEJIA:  No, no

17   questions.  Maybe later --

18        PRESIDING COMMISSIONER BIGGERS:  Okay,

19   then I will ask Deputy Commissioner Mejia to go

20   into your Post Conviction Factors.

21        DEPUTY COMMISSIONER MEJIA:  Okay.  I'll

22   be covering -- Mr. Richards, I'll be covering

23   your institutional adjustment this portion of

24   this hearing since your last Board appearance.

25   Your last Board appearance was on December 7,

26   2004, wherein you received a one-year denial.

27   The recommendations were for you to remain

29

1    disciplinary-free, get self-help, and earn

2    positive chronos.  Classification Score is 19,

3    Custody Level is Medium-A.  Current work

4    assignment is a Machine Operator.  Still?

5         INMATE RICHARDS:  Yes.

6         DEPUTY COMMISSIONER MEJIA:  With

7    satisfactory to above-average work reports.  You

8    completed your GED in 12/13/1995 --

9         INMATE RICHARDS:  No, I got my high

10   school diploma -- I didn't get my GED.

11        DEPUTY COMMISSIONER MEJIA:  Your high

12   school diploma (indiscernible).  I have it

13   there, 1995.

14        INMATE RICHARDS:  Yes.

15        DEPUTY COMMISSIONER MEJIA:  And 6.1 TABE

16   Score.  Institutional history.  You completed

17   Graphics Printing, vocational Printing and

18   Graphics in 1998.

19        INMATE RICHARDS:  Yes.

20        DEPUTY COMMISSIONER MEJIA:  Any other

21   vocation?

22        INMATE RICHARDS:  No, they -- I'm in

23   (indiscernible) and the last Board hearing they

24   said they recognized these dorms as a trade,

25   because it's a positive job opportunity when I

26   get out.

27        DEPUTY COMMISSIONER MEJIA:    What is

30

1    this job opportunity?

2        INMATE RICHARDS:  Working with wood,

3    making furniture.

4        DEPUTY COMMISSIONER MEJIA:  Do you

5    remember they also -- the hearing with Mr.

6    Harmon --

7        INMATE RICHARDS:  Yes.

8        DEPUTY COMMISSIONER MEJIA:  -- and a

9    suggestion that you get some more vocation?

10        PRESIDING COMMISSIONER BIGGERS:  I really

11    don't remember that.

12        DEPUTY COMMISSIONER MEJIA:  It's in your

13    file.  Mr. Bordanaro (phonetic) told you that he

14    wants to (indiscernible) Mr. Harmon -- because

15    your last vocation is back in 1998.  At that

16    time they wanted you to -- if you can get

17    another, too, for your own -- to show that you

18    can actually achieve something.  Self-help.

19    Anger Management in 2003, 2006.  Impact, 2003,

20    which was covered in your last hearing.  Prior,

21    Breaking Barriers (indiscernible).  So the most

22    recent that you did this last year is the

23    Finding Employment Employability Program, how to

24    -- making it outside as an ex-offender, and

25    Anger Management 2006.  You have a laudatory

26    chrono for attending, completing Healing for

27    Angry Hearts video series, February 23, 2006.

31

1    You also have a March 28, 2005, for reading

2    self-help books and writing reports on what

3    they've learned.  This was a -- your sponsor is

4    Dr. Lisa, 2005?

5         **INMATE RICHARDS:**  Yes.

6         **DEPUTY COMMISSIONER MEJIA:**  Anything else

7    I've missed when it comes to self-help?

8         **INMATE RICHARDS:**  No, Sir.

9         **DEPUTY COMMISSIONER MEJIA:**  And you had

10   three 115s, the last being in 1998 for

11   possession of unauthorized materials.  You have

12   11 128(a)s, the last being in 1995 for

13   possession of another inmate's property.  No

14   gang affiliations noted.  And, your psych report

15   November 3, 2004 by Dr. Howling (phonetic), Jeff

16   Howling, a staff psychologist, indicated that

17   your Axis I is no contributory clinical

18   disorder; Axis II no contributory personality

19   disorder; Axis III no contributory physical

20   disorder; Axis IV long time incarceration; Axis

21   V, GAF of 80.  Your prognosis is positive for

22   being able to maintain your current mental

23   status in the community upon parole

24   (indiscernible) life crime similar

25   (indiscernible).

26         "Inmate Richards denies the charge

27         of murder and said quote 'An

32

1    individual tried to rob me.  My

2    brother and friends came to rescue

3    me.  I ran from the crime, and

4    then was arrested.  Fighting my

5    case I couldn't tell on them.  I

6    rode the beef for them.' Unquote.

7    There's no way to know for certain

8    the circumstances of this case,

9    inmate Richards' involvement, so

10   the Assessment of Dangerousness

11   will be based on past history,

12   programming since his

13   incarceration, his current mental

14   status, and gains made since his

15   -- since being incarcerated.

16   Assessment of Dangerousness,

17   taking into account the above

18   factors, including a complete lack

19   of prior criminal history a

20   complete lack of violent

21   disciplinary history since an

22   incarceration period within CDC of

23   approximately 16 years, his

24   violence potential within a

25   controlled setting is considered

26   to be well below average compared

27   to the Level II inmate population.

33

1        If released to the community, his

2        violence potential is estimated to

3        be no more than the average

4        citizen in the community.  There

5        are no significant risk factors

6        which could be precursors to

7        violence in the future."

8   And -- let's see -- your parole plans.  Your

9   future plans is to reside with your fiancée,

10  Maria Valdez.  Her address is 303 North Wrowan

11  Avenue, Los Angeles, California, 90063,

12  telephone number (indiscernible) 362-6522.  His

13  alternative plans are to live with his

14  grandmother who resides in 3713 East Michigan,

15  Los Angeles, California, 90062, telephone number

16  (213) 264-5011.  Employment.  Richards plans to

17  seek employment in the flour stripping, waxing,

18  and carpet care business.  His parents, Albert

19  and Sarah, own a business quote "Albert and

20  Friends," telephone number (818) 330-6005.

21  Richards stated that he has other employment

22  options such as working in a restaurant called

23  Chowlios (phonetic) located 3780 Fresh

24  (phonetic) Street, East Los Angeles, 90063.  In

25  addition, he stated that Chowlios is also

26  located at 760 South Atlantic Boulevard, Los

27  Angeles, California, 90032.  Richards further

34

1    stated he would be able to seek employment at

2    Chili's Express Store, which is located in 3578

3    East Los Angeles -- who owns this?

4            INMATE RICHARDS:  It's a family --

5            DEPUTY COMMISSIONER MEJIA:  Family owned

6    --

7            INMATE RICHARDS:  -- family restaurant --

8    two restaurants.  Three restaurants, actually

9    and --

10           DEPUTY COMMISSIONER MEJIA:  Owned by your

11   parents or your brother, sister or --

12           INMATE RICHARDS:  No, they're friends of

13   my family.

14           DEPUTY COMMISSIONER MEJIA:  Friends of

15   your family.

16           INMATE RICHARDS:  My mom and dad, my

17   mother and father, own a floor waxing business.

18   My father passed away.  My mother and one of my

19   step brother's is running it.

20           DEPUTY COMMISSIONER MEJIA:  You have one

21   -- you've vocational Graphics and Arts, 1998.

22   Were you able to capitalize on what you learned

23   from that --

24           INMATE RICHARDS:  Oh, yeah --

25           DEPUTY COMMISSIONER MEJIA:  -- able to

26   use --

27           INMATE RICHARDS:  Oh, yeah.

35

1      DEPUTY COMMISSIONER MEJIA:  What did you
2  do to --
3      INMATE RICHARDS:  I used to make the
4  posters for the Crab Fest they have out here.
5      DEPUTY COMMISSIONER MEJIA:  Yeah, but --
6  isn't that -- would you consider that as a
7  marketable skill?
8      INMATE RICHARDS:  It is a marketable
9  skill.
10      DEPUTY COMMISSIONER MEJIA:  So, what can
11  you do out in the street using that market --
12      INMATE RICHARDS:  I could go to a
13  newspaper place and try to get a job there.  I
14  mean, there's a lot of printing operations out
15  there where --
16      DEPUTY COMMISSIONER MEJIA:  Did you
17  attempt to get some connections there --
18      INMATE RICHARDS:  No.
19      DEPUTY COMMISSIONER MEJIA:  -- to that?
20      INMATE RICHARDS:  No, actually -- I
21  wasn't planning on working that.  I plan on
22  going back to school if I can.
23      DEPUTY COMMISSIONER MEJIA:  Okay.  See,
24  that's why I think one of the reasons the
25  Commissioner on the last hearing tried to
26  encourage you to get some more vocations, so
27  that you will have something to fall back on

36

1  when things fail or -- are you planning a family

2  business with -- you know, this could be

3  something that you would think that you could

4  do, but after awhile it may be you would not

5  want to do something like that.  Do you know how

6  much they're gonna pay you for those?

7      INMATE RICHARDS:  Well, I would start at

8  minimum wage.  I don't expect to get any more

9  than that -- any job I get right now.

10      DEPUTY COMMISSIONER MEJIA:  How are you

11  gonna support yourself with minimum wage?

12      INMATE RICHARDS:  Minimum wage -- I got

13  my fiancée.  We're gonna be married.  She works.

14  I work.  You know, we'll put our money together.

15  I mean it don't, it don't take much to survive.

16  It don't take much to survive.  Minimum wage,

17  you can make it out there.  I mean, that's just

18  for the immediate future.  I mean, after that, I

19  mean, I'll go back to school.  Get another trade

20  out there (indiscernible).

21      DEPUTY COMMISSIONER MEJIA:  You've had 16

22  years of -- '87 is 13 plus -- 19 years.  There's

23  a lot of things you could have done while in

24  prison, and what -- you tell me you're gonna be

25  doing now when you get out there.

26      INMATE RICHARDS:  The trades they have

27  here I know I wouldn't -- would never have done

37

1   them in the streets.  I was a machinist out

2   there in the streets.  I worked as a tree

3   trimmer, also -- I wasn't going to work as a

4   machinist anymore.

5           **DEPUTY COMMISSIONER MEJIA:**  Okay.  Let me

6   look at your -- these support letters from

7   Ronald Jauregui.  Who's Ronald Jauregui?

8           **INMATE RICHARDS:**  He runs a little mom

9   and pop store.

10          **DEPUTY COMMISSIONER MEJIA:**  Okay.  Letter

11  that we have --

12          "Danny, he was a good boy.  He

13          would help my parents at night

14          here in the store assisting

15          customers and bagging groceries.

16          The neighbors in the neighborhood

17          say Danny did not commit the

18          crime.  He is innocent.  Every

19          person is deserving of a second

20          chance.  Danny has done his time."

21  Signed, Ronald Jauregui.  Maria Jauregui,

22  J-A-U-R-E-G-U-I, your aunt, writes a support

23  letter.  She writes a support letter and she

24  said

25          "I know for a fact that my nephew

26          never had a problem with drugs,

27          anger, or was affiliated with any

38

1         gangs.  He was always respectful,

2         (indiscernible) who had big

3         dreams.  I'm willing to offer him

4         shelter here in Texas or

5         (indiscernible) to reside to help

6         him financial -- to do whatever it

7         takes to help him adapt to

8         society.  We all love Daniel very

9         much and hope that you will

10        consider him for parole."

11   Letitia Torre (phonetic).  Your friend?

12        **INMATE RICHARDS:**  Yes.  She owns one of

13   the Chowlios.

14        **DEPUTY COMMISSIONER MEJIA:**  Okay.

15        "I'd like you to know that I --

16        she owns -- I own a store in the

17        East Los Angeles area and I have

18        expanded -- extended an employment

19        offer to Mr. Richards for

20        full-time employment at minimum

21        wage.  Because I know Danny and

22        his character I would like to help

23        him become a contributing member

24        of society once he is released

25        from prison."

26   That's another one.  Jessica (indiscernible)

27   your cousin.  That's another Jessica there.

39

```
 1   She's a (indiscernible)?  No, Maria.  Jessica
 2   Jauregui is another -- this is your cousin.
 3          INMATE RICHARDS:  Yes.
 4          DEPUTY COMMISSIONER MEJIA:  She said,
 5          "We would like you to know that
 6          Daniel's family loves him very
 7          much and are willing and able to
 8          do whatever it means necessary to
 9          help him readjust to society.  It
10          would be such a blessing for us to
11          be able to hold him in our arms
12          and lead normal lives with him by
13          our side."
14   This letter from Alvina Chichome (phonetic) --
15          INMATE RICHARDS:  My grandmother.
16          DEPUTY COMMISSIONER MEJIA:  Grandmother.
17   She said it will -- she said that you will be
18   able to live with her, if you need be, and more
19   than willing to help her -- him, in any way
20   possible.  How old is your grandmother?
21          INMATE RICHARDS:  About 73.
22          DEPUTY COMMISSIONER MEJIA:  Huh?
23          INMATE RICHARDS:  Seventy-three.
24          DEPUTY COMMISSIONER MEJIA:  Maria Valdez.
25   Your fiancée.
26          INMATE RICHARDS:  Yes, Sir.
27          DEPUTY COMMISSIONER MEJIA:  You've been
```

40

1    engaged to her for over 12 years.

2         **INMATE RICHARDS:**  Longer now.

3         **DEPUTY COMMISSIONER MEJIA:**  Yes, that's

4    2005.  So, 13 years?

5         **INMATE RICHARDS:**  Yes.

6         **DEPUTY COMMISSIONER MEJIA:**  That's what I

7    said -- over 12 years.

8         **INMATE RICHARDS:**  I've known her since we

9    were ten years old.

10         **DEPUTY COMMISSIONER MEJIA:**  You were

11   engaged for more than 12 years?

12         **INMATE RICHARDS:**  Well, yeah.

13         **DEPUTY COMMISSIONER MEJIA:**  She said that

14   she and her family

15         "-- cannot understand why you have

16         not been released.  There are many

17         people who are really guilty of

18         worse crimes and are released.

19         Please take all the relevant

20         information into consideration and

21         consider this man for parole."

22   She's known you for over 25 years, and says that

23   you did not commit the crime.  Yvette Ariis,

24   A-R-I-I-S.  Who's she?

25         **INMATE RICHARDS:**  My cousin.

26         **DEPUTY COMMISSIONER MEJIA:**  She said you

27   have a tremendous amount of support from your

41

1   family and friends.  She's more than willing to

2   take full -- take full financial responsibility

3   for you until he is able -- until you are able

4   to provide for yourself.  I also would be more

5   than happy to open up her home.  He's more than

6   welcome to live with her permanently.  She has a

7   two bedroom home, and lives alone and there's

8   more than enough room for him.  Danny -- Danny's

9   mom, Sara Richards.  August (indiscernible)

10  2005.

11          "Danny could be a help to our

12          young people in helping them stay

13          out of the system.  My Pastor,

14          Frank Major, is waiting to have an

15          opportunity to work with him and

16          help him to establish himself in

17          whatever way he can.  He also has

18          a son who would like to get to

19          know his dad and who thinks

20          (indiscernible) for a little while

21          because by the time you know it he

22          will be having his own family."

23  I got the employment offer here, San Luis.

24  That's the person that -- he said it would be a

25  great pleasure for him to be able to help you

26  establish yourself.  He thinks that you -- he

27  said (indiscernible) he'd been wrongly

42

1    convicted.  He has a restaurant in East Los

2    Angeles and offer Mr. Richards employment.  Full

3    time at a minimum wage.  Anything else?

4         INMATE RICHARDS:  No.

5         DEPUTY COMMISSIONER MEJIA:  And

6    (indiscernible) that would return this back to

7    the Chair.

8         PRESIDING COMMISSIONER BIGGERS:  Okay.

9    Thank you very much, Commissioner Mejia.  Just

10   to follow-up on a couple of things that the

11   Deputy Commissioner mentioned.  At your last

12   hearing, you were asked that -- and was told

13   that you were sticking to your story and you

14   haven't wavered from that.  But, have you ever

15   taken to consideration -- have you ever taken

16   into consideration, rather, that the Court you

17   were tried, convicted -- and the Appellate

18   Decision indicated that you were guilty.  Now,

19   irregardless of you keeping that statement --

20   have you ever thought about that?

21        INMATE RICHARDS:  Yes.

22        PRESIDING COMMISSIONER BIGGERS:  Okay.

23   And you're still sticking to that story?

24        INMATE RICHARDS:  Yes, Sir.

25        ATTORNEY RUTLEDGE:  We would note, too,

26   that I did find that in the transcripts.  That

27   the District Attorney, would you concur, said

43

1    that the blood found on the shoe did not belong

2    to the victim.

3          DEPUTY DISTRICT ATTORNEY MORRISON:

4    Right.   I actually have the reports here.

5    They're buried in the police reports,

6    Commissioner.

7          PRESIDING COMMISSIONER BIGGERS:   Okay.

8    Let's -- let's bring that in.  It's a good time

9    to bring it in at this point.

10         DEPUTY DISTRICT ATTORNEY MORRISON:   There

11   were a number of blood samples analyzed, and one

12   problem I noticed from previous hearings and the

13   -- I believe even the -- just a moment -- the

14   2005 Board Report referenced -- incorporated the

15   previous -- in the 2004 Board Report it lists

16   the victim as Reuben Lopez.

17         PRESIDING COMMISSIONER BIGGERS:   Right.

18         DEPUTY DISTRICT ATTORNEY MORRISON:   Okay.

19   That's incorrect.   There were two brothers.

20   Salvador Lopez and Reuben Lopez.   Salvador Lopez

21   was the murder victim.   His brother Reuben Lopez

22   was assaulted and hit with either a metal bat or

23   what appears to be a concrete rebar.   The

24   co-defendant, Rudy Fernandez, was convicted of

25   ADW with great bodily injury on victim Reuben

26   Lopez, and received a seven year sentence.   So,

27   for example when in 19 -- in 2004, the inmate

44

1    was asked, are you responsible for the death of
2    Reuben Lopez? He said no. He went on to
3    describe he was killed by somebody else, but it
4    was the wrong name. Salvador is the murder
5    victim. The reason I bring this out is because
6    these reports reference various people, okay.
7    The Sheriffs --
8             DEPUTY COMMISSIONER MEJIA: Let's --
9             [Thereupon the tape was turned over.]
10            PRESIDING COMMISSIONER BIGGERS:  --
11    District Attorney.
12            DEPUTY DISTRICT ATTORNEY MORRISON:  Okay.
13    I believe these are -- I didn't bring the
14    reports from the CDC package because they were
15    duplicated in our DA memo file, but they should
16    be in there and they're probably at the very
17    end. There's a report dated April 21st, 1988,
18    regarding two evidence envelopes, H126911 and
19    G148506. And, this is from the criminalist at
20    the Sheriff's crime lab.
21            "A whole blood sample from victim
22             Reuben Lopez was obtained under
23             one of the receipts, and whole
24             blood samples were taken from the
25             inmate Dan Richards and from
26             co-defendant Rudy Fernandez. The
27             blood stains from the shoes -- and

45

1        those are the shoes belonging to
2        the inmate -- were typed and
3        compared to the blood samples of
4        Lopez, Richards, and Fernandez.
5        The results are prepared on
6        sheets.  No information was
7        generated that as to possible
8        blood donor on three of the
9        stains.  The blood stain EMK-4C
10       could not have originated from
11       Reuben Lopez, the surviving
12       victim, or from Fernandez.  The
13       stain could have originated from
14       Richards."
15   It doesn't say it did.  It could have.  They
16   compared the blood sample in a report dated May
17   9th, 1988 from decedent Salvador Lopez, and was
18   compared to the samples obtained on the attached
19   sheet.  Unfortunately it's not specified, but
20   it's from -- "the blood stain on the right toe
21   of the shoe could not have originated from
22   Salvador Lopez."  So one stain on the inmate's
23   shoe that was analyzed compared with the murder
24   victim's blood was not a match.  Okay.  That was
25   reference by -- in the 2004 hearing, on Page 487
26   and 488 by the District Attorney, said that the
27   one stain on the inmate's shoe was not from the

46

1  murder victim.

2      **ATTORNEY RUTLEDGE:**  Are we clear though

3  that the blood found on my client -- it hasn't

4  been established that the blood was from the

5  victim.  Right?  Do we agree to that?

6      **DEPUTY DISTRICT ATTORNEY MORRISON:**  Yes.

7      **PRESIDING COMMISSIONER BIGGERS:**  Well

8  again, irregardless of that, the Appellate

9  Decision found that your client did in fact

10  participate and was responsible for the murder

11  of the victim.

12      **ATTORNEY RUTLEDGE:**  But we're just going

13  to clarify the record for future reference --

14      **PRESIDING COMMISSIONER BIGGERS:**  That's

15  fine and I agree that there's something that --

16  did you put them in your appeal, sir?

17      **INMATE RICHARDS:**  No, I didn't.

18      **PRESIDING COMMISSIONER BIGGERS:**  Why not?

19      **INMATE RICHARDS:**  I -- the attorney that

20  was representing me, he just didn't do it.  It

21  was the same attorney that represented me in my

22  trial.

23      **ATTORNEY RUTLEDGE:**  He represented all

24  the co-defendants and it's not really orthodox

25  to do your own appeal.

26      **PRESIDING COMMISSIONER BIGGERS:**  Yeah,

27  but have you taken into consideration anything

47

1  else since then?

2        INMATE RICHARDS:  Well, I'm in the Courts

3  now.

4        PRESIDING COMMISSIONER BIGGERS:  You're

5  still in the Courts?

6        INMATE RICHARDS:  Yes.

7        PRESIDING COMMISSIONER BIGGERS:  Okay.

8  Well, again, we're going on the assumption that

9  everything they said here is true.

10        INMATE RICHARDS:  I understand that.

11        PRESIDING COMMISSIONER BIGGERS:  Okay?

12  And until such time that it's overturned, you

13  are convicted of this --

14        INMATE RICHARDS:  I was found guilty, so

15  I understand that.

16        PRESIDING COMMISSIONER BIGGERS:  Okay.

17  All right.  There was a -- an opposition letter

18  from the Monterey Park, California, Sheriff's

19  Departments, County of Los Angeles and they just

20  said that -- that --

21        "The group approached Lopez and

22        Veramonte, they were yelling out

23        gang slurs and shouting we're

24        going to --" I assume they said f-

25        you-up, because it says F dash

26        dash K.  "It was during this time

27        the Lopez brother Salvador drove

48

```
1          up with his vehicle and attempted
2          to intervene.  However, as he
3          approached the group he was to --
4          he too was assaulted.  They fled
5          the location.  Inmate Richards was
6          subsequently identified by
7          witnesses who stated Richards had
8          struck Lopez in the head
9          repeatedly with a metal baseball
10         bat."
11   Okay.  So, anyway, this, so it's an opposition
12   on the part of the Sheriff of that particular
13   county.  Are there any other questions that you
14   have, Commissioner Mejia?
15         DEPUTY COMMISSIONER MEJIA:  No other
16   questions.
17         PRESIDING COMMISSIONER BIGGERS:  Okay, at
18   this point I'm going to ask the District
19   Attorney, Mr. Morrison, does he have any
20   questions for the inmate?
21         DEPUTY DISTRICT ATTORNEY MORRISON:  A
22   couple.  Has the inmate ever lied about this
23   case to a parole Panel?
24         INMATE RICHARDS:  No, I haven't.
25         DEPUTY DISTRICT ATTORNEY MORRISON:  How
26   about to counselor's or psychologists preparing
27   reports for parole Panels?
```

49

1        INMATE RICHARDS:  No, I haven't.

2        DEPUTY DISTRICT ATTORNEY MORRISON:  How

3  about to the detectives that interviewed him

4  after his arrest?

5        INMATE RICHARDS:  No, I haven't.

6        DEPUTY DISTRICT ATTORNEY MORRISON:  Thank

7  you.  I have no further questions.

8        PRESIDING COMMISSIONER BIGGERS:  Okay.

9  Ms. Rutledge?

10        ATTORNEY RUTLEDGE:  Did you -- when you

11  -- do you remember all the conversations you had

12  with investigators right after?

13        INMATE RICHARDS:  Not -- not necessarily

14  all of them.  It's been -- it's over 19 years

15  ago.

16        ATTORNEY RUTLEDGE:  Did you talk to

17  people at the scene, and then later at the

18  police station?

19        INMATE RICHARDS:  Not at the scene.  At

20  the police station.

21        ATTORNEY RUTLEDGE:  All right.  You

22  didn't -- so, after they arrested you they took

23  you straight to the police station.

24        INMATE RICHARDS:  Yes.

25        ATTORNEY RUTLEDGE:  All right.  Is it

26  possible that you may have told them something

27  that is inaccurate, but you don't remember?

50

1          INMATE RICHARDS:  It's quite possible.

2          ATTORNEY RUTLEDGE:  All right.  Also, you

3    mentioned that you want to go back to school.

4    What is your desire -- what is the career that

5    you desire when you parole?

6          INMATE RICHARDS:  Taking up x-ray

7    technician.  That's good resource out there.

8          ATTORNEY RUTLEDGE:  All right.  And how

9    do you plan to achieve that?

10          INMATE RICHARDS:  They have trade schools

11    in East -- East Los Angeles.

12          ATTORNEY RUTLEDGE:  And, what are you

13    gonna do when you walk out the door?  You've got

14    options to live in Texas with your grandmother,

15    with your cousin, and -- did I miss somebody?

16          INMATE RICHARDS:  My cousins,

17    grandmother, my fiancée.

18          ATTORNEY RUTLEDGE:  Well, what's your

19    first choice?  What would you like to do?

20          INMATE RICHARDS:  I'm gonna go with my

21    cousin Yvette Ariis.  She lives in Lincoln

22    Heights.  It's in the County of the committed

23    offense.  Until I could get on my feet and if

24    the parole lets me go to Texas, I'll go to Texas

25    -- (indiscernible) out of the state.

26          ATTORNEY RUTLEDGE:  All right.  And so if

27    you can't live with Yvette, you have alternative

51

1   plans for --

2          INMATE RICHARDS:  Well, I have my

3   grandmother.  She owns her own house.

4          ATTORNEY RUTLEDGE:  All right.  And what

5   marketable skills have you learned in prison?

6          INMATE RICHARDS:  Well, I have -- the

7   wood factory is a marketable skill.  I mean,

8   they help you get jobs out there when you parole

9   from (indiscernible).

10          ATTORNEY RUTLEDGE:  PIA?

11          INMATE RICHARDS:  Yes.

12          ATTORNEY RUTLEDGE:  Have you -- could you

13   work in your family's wax --

14          INMATE RICHARDS:  Yes.

15          ATTORNEY RUTLEDGE:  -- floor wax.  Did

16   you learn how to wax floor in prison?

17          INMATE RICHARDS:  Yes.

18          ATTORNEY RUTLEDGE:  I hope so --

19          INMATE RICHARDS:  I learned it out there

20   on the streets, too.

21          ATTORNEY RUTLEDGE:  Okay.  And have you

22   picked up any skills with regard to the

23   restaurant job offers?

24          INMATE RICHARDS:  I worked in the

25   kitchen, washing pots and pans, so that's mainly

26   what I'm gonna be doing.

27          ATTORNEY RUTLEDGE:  All right.  And, now

52

1    if the Panel were to ask you -- or, I'm going to
2    ask you this, but I think it's a question a
3    Panel might ask you.  If you're paroled, and
4    according to what you told the Panel this was a
5    situation that originated with somebody
6    accosting you at a store.  You know, what if you
7    were on the outside, you're living in Los
8    Angeles, they've got a lot of crime there,
9    somebody .approaches you or your family.  What's
10   your response gonna be?

11        INMATE RICHARDS:  I'm gonna run.  I'm not
12   gonna stay there.  I'm not gonna -- they teach
13   you -- this Anger Management teaches you, I
14   mean, how to deal with situations and take
15   yourself out of them, and I won't be in a
16   situation like that again.  I have too much
17   family support.  I'll be going to church.  My
18   mom goes to church, and the Pastor said he's
19   gonna welcome me there.

20        ATTORNEY RUTLEDGE:  Now, what about all
21   the self-help you've done.  Has it helped you?
22        INMATE RICHARDS:  Yes, it has.
23        ATTORNEY RUTLEDGE:  In what way?
24        INMATE RICHARDS:  I've -- I came in here,
25   a young man, and I've grown up.  I know right
26   from wrong, now.  I don't have no anger issues.
27   I had anger towards my brother.  I was in here,

53

1    I felt, because of him.  But, (indiscernible) my

2    fiancée, my cousin, my grandmother -- I don't

3    need that anger anymore.  I'm turning into a

4    whole man now.

5         ATTORNEY RUTLEDGE:  Are you in here

6    because of yourself?

7         INMATE RICHARDS:  Yeah, actually I am.  I

8    mean, I could have did things differently and I

9    wouldn't have been in here.

10        ATTORNEY RUTLEDGE:  And, what would you

11   say that these two men were (indiscernible) how

12   do you think their families feel?  How do you

13   address how this has affected the victim's

14   families and the surviving victim?

15        INMATE RICHARDS:  You really can't.  The

16   only thing you can say is sorry.  But sorry

17   doesn't cover the hurt that his family went

18   through, the anguish.  I mean, the kids lost a

19   father.  His wife, she lost a husband and the

20   mother lost a son.  And, you can't take back the

21   hurt that you caused them.  And, even though I

22   said I didn't kill him it still -- it's still my

23   fault that he's dead because people came to my

24   rescue and being raised the way I was, you were

25   brought up not -- you're not supposed to tell on

26   anybody.

27             ATTORNEY RUTLEDGE:  What about

54

1    intervening?  I mean, now that you've seen what

2    happens when people gang up, do you --

3         INMATE RICHARDS:  At the time -- at the

4    time I didn't know who they were.  I didn't know

5    who was coming out of the alley.  I just seen a

6    lot of people and I was even more afraid.  I

7    didn't know if they were his friends or who, so

8    I even ran faster, and if I could go back and I

9    know now what I -- what happened.  I would

10   intervene.  I would try to put a stop to it.

11   But I can't.  I mean every day, every day I live

12   in here and it's not gonna change.  I mean, the

13   hurt that I've -- I really caused his family.

14        ATTORNEY RUTLEDGE:  No further questions.

15        PRESIDING COMMISSIONER BIGGERS:  Okay,

16   thank you.  At this point I'm gonna ask Mr.

17   Morrison to close please.

18        DEPUTY DISTRICT ATTORNEY MORRISON:  The

19   District Attorney opposes parole and joins the

20   Sheriff's Department in so doing, believing the

21   inmate still remains a danger.  Inmate's not

22   credible, and because of that all his claimed

23   expressions of remorse and growth in the prison

24   are suspect.  The inmate gave contradictory

25   information to investigators at the time of the

26   crime.  It's contained in the police reports,

27   Page Ten of the Sheriff's interview notes, that

55

1        "When Sergeant Peavey,

2        P-E-A-V-E-Y, interviewed  him

3        about 5:00 a.m. in the morning

4        after the murder he denied having

5        been in any kind of fight the

6        night before or earlier, and

7        explained that the cut on his hand

8        had occurred about 4:00 p.m. the

9        day before when he was working on

10       his car.  He later changed that

11       story to other investigators and

12       on -- after he was arrested on

13       October 15th, on Pages Two and

14       Three of the Sheriff's October

15       17th report, he told investigator

16       (indiscernible) that he ran down

17       the street to get some beer and

18       four male Mexicans approached him

19       and the one that later died said

20       give me some money.  The inmate

21       said he didn't have any money.

22       The guy said, give me your chain,

23       indicating the gold chain around

24       Richards' neck.  Richard stated he

25       said, no.  He said they looked

26       like they were going to rush him.

27       He then hollered for help from

56

| | |
|---|---|
| 1 | some guys in a car passing by.  He |
| 2 | did not know who they were.  A guy |
| 3 | came toward him and Richards said |
| 4 | he gave him a combination, |
| 5 | indicating he hit him twice and |
| 6 | the guy fell to his knees. |
| 7 | Richard said the guy backed up and |
| 8 | started to come at him again, and |
| 9 | he Richards backed up.  Richards |
| 10 | stated the guy struck him in the |
| 11 | right hand with a knife.  He |
| 12 | described it as a Chinese |
| 13 | butterfly knife, stated he was |
| 14 | shocked and the (indiscernible) |
| 15 | backed up.  Said he, the man came |
| 16 | at him and said he was going to |
| 17 | kill him.  Richards said a lot of |
| 18 | people came around.  He said he |
| 19 | ran to the rear room of the garage |
| 20 | (indiscernible) Fernandez's house |
| 21 | and that some time later Luis |
| 22 | Salice (phonetic) came into the |
| 23 | room and Salice said he killed |
| 24 | someone.  Luis had a small piece |
| 25 | of a small bat in his hand and |
| 26 | then he was (indiscernible) |
| 27 | arrested.  Suspect Richards said |

57

```
 1          he did not see any of the girls,

 2          Kathy, Adriana, or Terry from the

 3          house at the fight or when he was

 4          coming back to the house.  He

 5          stated he did not see anyone with

 6          bats, bottles, or a pipe at the

 7          fight and he didn't see where the

 8          other three Mexicans that were

 9          with the guy that attacked him

10          went."
```

11  (Indiscernible) has already made reference to

12  the Appellate report that summarized in detail

13  the testimony of the eye witnesses, who the jury

14  obviously believed indicating that the inmate

15  used the baseball bat to kill the victim.  He

16  died of multiple blunt force trauma, indicated

17  in the report.  We believe that until the inmate

18  shows insight into the crime that his

19  protestations of innocence, growth and

20  understanding are suspect.  The inmate, as it

21  has been noted, (indiscernible) completed a

22  vocation since 19 -- I believe, '98.  He did

23  earn his high school diploma, but because of his

24  failure to show insight into the positive

25  factors of the crime and present a credible

26  story we believe he remains a danger and is

27  unsuitable.  Thank you.

58

1          PRESIDING COMMISSIONER BIGGERS:  Thank

2   you, very much.

3          DEPUTY COMMISSIONER MEJIA:  Commissioner,

4   let me just make a clarification here.  The

5   victim is Reuben Lopez; that's the person that

6   died.  I'm looking at the Officer's report that

7   was submitted on file -- that's not somebody --

8   nobody else -- you know, Officer's report and

9   the Department of Medical Coroner.  Victim's

10  name, Lopez -- Reuben Lopez.

11         DEPUTY DISTRICT ATTORNEY MORRISON:  See,

12  but I was looking at the Appellate record.  In

13  the Appellate record, which is a Summary of the

14  Testimony -- I realize it -- that there's

15  (indiscernible) confusion in here, but --

16         PRESIDING COMMISSIONER BIGGERS:  It says

17  here, Reuben was struck in the face with his

18  fists.

19         DEPUTY COMMISSIONER MEJIA:  Reuben Lopez

20  is what the autopsy and the Medical Examiner

21  signed off on in 1987.

22         PRESIDING COMMISSIONER BIGGERS:  And

23  Salvador was to have (indiscernible) his car and

24  parked it beside the alley and he was attacked.

25         DEPUTY DISTRICT ATTORNEY MORRISON:  I

26  understand. --

27         ATTORNEY RUTLEDGE:  You're saying there's

59

1   an error in the Appellate report?

2          **DEPUTY DISTRICT ATTORNEY MORRISON:**   In

3   the Appellate record, which is a -- summarized

4   from the transcript of the trial by the Court of

5   Appeal.  It says --

6          **DEPUTY DISTRICT ATTORNEY MORRISON:**   It

7   says, "Salvador offered testimony at the trial"

8   on Page -- just before you get to the

9   investigating deputies.  I just want to set the

10  record --

11         **DEPUTY COMMISSIONER MEJIA:**   Lopez is the

12  one --

13         **DEPUTY DISTRICT ATTORNEY MORRISON:**   The

14  murder victim.

15         **ATTORNEY RUTLEDGE:**   I hope the Coroner's

16  not mixing up the --

17         **PRESIDING COMMISSIONER BIGGERS:**   Well,

18  irregardless --

19         **DEPUTY COMMISSIONER MEJIA:**   Excuse me,

20  there's a statement in here one time Salvador --

21  that Salvador expired nine days later, and

22  that's why I brought that out.  But I believe

23  you are actually (indiscernible).

24         **PRESIDING COMMISSIONER BIGGERS:**   What

25  needs to happen here -- well, let's go on with

26  this and I'll have some remarks that I need to

27  you at the conclusion of this.  So let's go

60

1  ahead with your closing statement --

2      **ATTORNEY RUTLEDGE:** Thank you. Well, I

3  have to say it's good to keep the record, but in

4  the big picture it doesn't really matter what my

5  client told investigators. It does matter that

6  someone lost their life here and somebody nearly

7  lost their life and I think that that's why my

8  client's here. He was convicted of murder,

9  regardless of how we can -- and anyone who's

10  done a jury trial, it's been my experience that

11  we never really know what happened. We get

12  people that seem very credible testifying to

13  you, sometimes very different things. But it --

14  he participated in killing somebody. He was

15  convicted of murder. There is such thing as

16  aiding and abetting, and my client takes

17  responsibility for that. In fact, his -- under

18  Signs of Remorse, I would say that he has given

19  indication that he understands the nature and

20  magnitude of the offense and that being that

21  he's been in prison for 19 years. He's used his

22  time -- the self-help books -- which I forgot to

23  ask him about with Dr. Gleason -- he was told by

24  the Board last time that he needed to get going

25  on his self-help. He didn't -- he did various

26  self-help, but that was aimed at anger

27  management and how he copes with situations.

61

1   And understanding the commitment offense, he

2   knows that if he -- he put himself in a

3   situation that was -- would have been prone to

4   violence.  And again, we can ask ourselves why

5   would you do something like that?  Why would you

6   respond to a threat in such a manner?  But, you

7   know, again we don't know why these things

8   happen but we know it's, you know, murder is

9   murder is murder.  It's whether or not -- now we

10  have to decide, did this man understand what he

11  did.  What's his plan for the future?  And,

12  overall does he pose an unreasonable risk.  And

13  I would say he does not pose an unreasonable

14  risk.  If you look at all the suitability

15  factors as far as his age goes, he's been

16  incarcerated now for 19 years.  He's 40?

17          **INMATE RICHARDS:**  I'll be 40 September --

18          **ATTORNEY RUTLEDGE:**  He's nearly 40 years

19  old.  He has a stable social history in that his

20  family is very supportive, and I would note that

21  his cousin wrote a letter.  His cousin -- his

22  family's been very candid about having problems

23  in their family.  In the record it indicates my

24  client's mother was in and out of his life, his

25  grandmother raised him, his father and

26  stepmother raised him.  He -- the letter is

27  actually from his stepmother.  It says his

62

1   mother.  She claims herself to be his mother.
2   But, Jessica --
3           **INMATE RICHARDS:**  Jauregui.
4           **ATTORNEY RUTLEDGE:**  Okay, we'll take that
5   as her last name.  In her letter dated August
6   31st, 2005, she says
7           "Daniel stood out from our family
8           in such ways that he was one of
9           the few that was never involved in
10          any gangs, never had any prior
11          criminal records or any problems
12          with drugs.  We hope that you will
13          not judge Daniel for the decisions
14          that were made by other people for
15          he is his own person."
16  And, that would go too to his prior -- so his
17  family had problems but there are members of the
18  family that are stable.  Those people have
19  rallied around him.  We're not getting letters
20  from the people that have been in prison or are
21  drug addicts.  He has the support from those
22  members of the family that appear by their
23  letters to be very stable.  You know, they've
24  been very dedicated to him since his
25  incarceration.  Friends, relatives, his mother,
26  his stepmother wants to involve him in her
27  church, and that goes to show a stable social

63

 1    history.  In and out of prison his fiancée and

 2    he have know each other since childhood.

 3    They've been engaged for 12 years.  He's had

 4    that -- that's a pretty long term relationship

 5    to maintain in prison, and they weren't actually

 6    married.  And, that's what he looks to as his

 7    future.  He has something when he gets out of

 8    here.  We don't have to worry about dropping him

 9    off at the bus station, somebody's gonna be

10    picking him.  He's gonna have a job.  He's gonna

11    have money.  He's gonna have a place to live,

12    and I think he's learned something while he's

13    been here, based on his comments to the

14    different psychologists and to the Board today

15    about growing up, maturing, understanding the

16    difference between right and wrong.  He in the

17    19 years he's been here, he's had three rules

18    violations.  He had one in '83 for not going to

19    work, and then ten years later -- ten years

20    later for not going to work, and the one in 1998

21    if you check the file involved him taking art

22    supplies from his job when his boss was on

23    vacation that he thought he was allowed to do.

24    That's -- that's great.  He's done very well

25    disciple wise, which would also tend to show

26    that when he gets out he's going to be a good

27    employee.  He's also held various jobs.  His

64

1    work record has been very good, and his

2    self-help -- I mean he was told to beef it up

3    last time, but he had a lot of it already.  He's

4    got -- he has three different forms of Anger

5    Management, Impact, Breaking Barriers, Change in

6    2002, Personal Growth Workshops.  He's also had

7    -- he's been very lucky to have had individual

8    therapy with Dr. Tooreeney (phonetic).  He

9    earned not a GED but a high school diploma.  Has

10   worked with Dr. Gleason on his own time to --

11   reading self-help books.  Completed the voc of

12   Printing and Graphics.  I mean, he has met all

13   the prior requests of the Board to remain

14   disciplinary-free, get self-help, and earn

15   laudatory chronos.  Going back to the

16   suitability factors, again, he's matured.  He

17   has no criminal history.  He has understanding

18   and plans for the future.  He has marketable

19   skills, and I think it's very generous that the

20   Board in the past has wisely recommended that he

21   seek another vocation but he's explained that he

22   does have a vocation.  It doesn't say that he

23   has to complete vocations; it says that he has

24   to have marketable skills.  In his heart he

25   wants to be an x-ray technician.  So, he -- he

26   hasn't been wasting his time here.  He has been

27   doing self-help, and also he's been involved in

65

1    sports.  He's told me that he's been involved in

2    soccer and softball and football, which, you

3    know, if it's not -- please consider that if

4    it's documented.  That's what Mr. Richards told

5    me.  So, he has been doing a lot while he's been

6    here.  He's been maintaining family ties.  He's

7    been an asset to the institution, based upon his

8    work record, the way he gets along with others.

9    And I think clearly this may -- there were --

10   some of the people involved in this incident I

11   think were probably gang members, but he has no

12   gang affiliation.  There's nothing confidential

13   in his file, and so he's suitable under all

14   those different factors and overall he's not an

15   unreasonable risk to society or unreasonable

16   danger.  You know, there's no violence at all.

17   Other than this offense, he has no prior record.

18   Nothing since.  Nothing but -- he's done nothing

19   but positive things that we've gone over today,

20   and he has very tight parole plans, a ton of

21   support.  He is by every definition suitable,

22   and I know the people object that they don't

23   feel he's taken responsibility.  I hope I'm not

24   misquoting him.  But, it doesn't require 2236 of

25   Title XV does not require him to do that in

26   order to be found suitable.  And he has

27   maintained his version of events -- he's

66

1    maintained since the beginning.  So, I would

2    submit to you today -- but it's not my

3    impression or I would tell you -- it's not my

4    impression that he's at all lying to you about

5    what happened.  I don't think there's any reason

6    for him to lie.  He'd be --you know, it would

7    probably suit him more if he were just to accept

8    the facts, but I think he's trying to be honest

9    to himself so, anyway -- but it -- that is not

10   required for him to be found suitable, and I

11   would ask the Board give him a date.  Thank you.

12        **DEPUTY COMMISSIONER MEJIA:**  Let me just

13   ask a quick question for him before he makes his

14   statement.  Yeah, he made a -- a statement that

15   the way he was raised was not to tell on

16   anybody.  Do you remember making that statement?

17        **INMATE RICHARDS:**  Yes, Sir.

18        **DEPUTY COMMISSIONER MEJIA:**  And what has

19   changed because that's what happened

20   (indiscernible) had happened during the crime.

21   What has changed over the years now in the way

22   you look at things when it comes to telling on

23   anybody?  What's different -- what's different

24   from you now today than the last time?

25        **INMATE RICHARDS:**  I've grown up.  I've

26   grown up.  Now, as far as me not telling on

27   anybody, if it's people from my family I would

67

1    make them take responsibly for their own actions

2    now. They're not little kids anymore. This

3    isn't a joke in here. I came in here a young

4    man, and it isn't a joke in here. And I've lost

5    a lot of my life, I mean, so it's not a matter

6    of me telling on them, it's just a matter of

7    them owning up to their responsibility.

8    **DEPUTY COMMISSIONER MEJIA:** What if they

9    don't want to own up?

10    **INMATE RICHARDS:** Well then, my

11    grandmother's -- she's a pushy woman, so --

12    **DEPUTY COMMISSIONER MEJIA:** Don't give me

13    your grandmother. I'm asking a question. What

14    are you going to do if they don't want to own up

15    to their responsibility?

16    **INMATE RICHARDS:** If I have to be -- if I

17    have to go and tell on them, well, hey, I've

18    done enough of my time. I've wasted enough of

19    my life for -- that's what's gonna happen, it's

20    gonna happen. I mean, I'm not throwing away no

21    more of my life for them. For anybody.

22    **DEPUTY COMMISSIONER MEJIA:** Thank you. I

23    got no other questions.

24    **PRESIDING COMMISSIONER BIGGERS:** If you'd

25    like to (indiscernible) --

26    **ATTORNEY RUTLEDGE:** I would only respond

27    to you that I would incorporate by reference

68

1    this -- I would ask that the Board consider all

2    the psych reports, too, in making their decision

3    today.

4         PRESIDING COMMISSIONER BIGGERS:  Okay.

5    All right.  At this point, Mr. Richards, you

6    have the opportunity to tell this Panel why you

7    feel that you are suitable for parole.

8         INMATE RICHARDS:  Well, I know my life's

9    in your hands.  I mean, I -- like I said, I came

10   in here a young man.  Every day is a nightmare.

11   I've grown up; I've seen my family get old.  I

12   have -- a lot of people from my family passed

13   away where I didn't get a chance to spend no

14   time with them.  My son's gonna be 18 years old.

15   I know it doesn't change the fact that I have a

16   son and the victim's family doesn't have a

17   father, but I know I can make a good

18   contribution out there.  I mean, I'm not a kid

19   no more.  I have a church community behind me.

20   I'm gonna go to church, I mean, so I got my

21   family support.  And they say I'm a threat to

22   society -- if I'm a threat to society I been in

23   here going on 19 years, I would imagine I would

24   have been in some kind of physical altercation.

25   Some kind of 115s.  Saying I'm a threat to

26   society, but I try to mind my own business.  I

27   stay involved in sports.  I go to work.  I mean,

69

1    so -- I feel I'm not a threat to society

2    anymore.  That's it.  Thank you.

3          PRESIDING COMMISSIONER BIGGERS:  Okay.

4    Thank you very much.  We will go into

5    deliberations at this time.

6                    R E C E S S

7                    --oOo--

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

70

1        CALIFORNIA BOARD OF PAROLE HEARINGS

2              D E C I S I O N

3      DEPUTY COMMISSIONER MEJIA: We're now on

4 record.

5      PRESIDING COMMISSIONER BIGGERS: Okay.

6 Let the record reflect that everyone that was

7 present when we went into deliberations is now

8 back in the room. Mr. Richards, the Panel has

9 reviewed all information received from the

10 public and relied on the following circumstances

11 in concluding that the prisoner is not suitable

12 for parole and would pose an unreasonable risk

13 of danger to society or a threat to public

14 safety if released. And I will talk to you a

15 little bit about this in a few minutes because

16 this is about your third or fourth denial on a

17 one-year, and I'll explain something to you very

18 shortly here. The offense was carried out in an

19 especially cruel and callous manner, in that you

20 and a group of your -- and I'm taking this

21 strictly from the Probation -- from the

22 Appellate Decision -- that you and your brother

23 and some friends of yours beat the victim,

24 Reuben Lopez, with a metal baseball bat which

25 was carried out in an exceptionally callous

26 disregard for human suffering. Once the

27 DANIEL RICHARDS   E-00575     DEC PAGE 1    05/02/06

71

1    individual was on the ground and you were

2    hitting Mr. Lopez and it appears that your --

3    that one of your co-defendants was hitting Mr.

4    Salvador, and once they were on the ground you

5    all continued to kick and there was a witness

6    that said you were hitting him -- continued to

7    hit Mr. Lopez when he was on the ground.  It was

8    definitely a cruel and callous manner the way it

9    even started.  Very trivial in the way that it

10   started because your story was that they asked

11   you for money.  The record reflects that you --

12   something was said and then it escalated into

13   this cruel and callous crime.  We noted that

14   there is somewhat of an unstable social history,

15   according to the record that you were separated

16   at birth from your parents.  We also note that

17   the factors of -- you've been in here for 19

18   years and yet you have not upgraded yourself

19   vocationally as much as you -- as much we think

20   that you should.  The last Panel -- I'm going to

21   read this verbatim so that I make sure that I

22   get it right -- indicated to you that --

23              "You came across today with a

24              (indiscernible) attitude that

25              you're gonna do it your way.

26              You're gonna program your way.

27   DANIEL RICHARDS   E-00575    DEC PAGE 2    05/02/06

72

1              You've completed all there is to

2              complete when it comes to

3              self-help.  And even though you've

4              taken Anger Management from the

5              last Board Report and when

6              Commissioner Mejia asked you about

7              the -- what else had you done in

8              the way of self-help and getting

9              avocation, you made a statement

10             that what they offered here is not

11             something that I want to do on the

12             outside."

13   And that was even brought up to you earlier, in

14   the last Board Report so that you know that,

15   hey, you surely should get some self-help to

16   help you (indiscernible) when you get outside

17   that you'll be able to show and demonstrate that

18   you'll be a productive citizen so that you don't

19   hve to revert back to those activities that you

20   may or may not -- that may confront you once you

21   get out.  The -- and I'll talk a little bit

22   about the story here in a few minutes, but I

23   wanted to get that out right away.  But you

24   haven't done very much actually for your

25   vocation since 1986 -- I mean 1998, I'm sorry.

26   And that was done in 1998.  You did participate

27   DANIEL RICHARDS  E-00575   DEC PAGE 3   05/02/06

73

1   in Anger Management since your last Board

2   Report, and that's good.  And your disciplinary

3   was just 11 128s and three 115s is also

4   commendable.  The psychological report was not

5   totally support, and let me read what it said

6   and that may lead me into the other thing that I

7   wanted to mention to you as well.  On review of

8   the crime -- and this was written by Dr. Zike,

9   Z-I-K-E, on 11/03/04 -- there is no way for

10  certain to the circumstances of the case and

11  inmate Richards involvement to the Assessment of

12  Dangerousness that would be based on the past

13  (indiscernible) program since being incarcerated

14  -- current mental status and gains made since

15  being incarcerated."  And he based it on the

16  story that you continue to give even though you

17  have been found guilty of the crime.  In other

18  words, he couldn't diagnose you effectively

19  because you keep saying, hey, I'm the victim

20  here.  I did not do this.  Even though the

21  Appellate Decision, the Court decision and

22  everybody has found you guilty of this crime.

23  So you need to look at that, sir.  You need to

24  look at that and accept the fact that you have

25  been found guilty.  You do have viable parole

26  plans.  You have acceptable employment plans.

27  **DANIEL RICHARDS   E-00575    DEC PAGE 4    05/02/06**

74

1   You can work with your -- with your relatives.

2   However, you know, you indicated hey, I will

3   wash dishes at the -- at the restaurant.  But if

4   you work -- if you had worked on your skills,

5   you could have had something to look forward to,

6   you know.  Things have changed out there.  You

7   -- it's hard to make it on a minimum wage job,

8   especially with gas now $3.00 and something a

9   gallon.  So it would be very difficult for you

10  to do that, so you should take advantage of the

11  time that you have here in order to get yourself

12  ready and prepared to go.  On the 3042 notices,

13  the District Attorney of LA County as well as

14  the Sheriffs Department of LA County both noted

15  their opposition to a finding of parole

16  suitability for you.  You've had -- as I've said

17  before, you've had a series of one-year denials,

18  and each of them has specified certain things

19  for you to do.  But you haven't' been doing

20  them.  You've just started.  When you come back

21  in here next year for your next hearing, you

22  should have everting locked up the way that they

23  keep asking you to do it and the way we're

24  asking you to do it.  Get involved with your

25  ·self-help.  Try to come up with another

26  vocation. ·Even if you started and you're

27  **DANIEL RICHARDS   E-00575     DEC PAGE 5     05/02/06**

75

1    showing progress, and you know -- and I'll go

2    back to what the -- to the 2004 report for your

3    last Board report and this was taken -- and

4    again I'm taking this verbatim because I think

5    it's important for you to remember what was said

6    to you at that point.  And this was written by

7    -- who was the Commissioner then?  It was

8    Commissioner Lawin, L-A-W-I-N.  And I think he

9    said it very well.  "-- and by not being

10   involved in self-help, you're just showing us

11   that you're not progressing."  You remember that

12   statement being made to you, sir?  You're just

13   staying where you are.  You need to look at

14   that.  The same thing holds true with story that

15   you're' telling.  Nobody is believing you.  You

16   need to take responsibility, and accept the fact

17   that you've been found guilty and your story is

18   not believable especially with all of the

19   witnesses that have been there.  Needless to

20   say, we want to commend you -- never the less we

21   want to commend you for  remaining

22   disciplinary-free since '98, the above average

23   work report, your recent attendance to Anger

24   Management, and also encourage you to work on

25   self-help and start working on another vocation

26   other than the one that you had back earlier.

27   DANIEL RICHARDS  E-00575    DEC PAGE 6    05/02/06

76

1    Again, these positive aspects do not outweigh

2    the factors of suitability, and this will be a

3    one-year denial.  You're close, but you need to

4    follow what the Board is asking you to do.

5    Don't just make it superficial.  Do what they've

6    asked of you.  That concludes the hearing.  It

7    is now 1305 -- oh, I'm sorry.

8         **DEPUTY COMMISSIONER MEJIA:**  In regards to

9    this (indiscernible) marketable skills.  I

10   understand what --you answer that you're working

11   with PIA as a Rockmill Machine Operator.  What

12   you can suggest -- I suggest you do next time is

13   bring a memorandum of employability of your

14   skill at PIA -- I've seen that.  They can make

15   that for you.  They can generate one for you.

16   Wherein you can say -- so it will count as

17   another marketable skill for you.  I know you

18   get paid for this -- you get paid an -- so, have

19   them do a memorandum of what level you are when

20   it comes to your employability when you get out

21   on the streets, so that it will count as part of

22   your upgrade in a vocation.  Just wanted --

23   okay.

24        **INMATE RICHARDS:**  All right.

25        **PRESIDING COMMISSIONER BIGGERS:**  Okay,

26   thank you,.sir.  And again, you're doing fine,

27   **DANIEL RICHARDS   E-00575    DEC PAGE 7    05/02/06**

77

1     but you've got to take -- you've got to do this

2     yourself.  That concludes the hearing.  The time

3     is now 1305.  Good luck to you, sir.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23     PAROLE DENIED ONE YEAR                AUG **3 0** 2006

24     THIS DECISION WILL BE FINAL ON:_____

25     YOU WILL BE PROMPTLY NOTIFIED, IF PRIOR TO THAT

26     DATE, THE DECISION IS MODIFIED.

27     DANIEL RICHARDS  E-00575     DEC PAGE 8    05/02/06

78

CERTIFICATE AND

DECLARATION OF TRANSCRIBER

I, RUBY M. DOUGHERTY, a duly designated

transcriber, PETERS SHORTHAND REPORTING, do hereby

declare and certify under penalty of perjury that I

have transcribed tape(s) which total ONE in number and

cover a total of pages numbered 1 - 77, and which

recording was duly recorded at CORRECTIONAL

TRAINING FACILITY, SOLEDAD, CALIFORNIA, in the

matter of the SUBSEQUENT PAROLE CONSIDERATION HEARING

for DANIEL RICHARDS, CDC NO. E-00575, on MAY 2, 2006,

and that the foregoing pages constitute a true,

complete, and accurate transcription of the

aforementioned tape to the best of my ability.

I hereby certify that I am a disinterested

party in the above-mentioned matter and have no

interest in the outcome of the hearing.

Dated MAY 30, 2006, at Sacramento, California.

RUBY M. DOUGHERTY

TRANSCRIBER

**PETERS SHORTHAND REPORTING**

BOARD OF PRISON TERMS                                    STATE OF CALIFORNIA
LIFE PRISONER HEARING DECISION FACE SHEET

[ ] PAROLE GRANTED - (YES)
    CDC:  Do not release prisoner before
          Governor's review

| Records Use Only |
| --- |
| Parole Release Date |

|     | YR | MO | DAY |
| --- | --- | --- | --- |

[✓] PAROLE DENIED - (NO)
    One Year. 2005 Calendar.

Attach Prison Calculation Sheet

[ ] AGREED UNSUITABLE (Attach 1001A Form) FOR:_____YEAR(S)
[ ] HEARING POSTPONED/REASON:_____

## PANEL RECOMMENDATIONS AND REQUESTS

**The Board Recommends:**
[ ] No more 115's or 128A's       [✓] Stay discipline free
[ ] Work to reduce custody level  [ ] Learn a trade*        [✓] Earn positive chronos
[✓] Get self-help*                [ ] Get therapy*          [ ] Get a GED*

[ ] Recommend transfer to_____
[ ] Other_____
*These programs are recommended if they are offered at your prison and you are eligible/able to participate.

**Penal Code 3042 Notices**       [X] Sent  Date: 10-28-04

| Commitment Offense(s) | PC 187 | **MURDER 2ND** |
| --- | --- | --- |
|  | Code(s) | Crime(s) |
|  | A 958631 | 1 |
|  | Case #(s) | Count #(s) |

| Date Inmate Came to CDC 11/7/88 | Date Life Term Began 11/7/88 | Minimum Eligible Parole Date 10/14/97 |
| --- | --- | --- |
| [ ] Initial Hearing | [X] Subsequent (Hearing No.) #4 | Date of Last Hearing 09-04-2003 |

| CDC Representative | D.S. LEVORSE, C&PR |  |
| --- | --- | --- |
| Attorney for Prisoner | M. TARDIFF | Address |
| D.A. Representative | C. FRISCO | County  LA |

This form and the Board's decision at the end of the hearing is only proposed and NOT FINAL. It will not become
final until it is reviewed.

| Chair | Sharon Lawin | Date | 12/7/04 |
| --- | --- | --- | --- |
| Panel Member |  | Date |  |
| Panel Member |  | Date |  |

| NAME | CDC # | CTF-SOLEDAD | CALENDAR | DATE |
| --- | --- | --- | --- | --- |
| RICHARDS, DANIEL | E-00575 |  | DEC. 2004 | DEC. 7, 2004 |

BPT 1001 (REV. 08/03)

50

1    CALIFORNIA BOARD OF PRISON TERMS

2    D E C I S I O N

3    **DEPUTY COMMISSIONER LOPEZ:**  Okay.  We're

4    back on record.

5    **PRESIDING COMMISSIONER LAWIN:**  Thank you.

6    All parties have returned to the room in the

7    hearing for Daniel Richards.  Mr. Richards, the

8    Panel has reviewed all information received from

9    the public and relied on the following

10   circumstances in concluding that you're not yet

11   suitable for parole and would pose an unreasonable

12   risk of danger to society or a threat to public

13   safety if released from prison.  This is a one-

14   year denial.  The denial is based on the

15   commitment offense in the callous fashion in which

16   it was carried out, was actually a cruel manner.

17   The inmate states that he was not the perpetrator

18   of the crime that he was in fact involved in an

19   altercation with Mr. Lopez.  Mr. Richards contends

20   he was the victim in that altercation.  And then

21   after Mr. Richards left the scene, others came

22   upon Mr. Lopez and beat him to death.  The jury

23   didn't believe that.  The jury found him guilty of

24   murder second based on all of the evidence and

25   testimony received.  And all of the witnesses

26   indicate that it was, in fact, the inmate who beat

27   DANIEL RICHARDS E-00575  DECISION PAGE 1  12/7/04

51

1    Mr. Lopez that he was involved with a number of

2    others.  There was a metal bat that was apparently

3    used.  There was some sort of piece of

4    transmission that was used.  And Mr. Lopez died

5    about a week after the initial beating of the

6    injuries, blunt force trauma as indicated.  The

7    motive for this crime is inexplicable.  And it is

8    because the inmate states, again, he was a victim.

9    And then because he says he was not involved in

10   the actual murder of Mr. Lopez, it's difficult to

11   ascertain why he was killed.  Unfortunately, I

12   guess for Mr. Richards, the Panel doesn't believe

13   any of Mr. Richards assertions because the jury,

14   as I indicated early on the Panel accepts as true

15   the Court's findings.  The Court says he's guilty

16   of this crime.  He is not required to take

17   responsibility for it, but when all of the

18   evidence is so overwhelming and points to his at

19   least his more rigorous participation in the

20   crime, it's just very difficult to believe his

21   innocence.  The next reason for our denial would

22   be the fact that the inmate has not participated

23   in self-help since his last hearing, as had been

24   previously recommended.  The next would be that

25   although he has parole plans they're really not

26   appropriate parole plans.  He is returning to not

27   **DANIEL RICHARDS E-00575  DECISION PAGE 2  12/7/04**

52

```
 1   only the same area, but also he wishes to live in
 2   the same house that he was arrested in.  Certainly
 3   not a situation to set him up for a successful
 4   parole by returning to an area with such negative
 5   overtones or overtures.  And he does have an offer
 6   of employment with his mother, his stepmother.  He
 7   has a psych report dated November 3rd, 2004, it's
 8   by Jeff Howlin, H-O-W-L-I-N, it is generally
 9   supportive of release.  Dr. Howlin states he's no
10   greater risk for future violence than the average
11   citizen.  The inmate has completed a vocation
12   Print Shop Graphics and Print Shop.  The Panel
13   also received responses to PCP 3042 Notices.  The
14   Los Angeles County Sheriff's Department responded
15   in writing and the district attorney, personally.
16   And they were opposed to a finding of parole
17   suitability.  The Panel finds that the inmate
18   needs participation in self-help.  Not only to
19   continue to delve into the causative factors for
20   his participation in the life crime, but to
21   continue to develop those skills that will allow
22   him to remain law abiding and live within the
23   society he's housed whether it's here or in prison
24   in a positive fashion.  And until further progress
25   is made, he continues to be unpredictable and a
26   potential threat to others.  Mr. Richards is to be
27   DANIEL RICHARDS E-00575   DECISION PAGE 3   12/7/04
```

53

1 commended for the fact that he's not had a 115

2 since 1998, over six years now, the last one was

3 making and possessing unauthorized materials.

4 That's the last of three. He's to be commended

5 for not having a 128(a) counseling Chrono for nine

6 years, the last one July 20th, 1995, possession

7 another's property. He's to be commended for

8 completing his high school education, becoming a

9 graduate for completing, as I already stated,

10 Print Shop and Graphic Arts. He's to be commended

11 for his prior participation in self-help, Project

12 Change, Impact, and most recently, previously,

13 Breaking Barriers, Personal Growth, Life Skills,

14 and individual one-on-one therapy. He's also to

15 be commended for his work reports, he's getting

16 good reports currently in PIA Machine Shop. These

17 positive -- or as Machine Operator, rather, in PIA

18 (indiscernible). The positive aspects of Mr.

19 Richards' program do not, yet, outweigh the

20 factors of unsuitability. So, the unsuitability

21 far outweighs the positive aspects. Mr. Richards,

22 we make the following recommendations to you. One

23 is that you remain disciplinary free and secondly,

24 that when it is available to you that you

25 participate in self-help. Mr. Richards, you came

26 across today to this Panel with an attitude that

27 **DANIEL RICHARDS E-00575  DECISION PAGE 4  12/7/04**

54

1    you're going to do it your way, you're going to

2    program your way, you've completed all there is to

3    complete when it comes to self-help.  You may have

4    completed programs.  There may not be anything

5    today that's available to you, I don't know if

6    that's the truth or not.  But I see thousands of

7    inmates every year and I see thousands of inmates,

8    maybe hundreds of them at this institution, and

9    they come in here with a slough of self-help.  If

10   it's not available here they go out and get it

11   through a correspondence course, whatever means.

12   We want to make sure you're not the same person

13   you were when you came into the institution.  And

14   by not being involved in self-help, you're just

15   showing us that you're not progressing, you're

16   staying where you were.  It's very important to

17   get involved in self-help.  If you can't get any

18   programs, get self-help books.  Keep track of the

19   books you read.  Learn something, but don't just

20   become stagnant.  Your life crime is a problem

21   because of your position and you know, I'm not

22   going to say it a third time, but we do understand

23   your position.  But all the facts point to

24   something completely different and we have to live

25   with those facts.  So, many of the statements you

26   made sound like, again, you're going to, you know,

27   **DANIEL RICHARDS E-00575  DECISION PAGE 5  12/7/04**

55

1    you got your story and you're going to stick to it

2    and it doesn't matter that none of it makes sense.

3    I would just recommend to you that you read the

4    reports again and read the transcript and maybe

5    put the two together and you can see how you come

6    across to the Panel.  You're doing a positive

7    program, but you need to add to it.  And you

8    really need to reconsider your parole plans.

9    Perhaps it's a better idea for you to live with

10   your stepmother to begin with, not enter into a

11   brand new relationship and a new living

12   environment at the same time, and certainly not go

13   back to the same neighborhood.  And that's all I

14   have.  Commissioner, anything else?

15        **DEPUTY COMMISSIONER LOPEZ:**  Just wish you

16   luck, Sir.

17        **PRESIDING COMMISSIONER LAWIN:**  That

18   concludes this hearing.  It's 12:30.

19                     --o0o--

20

21

22

23   **PAROLE DENIED ONE YEAR**

24   **THIS DECISION WILL BE FINAL ON:** _____

25   **YOU WILL BE PROMPTLY NOTIFIED IF, PRIOR TO THAT**

26   **DATE, THE DECISION IS MODIFIED.**

27   **DANIEL RICHARDS E-00575   DECISION PAGE 6   12/7/04**

55

# CERTIFICATE AND

# DECLARATION OF TRANSCRIBER

I, TRACY CORTEZ, a duly designated transcriber, CAPITOL ELECTRONIC REPORTING, do hereby declare and certify under penalty of perjury that I have transcribed tape(s) which total one in number and cover a total of pages numbered 1 through 55, and which recording was duly recorded at CORRECTIONAL TRAINING FACILITY, at SOLEDAD, CALIFORNIA, in the matter of the SUBSEQUENT PAROLE CONSIDERATION HEARING of DANIEL RICHARDS, CDC Number E-00575, on DECEMBER 7, 2004, and that the foregoing pages constitute a true, complete, and accurate transcription of the aforementioned tape(s) to the best of my ability.

I hereby certify that I am a disinterested party in the above-captioned matter and have no interest in the outcome of the hearing.

Dated December 29, 2004, at Sacramento County, California.

Tracy Cortez
Transcriber
**CAPITOL ELECTRONIC REPORTING**

BOARD OF PRISON                                                    STATE OF CALIFORNIA

# LIFE PRISONER PAROLE CONSIDERATION WORKSHEET

☐ INITIAL HEARING          ☒ SUBSEQUENT HEARING

| PRISONER'S NAME | CDC NUMBER |
|---|---|
| RICHARDS, DANIEL | E-00575 |
| DATE OF HEARING | LOCATION |
| DEC. 7, 2004 | CORRECTIONAL TRAINING FACILITY - SOLEDAD |

## LEGAL STATUS

| DATE RECEIVED | DATE LIFE TERM STARTS (IF DIFFERENT) | COUNTY |
|---|---|---|
| 11-07-1988 | 11-07-1988 | LOS ANGELES |
| OFFENSE | | CASE NUMBER |
| MURDER 2ND | | A 958631 |
| COUNT NUMBER(S) | PENAL CODE SECTIONS(S) VIOLATED | |
| 01 | PC 187 | |
| TERMS | MEPD | |
| 15 YEARS TO LIFE | 10-14-1997 | |

### OTHER COMMITMENT OFFENSES OR STAYED COUNTS

| STAYED | OFFENSE | CODE SECTION | COUNTY | CASE NUMBER | COUNT NUMBER |
|---|---|---|---|---|---|
| ☐ | | | | • | |
| ☐ | | | | | |
| ☐ | | | | | |

## PRESENT AT HEARING

| PANEL MEMBER | PANEL MEMBER | PANEL MEMBER |
|---|---|---|
| LAWIN | LOPEZ | |

OTHERS PRESENT

☐ PRISONER (IF ABSENT, WHY)

☒ ATTORNEY    M. TARDIFF

☒ DEPUTY D.A.    C. FRISCO        COUNTY OF    LA

☐ OTHERS:

## STATEMENT OF FACTS

☐ THE HEARING PANEL INCORPORATED BY REFERENCE FROM THE DECISION OF THE HEARING HELD

ON _____ , PAGES _____ THROUGH _____

☒ THE STATEMENT OF FACT IS

☐ QUOTED FROM THE BOARD REPORT, DATED _____ ,PAGE(S) _____

☒ QUOTED FROM THE PROBATION OFFICER'S REPORT, PAGE(S)    2 - 3

☐ QUOTED FROM THE COURT OPINION, PAGE(S) _____

BPT    1000 (Rev 8/90)

BOARD OF PRISON TERMS                    STATE OF CALIFORNIA
LIFE PRISONER: PAROLE CONSIDERATION PROPOSED DECISION:
DENY PAROLE

[✓] PAROLE DENIED FOR:        ( 1 )    2    3    4    5      YEARS

Place the prisoner on the _____ *2005* _____ calendar for his next subsequent hearing.

If this decision is final, you WILL NOT get paroled. The Board will send you a copy of the decision. It will indicate the reasons you did not get paroled. If this decision is not final, the Board will set up another hearing. You can read the laws about your hearing. You can find the laws at California Code of Regulations, Title 15, section 2041.

**RECOMMENDATIONS**

**The Board Recommends:**

[  ] No more 115's or 128A's            [  ] Learn a trade*
[  ] Work to reduce custody level       [  ] Get therapy*
[✓] Get self-help*                      [✓] Earn positive chronos
[✓] Stay discipline free                [  ] Get a GED*

[  ] Recommend transfer to _____
[  ] Other _____

* These programs are recommended if they are offered at your prison and you are eligible/able to participate.

**HEARING PANEL**

Name _Sharon Lawin_                     Date _12/7/04_

Name _____                  Date _____

Name                                    Date

| NAME | CDC# | PRISON | DATE |
|------|------|--------|------|
| RICHARDS, DANIEL | E 00575 | CTF | 12/7/04 |

BPT 1005(b)
(REV 04/04)

Distribution: White-C File
Canary-BPT
Pink-Prisoner

BOARD OF PRISON TERMS
LIFE PRISONER DECISION FACE SHEET

STATE OF CALIFORNIA

## PERIOD OF CONFINEMENT
### (RECORDS OFFICER USE ONLY)

|  | YR | MO | DAY |
|---|---|---|---|
| Adjusted Period of Confinement...................................................... |  |  |  |
| Date Life Term Begins................................................................... | + 1988 | 11 | 07 |
| At Large Time............................................................................... | + |  |  |
| PAROLE DATE............................................................................... | = |  |  |

## MISCELLANEOUS

*Parole denied one (1) year.*

*(plus psy report)*

Panel recommendations and requests:
_____ Become __✓__ Remain disciplinary free.
_____ Work towards reducing his/her custody level.
_____ Upgrade _____ vocationally _____ educationally
__✓__ Participate in __✓__ self-help (and) _____ therapy.
_____ Transfer to _____ Cat. X _____ Cat. T.

PENAL CODE SECTION 3042 NOTICES ☒ SENT    (Date) July 18, 2003

COMMITMENT OFFENSE

| PC 187 | Murder 2nd |
|---|---|
| (Code Section) | (Title) |
| A958631 | 01 |
| (Case Number) | (Count Number) |

| Date Received by CDC 11/7/88 | Date Life Term Begins 11/7/88 | Controlling MEPD 10/14/97 |
|---|---|---|
| Type of Hearing ☐ INITIAL  ☒ SUBSEQUENT (Hearing No.) #3 |  | If Subsequent Hearing, Date of Last Hearing 9/20/01 |

| Department Representative D.S. LEVORSE, C&PR | |
|---|---|
| Counsel for Prisoner Patrick Sparks | Address 430 Quintara Road, P.M.B. 135, Morro Bay, California 93442 |
| District Attorney Representative | County LOS ANGELES |

## PAROLE HEARING CALENDAR

*This form and the panel's statement at the conclusion of the hearing constitute a proposed decision and order of the Board of Prison Terms. The decision becomes effective when issued following the decision review process.*

By:

| | Date |
|---|---|
| Presiding (Name) | Date |
| Concurring (Name) | Date |
| Concurring (Name) | Date |

| NAME RICHARDS, DANIEL | CDC NUMBER E00575 | INSTITUTION CTF | CALENDAR 9/1/02 | HEARING DATE September 4, 2003 |
|---|---|---|---|---|

BPT 1001 (Rev. 1/91)

56

1    CALIFORNIA BOARD OF PRISON TERMS

2    D E C I S I O N

3    DEPUTY COMMISSIONER HARMON:  (Inaudible)

4    record.

5    PRESIDING COMMISSIONER WELCH:  Okay.  The

6    Panel reviewed all -- before I say that, everyone,

7    Mr. Richards, that was in the room before have

8    returned and we do have a decision.  The Panel

9    reviewed all information received from the public

10    and relied on the following circumstances in

11    concluding that the prisoner is not suitable for

12    parole and would pose an unreasonable risk of

13    danger to society or a threat to public safety if

14    released from prison.  For one -- it's going to be

15    a one-year denial.  And the reasons for this denial

16    is the offense was carried out in an especially

17    cruel and callous manner.  The offense was carried

18    out in a dispassionate manner.  Certainly if you

19    beat a victim with a baseball bat and a

20    transmission rod he's abused.  The offense was

21    carried out in a manner that demonstrates an

22    exceptionally callous disregard for another human

23    being, and the motive for the crime was

24    inexplicable, especially if it was related to gang

25    activity.  That conclusion was drawn from the

26    Statement of Facts wherein on September 6th, 1987,

27    DANIEL RICHARDS    E-00575   DECISION PAGE 1    9/4/03

57

1    the victim, Lopez, and his companion was walking

2    down the street when they were approached by the

3    prisoner and his codefendant.  An altercation

4    ensued, words was exchanged, the victim was hit and

5    kicked by both the prisoner and his companion.  He

6    was hit with a baseball bat and (indiscernible)

7    what appears to be a transmission (inaudible).  And

8    the prisoner was convicted of this crime based on

9    witnesses.  The prisoner had no prior criminality,

10   no juvenile or adult record.  Certainly there is

11   some unstable social factors.  According to the

12   record the prisoner's parents separated at birth

13   and the prisoner had half-brothers, siblings, and

14   in his own testimony he indicated that most of them

15   (inaudible).  The prisoner has programmed in a

16   reasonable manner since his last hearing

17   especially.  Recent psychiatric report shows that

18   the prisoner has made progress, especially in a

19   structured environment.  Shows that his level of

20   dangerousness in a structured environment is below

21   average when you compare him to a Level II inmate.

22   The doctor writes if he's released to the

23   community, his violence potential is considered to

24   be no more than the average -- relative to the

25   average citizen in the community.  And this report

26   -- the last formal evaluation was completed in 1998

27   DANIEL RICHARDS    E-00575   DECISION PAGE 2    9/4/03

58

1   by Dr. Terrini, so the Panel is requesting a new

2   psychological evaluation, so certainly the prisoner

3   is making progress from the psychological

4   (indiscernible).  Parole plans -- The prisoner made

5   a valiant effort to get parole plans.  He could

6   live with his mother and certainly that's

7   acceptable.  We also note that the prisoner have a

8   job offer (indiscernible) and he have a job offer

9   (indiscernible) earning money.  He have a fiancé

10  that's supportive.  The hearing Panel notes that in

11  response to Penal Code 3042 notices indicate an

12  opposition to a finding of suitability, that the

13  Deputy District Attorney from Los Angeles spoke in

14  opposition to a finding of suitability at this

15  time.  The Panel makes the following findings.  The

16  prisoner should continue to participate in positive

17  activities, self-help programs, the kinds that

18  would enable him to continue to (indiscernible)

19  stress in a nondestructive manner.  Until enough

20  progress is made, the prisoner continues to be

21  unpredictable and a threat to others.

22  Nevertheless, (indiscernible) pointed out, we want

23  to commend him for being disciplinary-free since

24  his last hearing and for participating in the kinds

25  of activities that he participated in since his --

26  self-help and other activities that he participated

27  DANIEL RICHARDS    E-00575   DECISION PAGE 3   9/4/03

59

1    in over the years.  Nevertheless, those positive

2    aspects of his behavior does not outweigh the

3    factors of unsuitability.  Parole is going to be

4    denied for one year.  As previously mentioned, the

5    Panel recommends that he remain disciplinary-free,

6    and continue to participate in positive self-help

7    programs.  We also (indiscernible) a new

8    psychological evaluation be completed and that the

9    clinician take a look at the prisoner's violence

10   potential in the free community, the significance

11   of alcohol and drugs as it related to the

12   commitment offense, whether there was overtones of

13   (indiscernible) or gang overtones, and the extent

14   that the prisoner have explored (indiscernible).

15   And that concludes the reading of the decision.

16   Commissioner, comments?

17        DEPUTY COMMISSIONER HARMON:  Nothing

18   further at this time.  I wish you luck, sir.

19        PRESIDING COMMISSIONER WELCH:  Good luck to

20   you, Mr. Richards.

21        ATTORNEY SPARKS:  All right.

22                   --o0o--

23

24

25   PAROLE DENIED ONE YEAR

26   FINAL DATE OF DECISION _____

27   DANIEL RICHARDS   E-00575   DECISION PAGE 4   9/4/03

60

CERTIFICATE AND

DECLARATION OF TRANSCRIBER

I, CAROL A. EDWARDS, a duly designated

transcriber, CAPITOL ELECTRONIC REPORTING, do

hereby declare and certify under penalty of perjury

that I have transcribed tape(s) which total one in

number and cover a total of pages numbered 1

through 59, and which recording was duly recorded

at CORRECTIONAL TRAINING FACILITY, at SOLEDAD,

CALIFORNIA, in the matter of the SUBSEQUENT PAROLE

CONSIDERATION HEARING of DANIEL RICHARDS, CDC No.

E-00575, on SEPTEMBER 4, 2003, and that the

foregoing pages constitute a true, complete, and

accurate transcription of the aforementioned

tape(s) to the best of my ability.

I hereby certify that I am a disinterested

party in the above-captioned matter and have no

interest in the outcome of the hearing.

Dated September 21, 2003, at Sacramento

County, California.

Carol A. Edwards
Transcriber
CAPITOL ELECTRONIC REPORTING

BOARD OF PRISON TERMS                                    STATE OF CALIFORNIA
### SETTING A LIFE PRISONER TERM - PAROLE DENIED

---

### 11. NOTE TO CDC STAFF: RECOMMENDATIONS AND REQUESTS

☑ 3.  the panel's belief that the prisoner's current mental health is an
       important issue. In the new full evaluation, the panel requests that the
       clinician specifically address the following:

   ☑ a.  the prisoner's violence potential in the free community;

   ☐ b.  the significance of alcohol/drugs as it relates to the commitment
          offense and an estimate of the prisoner's ability to refrain from
          use/abuse of same when released;

   ☐ c.  the prisoner's psycho-sexual problems;

   ☐ d.  the extent to which the prisoner has explored the commitment
          offense and come to terms with the underlying causes;

   ☐ e.  the need for further therapy programs while incarcerated.

   ☐ f.  other: _New psy report._
          _B. Calely_

---

☐ 4.  the panel's belief that the prisoner has deteriorated psychologically and
       there appears to be a need for treatment. The panel bases this conclusion
       upon

_____

_____

_____

_____

☐ B. (Other requests to CDC staff): _____

_____

_____

Exhibit #2
94-03

MEMORANDUM

QUESTIONS AND OBJECTIONS FOR THE 2003 BPT HEARING PANEL

The purpose of this memorandum is to raise specific questions and/or objections during the BPT hearing to preserve the record for future judicial review should the Panel refuse to set a parole release date uniform with the sentences for offenders committing the same offenses under similar circumstances (PC §§3041(a)-(b) and 1170(a)). The BPT's policy with respect to term setting are such that prisoners serving indeterminate sentences must become proactive participants in the review process. As such, the questions below represent controlling legal principals found under statutory and decisional law.

1.          The first question for the panel is whether the purpose of this hearing is to determine: 1) If Mr. Richards' punishment is consistent with his individual culpability for the convicted offense; or 2) Whether the Panel requires that he be rehabilitated prior to receiving a uniform term?

            Should the Panel state that Mr. Richards needs rehabilitation, specific objection must be made on the basis that "The Legislature [found] and [declared] that the purpose of crime is punishment" when it repealed Penal Code section 1168(a) and replaced it with Penal Code section 1170(a) (Operative July 1, 1977). As part of the same measure, the Legislature amended Penal Code section 3041, et. seq., to include provisions consistent with Penal Code section 1170(a). Penal Code, section 1170(a) further declared that "This purpose is best served by terms proportionate to the seriousness of the offense with provision[s] for uniformity in the sentences of offenders committing the same offense under similar circumstances."

punishment
>
rehabilitation

2.          At this point the Panel may agree that the purpose for Mr. Richards' incarceration is punishment for his crime. The Panel may also state, however, that the purpose of Mr. Richards' hearing is to determine his suitability pursuant to CCR Title 15, Division 2, section 2402. The question here is whether the Panel's use of post-conviction factors--and its inherent determination for parole suitability--controvert statutory provisions which require that Mr. Richards' set, or fixed, term be based solely on the gravity of his current and/or past convicted offense(s) (PC §§1170 and 3041, et. seq.)?

            Penal Code section 3041(a) authorizes the Board to establish criteria for setting parole release dates. The criteria established by the Board, however, must accord with statutory provisions. (Govt. C. §11342.1) When an administrative regulation conflicts with a statute, the statute controls. (Govt. C. §11342.1) The Board must therefore defer to the provisions outlined in Penal Code section 3041 without regard for administrative code CCR Title 15, Division 2, section 2402. (Terhune v. Superior Court, (1998) 65 Cal.App.4th 864, 873, 76 Cal.Rptr.2d 841)

            Should the Panel refuse to set a parole release date utilizing suitability criteria that controverts the provisions set forth in Penal

- Page 1 -

Code, section 3041, specific objection must be raised on the grounds that said criteria (CCR Title 15, Division 2, section 2402) denies Mr. Richards the benefit of having his release date set, absent a finding based upon the provisions (criteria) outlined in Penal Code section 3041(b).

3.      Next the Panel should be asked if it were to set Mr. Richards' date at this hearing (CCR 15 §2403(b)), what would the appropriate term be according the gravity of his commitment offense?

        If the Panel refuses to offer a "suggested base term," stating that it must first determine suitability, Counsel must object by stating the Panel has demonstrated that it is unwilling to make its determination in a manner which would provide a uniform term for an offense of similar gravity and magnitude with respect to Mr. Richards' threat to the public. (PC §3041(a)).

        Second, Counsel must state that the Panel's refusal to suggest a base term with regard to Mr. Richards' individual culpability, arguably, denies him standing to plead a tenable objection to an otherwise excessive term.

4.      And finally, when the Panel requests statements from Mr. Richards regarding the convicted offense, Counsel must direct the panel to review statements provided by Mr. Richards during previous parole hearings. Counsel must assert that Mr. Richards has been advised to invoke his right to provide no further statements regarding the commitment offense pursuant to Title 15, Division 2, sections 2236 and 2249.

BOARD OF PRISON                                                          STATE OF CALIFORNIA

# LIFE PRISONER PAROLE CONSIDERATION WORKSHEET

☐ INITIAL HEARING          ☒ SUBSEQUENT HEARING #3

| PRISONER'S NAME<br>RICHARDS, DANIEL | CDC NUMBER<br>E00575 |
|---|---|
| DATE OF HEARING<br>Thursday, September 4, 2003 | LOCATION<br>CORRECTIONAL TRAINING FACILITY - SOLEDAD |

## LEGAL STATUS

| DATE RECEIVED<br>11/7/88 | DATE LIFE TERM STARTS (IF DIFFERENT)<br>11/7/88 | COUNTY<br>LOS ANGELES |
|---|---|---|
| OFFENSE<br>Murder 2nd | | CASE NUMBER<br>A958631 |
| COUNT NUMBER(S)<br>01 | PENAL CODE SECTIONS(S) VIOLATED<br>PC 187 | |
| TERMS<br>15 years to Life | MEPD<br>10/14/97 | |

## OTHER COMMITMENT OFFENSES *OR STAYED COUNTS*

| STAYED | OFFENSE | CODE SECTION | COUNTY | CASE NUMBER | COUNT NUMBER |
|---|---|---|---|---|---|
| ☐ | | | | | |
| ☐ | | | | | |
| ☐ | | | | | |

## PRESENT AT HEARING

| PANEL MEMBER | PANEL MEMBER | PANEL MEMBER |
|---|---|---|
| *Welch* | *Harmon* | |

OTHERS PRESENT

☐ PRISONER (IF ABSENT, WHY)

☐ ATTORNEY          Patrick Sparks

☒ DEPUTY D. A.   *Patrick*          COUNTY OF   LOS ANGELES

☐ OTHERS:

## STATEMENT OF FACTS

☐ THE HEARING PANEL INCORPORATED BY REFERENCE FROM THE DECISION OF THE HEARING HELD

ON _____ , PAGES _____ THROUGH _____

☒ THE STATEMENT OF FACT IS

    ☒ QUOTED FROM THE BOARD REPORT, DATED *Jan 2001* , PAGE(S) _1_

    ☐ QUOTED FROM THE PROBATION OFFICER'S REPORT, PAGE(S) _____

    ☐ QUOTED FROM THE COURT OPINION, PAGE(S) _____

BPT 1000 (Rev 8/90)

BOARD OF PRISON TERMS

STATE OF CALIFORNIA

LIFE PRISONER: PAROLE CONSIDERATION
PROPOSED DECISION (BPT §2041)

I.  [X]  PAROLE DENIED _One (1) year_

If this proposed decision denying parole is approved, the Board will send you a copy of the approved
decision, including the reasons for denial of parole, within 30 days of the hearing.

II.  [ ]  PAROLE GRANTED

A.  Base Period of Confinement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . _____ Months

| Case No. | Count No. | Offense |

B.  Firearm Enhancement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . + _____ Months

C.  Other Crimes Total . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . + _____ Months

| Case No. | Count No. | Offense | _____ mos. |

| Case No. | Count No. | Offense | _____ mos. |

| Case No. | Count No. | Offense | _____ mos. |

D.  Total Term . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . = _____ Months

E.  Postconviction Credit From _____ To _____ — _____ Months
                                    (Date)        (Date)

F.  Total Period of Confinement . . . . . . . . . . . . . . . . . . . . . . . . . . . = _____ Months

The period of confinement indicated is a tentative decision proposed by this panel. The decision will be reviewed
pursuant to BPT §2041, and, if approved, a copy of the approved decision will be sent to you within 30 days.
At that time appropriate pre-prison credits will be applied and a parole release date computed.

You will not engage in any conduct specified in BPT §2451. Such conduct may result in rescission or post-
ponement of your parole date.

H.  If the proposed decision denying or granting parole is disapproved, you will receive a copy of the proposed
decision and the reasons for disapproval. You will then receive a copy of the modified decision or will be
scheduled for a new hearing, as appropriate.

PANEL HEARING CASE

| lame | | Date 9-4-03 |
| ame | | Date |
| ame | | Date |

| Richard, Daniel | CDC NUMBER E-00575 | INSTITUTION CTF | HEARING DATE 9-4-03 |

Distribution: White—C. File.
Canary—BPT
Pink—Prisoner

T 1005 (Rev. 8/1/81)

Exhibit "C"

RICHARDS, DANIEL
CDC NUMBER: E-00575
BPT PSYCHOLOGICAL EVALUATION
PAGE TWO

difficult to find work when paroled, but he has given this much thought, and is agreeable to working from the ground up and starting at a very low wage. A backup plan, he stated, would be to parole to Texas, where he has an aunt who has agreed to provide housing help, as well as assistance with securing a job. Based on what was discussed with this interviewer, it appears that his parole plans are viable. He has family support, and his prognosis for community living would be positive.

Inmate Richards has completed several self-help opportunities since his last psychological evaluation. In 1999, he completed the Life Skills group with Dr. Terrini. In 2003, he completed the Impact program, and he added that also in 2003, he completed an Anger Management program at North Facility. Inmate Richards does not appear to have a significant substance abuse history.

## CLINICAL ASSESSMENT

**XII.   CURRENT MENTAL STATUS/TREATMENT NEEDS:**

Inmate Richards is a 38-year-old, Mexican male. He appeared his stated age. He was pleasant, calm and alert during the interview. His speech was clear and readily understandable, though the tone was slightly soft. His affect was broad. He was fully oriented, and his intellectual functioning was estimated to be in at least the average range compared to this level II inmate population. His attention and concentration were adequate for the purpose of this examination. There was no evidence of a mood or thought disorder. His judgment appeared to be sound. His insight regarding the commitment offense, though on the surface appeared good, was difficult to completely assess, since he has consistently denied killing the man for which he is charged.

**CURRENT DIAGNOSTIC IMPRESSIONS (DSM-IV):**

| | |
|---|---|
| **AXIS I:** | No contributory clinical disorder. |
| **AXIS II:** | No contributory personality disorder. |
| **AXIS III:** | No contributory physical disorder. |
| **AXIS IV:** | Long-term incarceration. |
| **AXIS V:** | Current GAF = 80. |

His prognosis is positive for being able to maintain his current mental status in the community upon parole.

RICHARDS, DANIEL
CDC NUMBER: E-00575
BPT PSYCHOLOGICAL EVALUATION
PAGE THREE

## XIII.  REVIEW OF LIFE CRIME:

Similar to past evaluations, inmate Richards denies the charges of murder, and said, "The individuals tried to rob me. My brother and friends came to my rescue. I ran from the crime, and then was arrested. Fighting my case, I couldn't tell on them. I rode the beef for them."

There is no way to know for certain the circumstances of this case and inmate Richard's involvement, so the assessment of dangerousness will be based on: 1) Past history. 2) Programming since being incarcerated. 3) His current mental status, and gains made since being incarcerated.

## XIV.  ASSESSMENT OF DANGEROUSNESS:

A.    Taking into account the above factors, including a complete lack of a prior criminal history, a complete lack of a violent disciplinary history since an incarceration period within CDC of approximately 16 years, his violence potential within a controlled setting is considered to be well below average compared to this level II inmate population.

B.    If released to the community, his violence potential is estimated to be no more than the average citizen in the community.

C.    There are no known significant risk factors which could be a precursor to violence in the future.

## XV.  CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS:

1)    This inmate is competent and responsible for his behavior. He has the capacity to abide by institutional standards, and has generally done so during his incarceration period.

2)    This inmate does not have a mental health disorder which would necessitate treatment either during his incarceration period or following upon parole, and mental health factors should not be a consideration in parole decisions.

RICHARDS, DANIEL
CDC NUMBER: E-00575
BPT PSYCHOLOGICAL EVALUATION
PAGE FOUR

3)  This inmate does not seem to have a history related to the abuse of substances, so therefore no recommendations are made in this area.

4)  It is recommended he continue with the prosocial behavior that he has demonstrated overall since his incarceration.


Jeff Howlin, Ed.D.
**Staff Psychologist**
**Correctional Training Facility, Soledad**


**B. Zika, Ph.D.**
**Senior Supervising Psychologist**
**Correctional Training Facility, Soledad**

JH/gmj

D: 11/03/04
T: 11/17/04

*D:\Word Files\BPT - 2004\RICHARDS, DANIEL  E-00575  12-04  HOWLIN.doc*


RICHARDS        E-00575        CTF-CENTRAL        11/03/04          gmj

PSYCHOLOGICAL EVALUATION FOR THE BOARD OF PRISON TERMS
PAROLE CONSIDERATION HEARING
DECEMBER 1998 LIFER CALENDAR

CORRECTIONAL TRAINING FACILITY, SOLEDAD
OCTOBER 7, 1998

This is the second psychological evaluation for the Board of
Prison Terms on inmate Daniel Richards.  This report is the
product of a personal interview, conducted on 10/07/98, as
well as a review of his Central file and unit health record.
I have known this inmate previously from his past
participation in one-to-one BPT therapy with me.

I.    IDENTIFYING INFORMATION:

      Inmate Richards is a 32-year-old, single, Hispanic
      male.  His date of birth is 09/04/66.  His religion is
      "Christian."  He denied any history of nicknames or
      aliases.

II.   DEVELOPMENTAL HISTORY:

      He denied any history of birth defects, abnormalities
      of developmental milestones, cruelty to animals, arson
      or a significant childhood medical history.  He denied
      a history of physical or sexual abuse as either a
      perpetrator or a victim.

III.  EDUCATIONAL HISTORY:

      Educationally, inmate Richards stated he dropped out
      of school in the 12th grade, although he eventually
      achieved a high school degree during his
      incarceration.  He is currently on the waiting list to
      be a teacher's aide.  In the past, he has had work
      experience as a machinist and working as a tree
      trimmer in a county road department.

IV.   FAMILY HISTORY:

      His parents are alive and aged 50 and 51.  He receives
      approximately one visit a year from them and stays in
      written and telephonic communication.  His father was
      imprisoned at one point in the past.  He has one
      brother currently incarcerated at CSP-Solano.

RICHARDS, DANIEL
CDC NUMBER:  E-00575
BPT PSYCHOLOGICAL EVALUATION
PAGE TWO


V.    PSYCHOSEXUAL DEVELOPMENT AND SEXUAL ORIENTATION:

      Inmate Richards is heterosexual.  He denied any
      history of sexual aggression or high-risk sexual
      behavior.

VI.   MARITAL HISTORY:

      Inmate Richards has never been married.  He has one
      child, a ten-year-old son.

VII.  MILITARY HISTORY:

      The inmate denied any military history.

VIII. EMPLOYMENT AND INCOME HISTORY:

      Prior to his commitment offense, inmate Richards had
      work experience, as mentioned previously, as a tree
      trimmer in a county road department.  He has also
      worked in the clothing industry.  If he were paroled,
      he would find work in either construction or working
      with his father in a janitorial business.

IX.   SUBSTANCE ABUSE HISTORY:

      Inmate Richards denied any history of using illegal
      drugs.  His alcohol use consisted of drinking "one
      beer once in a while."  It does not appear this man
      ever had a significant substance or alcohol problem.

X.    PSYCHIATRIC AND MEDICAL HISTORY:

      He denied any past psychiatric history, a history of
      prior hospitalizations, serious accidents or head
      injuries, a history of suicidal behavior, seizures or
      any other neurological conditions.  He is not
      currently taking any prescribed medications.

XI.   PLANS IF GRANTED RELEASE:

      If paroled, his plans include living with his
      grandmother.  Eventually, he hopes to live in Texas
      with his aunt.

RICHARDS        E-00575        CTF-NORTH        10/15/98        gj

RICHARDS, DANIEL
CDC NUMBER:  E-00575
BPT PSYCHOLOGICAL EVALUATION
PAGE THREE

## CLINICAL ASSESSMENT

XII.  **CURRENT MENTAL STATUS/TREATMENT NEEDS:**

Inmate Richards appeared his stated age.  He was
appropriately dressed and groomed.  He was
cooperative, calm and alert.  His flow of thought and
affect were within the normal range.  His speech was
normal, although somewhat soft in body.  His
intellectual functioning was estimated to be within
the average range.  There was no evidence of a mood
or thought disorder.  His judgment appeared to be
sound.  His insight was difficult to assess, as he
continues to deny any involvement in the commitment
offense.

**CURRENT DIAGNOSTIC IMPRESSIONS:**

AXIS I:     No Contributory Clinical Disorder.
AXIS II:    No Contributory Personality Disorder.
AXIS III:   No Contributory Physical Disorder.

XIII.  **REVIEW OF LIFE CRIME:**

As inmate Richard has stated in the past, he said he
was not involved in the commitment offense.  He stated
that he was accosted by four males, one of whom
stabbed him.  He said he ran away and had no further
contact with this group of people, one of whom was the
victim.

XIV.  **ASSESSMENT OF DANGEROUSNESS:**

A.   In consideration of several factors, including
     his complete lack of a juvenile or adult criminal
     history, a lack of a violent criminal history, his
     relative lack of CDC-115 violations and his lack
     of violent CDC-115s, his violence potential within
     a controlled setting is considered to be below
     average relative to this Level II inmate
     population.

B.   If released to the community, his violence
     potential is considered to be no more than

RICHARDS, DANIEL
CDC NUMBER:  E-00575
BPT PSYCHOLOGICAL EVALUATION
PAGE FOUR

average relative to the average citizen in the
community.

C.   There are no obvious significant risk factors
which may be precursors to future violent
behavior.

XV.   CLINICIAN OBSERVATIONS/COMMENTS/RECOMMENDATIONS:

1)   This inmate is competent and responsible for his
behavior.  He has the capacity to abide by
institutional standards and has generally done so
during his incarceration period.

2)   This inmate does not have a mental health disorder
which would necessitate treatment either during
his incarceration period or following parole.

3)   It does not appear this man ever had a significant
alcohol or drug problem.


STEVEN J. TERRINI, Ph.D.
Staff Psychologist
Correctional Training Facility, Soledad

SJT/gj

d:  10/07/98
t:  10/15/98

PSYCHIATRIC EVALUATION FOR THE BOARD OF PRISON TERMS
PAROLE CONSIDERATION HEARING
AUGUST 1996 CALENDAR

CORRECTIONAL TRAINING FACILITY, SOLEDAD
MAY 31, 1996


This is the first psychological evaluation for the Board of
Prison Terms on inmate Daniel Richards.  This report is the
product of a personal interview, as well as a review of his
Central file and medical record.

His crime consisted of the 1987 killing of a man.  He said, in
contrast to the official version, that what really happened was
he was accosted by four males while he was walking to the store.
They stabbed him and attempted to rob him.  A friend came along
and saved him, telling him to run.  Inmate Richards ran back to
his friend's house.  While he was gone, his friend and some
others beat the four, with one of them dying from his injuries.

He has had a fairly good record with the Department of
Corrections, having CDC-115 infractions in 1993 and 1989, both
for refusal to work.

He denied having any drug or alcohol problem prior to his
incarceration and is not in Alcoholics Anonymous now.
Educationally, he is a high school graduate.  Vocationally, he is
trained as a machinist and a tree trimmer.  His future plans
include going to live with his aunt in Texas and working there at
the General Motors factory.

MENTAL STATUS EXAMINATION:  Inmate Richards is a well developed,
well nourished man of muscular build who appeared to be his
stated age of 29.  He was appropriately dressed and groomed, and
seemed to be fully cooperative during the interview.  His speech
was clear and readily understandable.  His affect was a little
quiet.  His flow of thought was normal with no hallucinations nor
delusions noted.  He seemed to be fully oriented with normal
intellectual functioning.  His attention and concentration were
good.  His insight and judgment appear also to be good.

PSYCHIATRIC DIAGNOSIS - DSM-IV:

AXIS I:    No contributory clinical disorder.
AXIS II:   No contributory personality disorder.
AXIS III:  No contributory physical disorder.

RICHARDS
E-00575
Page Two


PSYCHIATRIC CONCLUSIONS:  He does not appear to have any
particular psychopathology which might have had a bearing upon
this offense.  He does not have a psychiatric condition which
would benefit from mental health treatment following his release.
He is showing improvement in his behavior.  He is more thoughtful
today and said that he appreciates life more.  If released, I
expect him to be able to maintain the gains that he has made.

SUGGESTED ACTIONS:  If he is to be continued in his present
program, he should be encouraged to add to his skills as a
machinist.  If he is considered for parole, his level of
dangerousness is likely to be less now than for the average
inmate.

RECOMMENDATION TO CLASSIFICATION COMMITTEE:  Until released, he
should be encouraged to gain further training as a machinist so
that he will be able to get a good job upon his release.

_____

BRUCE M. BAKEMAN, Ph.D.
Clinical Psychologist
Correctional Training Facility, Soledad



Certified via I.D., & Original Certificate RICHARDS E. 00575 &D Sup

# Certificate of Completion

Awarded to :-

## Daniel Richards

On this 23 day of February 2006 for faithfully completing the "Healing For The Angry Heart" video version.

# ANGER MANAGEMENT

He has acquired the skills through practical biblical insights to deal with heart issues, discovered the secret to being heard, learned to release guilt, trust again and break habit cycles.

Judge C. Lindsey
Protestant Chaplain
CTF Triplex Facility

Richard Mireles
Education Deacon
CTF Central Chapel

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION
CDC-128 B (8-87)

NAME and NUMBER:    RICHARDS, D.    E00575    ED-008U

This inmate has completed Lisa Bevere's "Healing for the Angry Heart" video series. This series provides practical, biblical insights to help deal with the past and move forward in life. It does this by teaching how to deal with heart issues, discover the secret to being heard, release yourself of the guilt, learn to trust again, and break habit cycles. He is to be commended for his diligent efforts in completing this series and applying its concepts to his everyday life.

ORIG    : C-File
cc    : Chaplain
    : Inmate

Judge C. Lindsey
Protestant Chaplain
CTF-Soledad

DATE: February 23, 2006    LAUDATORY CHRONO    INFORMATIONAL CHRONO

here 4-25-05    I.D.

| NAME AND NUMBER: | RICHARDS, DANIEL E-00575 | CTF-C-ED-8UW-325U | CDC-128-C |

Inmate **RICHARDS, DANIEL E-00575** has completed the requirements for a self-help chrono. There are few opportunities at CTF for self-help. However, some inmates are willing to read self-help books and write reports on what they learned from each.

This exercise is designed to illustrate the inmate's understanding of the concepts and test his motivation for positive change. Inmate **RICHARDS, DANIEL E-00575** should be commended for his effort.

Orig: ?? File?
cc: Inmate
Medical File
MH File
CCI

**M. GLEASON, Ph.D.**
Staff Psychologist
Correctional Training Facility-Soledad

Date: March 28, 2005   **RICHARDS, DANIEL E-00575 SELF-HEL**   MEDICAL-**PSYCHIATRIC**-DENTAL

CDC-128-B (Rev. 4/74)

Inmate RICHARDS is commended for his participation in **two (2)** hours of Video Instruction / Discussion related to community re-entry. In an effort to update current **Inmate Employability Program** information, he has voluntarily engaged himself in positive dialogue relating to the following issues: acceptance, responsibility, family support, relationships, addiction, support groups, realistic goals, preparation, employment, and change. Additionally, Inmate RICHARDS has received any current information related to employment and his county of commitment.

**CHARLIE D. WALKER**
Superintendent I / I.E.P. Coordinator
Prison Industry Authority
CTF-Soledad

DATE **NOVEMBER 5, 2004**          **LAUDATORY CHRONO**          GENERAL CHRONO

---

**NAME** and **NUMBER**  RICHARDS, DANIEL, E00575          **Housing**  ED-008U          CDC-128B (Rev. 4/74)

Inmate RICHARDS has voluntarily participated in three (3) hours of **Inmate Employability Program** video review and dialogue of issues related to Anger Management. These issues include, but are not limited to: violent thinking vs. nonviolent thinking, reducing emotional levels of anger, and identifying the fears that drive anger. Understanding how the "continuum of fear" can lead to violence, and ultimately involvement in the Criminal Justice System. In this video, Carl Reddick, Instructor on Cognitive Programming at the Oregon Police Academy, impresses on participants, strategies to help understand that "anger is an emotion, not a behavior." These strategies, which include evaluating your own belief system, identifying the fears that drive your emotions, determining your place in the world, being personally accountable for your actions, beliefs and behaviors, and owning your own problems, have proven to be corner stones of building productive citizens in society. With these strategies, it is my opinion that inmate RICHARDS is now capable of understanding anger. He is commended for his efforts to become a productive citizen.

Orig:  Central File
cc:   Personnel File
       Inmate
**DATE** April 5, 2006

**Anger Management**
**Inmate Employability Program**
**Laudatory**

Charlie D. Walker
Superintendent I/IEP Coordinator
Prison Industry Authority - CTF
**GENERAL CHRONO**

---

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS
CDC-128 B (8-87)

**NAME AND NUMBER:**          **RICHARDS, D.**          **E-00575**          **WA-349U**

Inmate RICHARDS, D. has successfully completed the FALL session of the 14-week, *Impact Self Help Program* which allows its participants to gain insight and empathy into the impact of crime on its victims. The Impact program i a voluntary self-help program, which covers several aspects of criminal behavior. Outside guest speakers ar afforded the opportunity to share how crime has impacted their lives. Inmate RICHARDS, D. is commended for his participation and willingness to gain insight and empathy for the victims of crime.

Dist.:
Orig.: C-File
cc:   CCI
       Inmate

L. Hunter, Correctional Counselor I, Program Sponsor
CTF-North Facility

DATE:    **June 4, 2003**          **INFORMATIVE CHRONO**

NAME AND NUMBER:    RICHARDS    E-00575    SA-352    CTF-N CDC-128-C

<u>INDIVIDUAL THERAPY AS REQUESTED PER BOARD OF PRISON TERMS</u>

This inmate has completed a course of individual therapy. During the course of this therapy, his understanding of his commitment offense was explored, as well as the factors which led up to it. Programs completed and other evidence of his efforts to change were discussed, and he detailed his future plans and goals. As a result of this therapy and his increasing self-understanding, his violence and recidivism potentials should be less than for the average inmate.

Orig:  C-file
Copy:  Assign. Lt.
       CCI
       Inmate            STEVEN J. TERRINI, Ph.D.
       Psych file        Staff Psychologist, CTF-Soledad
       Chrono file

DATE: 2/18/98        RICHARDS        E-00575        rr    MEDICAL-PSYCHIATRIC-DENTAL

---

NAME AND NUMBER: RICHARDS        E-00575        SA-352L    CTF-N    CDC-128-C

<u>COMPLETION OF PARTICIPATION IN THE "LIFESKILLS" PROGRAM:</u>

This inmate was an active and successful participant in the Lifeskills Group. This group met one hour per week for ten weeks. Its purpose was to encourage better impulse control and more effective living. Topics discussed included life goals, building self-esteem, improving problem-solving skills, and re-entry: making a successful return to society.

Orig:  C-file
Copy:  Unit PA/CCI
       Inmate            STEVEN J. TERRINI, Ph.D.
       Psych file        Staff Psychologist, CTF-Soledad
       Chrono file

DATE: 06/10/99        RICHARDS        E-00575        rr    MEDICAL-PSYCHIATRIC-DENTAL

---

NAME and NUMBER   RICHARDS, DANIEL, E00575        Housing   ED-008U    CDC-128B (Rev. 4/74)

Inmate RICHARDS has successfully completed the third phase of our **Inmate Employability Program**, "Finding Employment: The First Step for the Ex-Offender to Making it on the Outside." In addition to reviewing issues related to "Reengaging in Society" and "The Four Phases of Community Reentry," he has now received instructions on job searching while incarcerated, interview tips, networking to find employment, and accessing community resources related to finding employment. With employment being a prerequisite for parole, it is paramount for ex-offenders to have the ability to effectively access employment resources. With the completion of this phase of our program, inmate RICHARDS's chance of finding gainful employment upon release is excellent. He is commended for his diligence and participation in our **Inmate Employability Program.**

Orig:  Central File          Finding Employment          Charlie D. Walker
c:     Personnel File        Inmate Employability Program    Superintendent I/IEP Coordinator

NAME AND NUMBER:    RICHARDS, DANIEL  E-00575         CTF-C-ED-8U~~~~~~~    CDC-
128-C


Inmate **RICHARDS, DANIEL  E-00575** has completed the requirements for a self-help chrono.  There are few opportunities at CTF for self-help.  However, some inmates are willing to read self-help books and write reports on what they learned from each.

This exercise is designed to illustrate the inmate's understanding of the concepts and test his motivation for positive change.  Inmate **RICHARDS, DANIEL  E-00575** should be commended for his effort.

Orig:  C-File
  cc:  Inmate
       Medical File                **M. GLEASON, Ph.D.**
       MH File                     Staff Psychologist
       CCI                         Correctional Training Facility-Soledad


**Date:**  March 28, 2005  **RICHARDS, DANIEL  E-00575  SELF-HEL**    MEDICAL-PSYCHIATRIC-DENTAL

STATE OF CALIFORNIA

DEPARTMENT OF CORRECTIONS AND REHABILITATION

CDC-128 B (6-87)

NAME and NUMBER:   **RICHARDS, D.**   **E00575**   **ED-008U**

This inmate has completed Lisa Bevere's "Healing for the Angry Heart" video series.  This series provides practical, biblical insights to help deal with the past and move forward in life.  It does this by teaching how to deal with heart issues, discover the secret to being heard, release yourself of the guilt, learn to trust again, and break habit cycles.  He is to be commended for his diligent efforts in completing this series and applying its concepts to his everyday life.

ORIG : C-File
cc : Chaplain
: Inmate

**Judge C. Lindsey**
Protestant Chaplain
CTF-Soledad

**DATE: February 23, 2006**     **LAUDATORY CHRONO**     **INFORMATIONAL CHRONO**

**NAME**  RICHARDS, D     **NUMBER** E00575     **CELL** ED-008U   **CDCR-128B**

Inmate RICHARDS, D E00575 has successfully completed a course in the cause, prevention, treatment and management of Hepatitis.

**Original:**  Central File
**cc:**  IPEP File
   Inmate

Peer Education Coordinator

C-4879
**GENERAL CHRONO**

**DATE: 4/28/06**

NAME and NUMBER  RICHARDS, D.     E-00575     F2-9-232-U          CDC-128-C  Rev. 4/74

nmate ___ RICHARDS, D. ___, completed (8)-weeks "24-hours" BREAKING BARRIERS PROGRAM on __ JULY 1, __ 19_92_. Inmate __ RICHARDS ___ took an active part in the program and is participation should be duly noted. Inmate __ RICHARDS ___ has shown an under-tanding of the basic ideas of Breaking Barriers and was both cooperative and supportive f his class-members.

rig: C-File
cc: CCI Bldg # 9
   Staff Sponsor
   Inmate

Program Coordinator
P. BINES, CCI

TE  JUNE 29, 1992     Laudatory   R.J.D.C.F.          GENERAL CHRONO

State of California

## State Board of Education

# Diploma of Graduation

Be It Known That

**DANIEL A. RICHARDS**

has satisfactorily completed a High School course of study established by the State Board of Education under the authority of the Education Code of California, and is hereby awarded this Diploma.

GIVEN AT SACRAMENTO, CALIFORNIA, THIS

13th _day of_ December

Nineteen hundred Ninety-Five

_Delaine Eastin_
Secretary and Executive Officer, State Board of Education



# Inmate Peer Education Program

This is to certify that

**D. RICHARDS**

has successfully completed a
course of instruction in

**Hepatitis**

an "Infectious Disease." Date: ___ **4/28/06**

Inmate Peer Education Program Coordinator
Correctional Training Facility

Certificate Number

**C-4879**



california **prison industry authority**

State of California · Department of Corrections

DATE: August 1, 2003

TO: California State Board of Prison Terms

FROM: Prison Industry Authority, CTF-Soledad

SUBJECT: <u>FORMER P.I.A. WORKER VERIFICATION CARD</u>

We would like to inform the Panel that upon receiving an established parole date and being ready to parole, Inmate RICHARDS will receive a Former P.I.A. Worker Card (yellow in color) indicating the following:

PAROLEE'S NAME: DANIEL RICHARDS

TO: PAROLE AGENT

Be advised that this Inmate has a work history with the **Prison Industry Authority (P.I.A.)** where he learned specific job skills and developed valuable work habits in a business-like production setting.

Please ensure that this parolee is given <u>PRIORITY</u> in any job placement efforts by referring him to one of the following programs which may be available in your jurisdiction:

* Jobs Plus

* Offender Employment Continuum

* Employment Development Dept. (EDD)

### WORK EXPERIENCE EVALUATION FORM

This parolee should have a copy of his most recent P.I.A. Work Experience Evaluation which was given to him upon release. If you need to validate this work information or need an additional copy of this form, please contact the P.I.A. Inmate Employment Program Coordinator at: 1-877-276-7290

A. D. CARON                CTF-SOLEDAD
P.I.A. Administrator/Manager     Prison

CHARLIE D. WALKER
Superintendent I / I.E.P. Coordinator
Prison Industry Authority
CTF-Soledad

EDUCATION DEPARTMENT
CTF NORTH
Post Office Box 705
Soledad, CA 93960-0705

December 4, 1998

BOARD OF PRISON TERMS
STATE OF CALIFORNIA
#428 "J" Street
Sacramento, CA 95814

        RE:  Daniel Richards (E00575) Parole

    Mr Richards was a student in our ABE school program for approximately three years. During this period he demonstrated his diligence and ability by achieving his High School diploma.

    Mr. Richards then spent approximately three years in vocational training at the print shop, where he learned offset printing, plate making, and various other aspects of the print and duplication trade. He earned his certification in that vocation.

    Since successfully completing those two areas of achievement, Mr. Richards recently returned to education as one of my assistants. In this capacity is able to apply some of the knowledge he acquired while in education and vocations. He not only provides assistance to other students in their assignments, but serves as a roll model for others demonstrating that inmates can change their life and impact their future.

    Mr. Richards is a man who is thoughtful, works well with people, and should be an asset to his community upon his release.

    If you have further questions, please contact me.

Very sincerely yours;

Andy Hsia-Coron
Academic Instructor
ABE-III Program
(408) 678-3951 Ext. 4182

AHC:bmb

# Valley Adult School

AWARDS A

## Certificate Of Completion

IN

Vocational Printing & Graphics

TO

Danny Richards

PRESENTED ON THE 8TH DAY OF November 1998.     CERTIFICATE NUMBER: _WF-102_

INSTRUCTOR: _____
M. Sue Wheeler-Farber

_____
Supervisor Of Vocational Instruction
E. R. Parham

_____
Supervisor Of Education
Dr. R.L. Hedlund

# Certificate of Completion

Awarded to

*Daniel Richards*

E00575

Who has successfully completed 14 weeks in

# The Impact Program

and

is hereby commended for his endeavor to increase his awareness
and empathy for the survivors of crime.

Presented this **April 7, 2003** in the city of Soledad,
County of Monterey, California

L. HUNTER, CCI
SPONSOR

# WOMEN'S CRISIS CENTER

Post Office Box 1805, Salinas, California 93902
(408) 757-1002 • Fax (408) 757-1381

February 27, 1997

**President**
Teresa Cuellar

**Vice President**
Joe Gunter

**Treasurer**
Teri Kovara Belli

**Secretary**
Liz McKinney

**Board Members**
Gloria De La Rosa
Paul Dunham
Angel Garcia, Jr.
Patty Hanson
Norman G. Hicks
Jane Mendoza
Marlene Sexton
Terry Spitz

**Executive Director**
Nancy Welsh

Mr. Richards, E00575
Correctional Training Facility
P.O. Box 686
Soledad, CA 93960-0686

Dear Mr. Richards:

On behalf of the Women's Crisis Center Board of Directors, staff and clients,
we would like to thank you for your generous donations.

We had a successful Holiday givaway to families in need. We hosted
approximately 150 families at our party this year and gave presents to 254
kids! One mother is quoted, "Thank you so much for the wonderful things
you did for my family during the Christmas season. You've made it brighter
for us and we hope all of you have a great New Year." We could not
accomplish all this without you.

Thank you for your support in the 1995 and 1996 holiday season and we hope
that you will continue to support the Women's Crisis Center and our mission
to create a violence-free community!

Thank you for your support!

Sincerely,

Nancy Welsh

Nancy Welsh
Executive Director


rrm/NW



**United Way**
of the Salinas Valley

# Certificate of Completion

Awarded to:

## Daniel Richards

On this 23rd day of February 2006 for faithfully completing the "Healing For The Angry Heart" video series in:

# ANGER MANAGEMENT

He has acquired the skills through practical biblical insights to deal with heart issues, discovered the secret to being heard, learned to release guilt, trust again and break habit cycles.



Richard Mireles
Education Deacon
CTF Central Chapel

Judge Q. Linssey
Protestant Chaplain
CTF Triplex Facility



Correctional Training Facility

Certificate of Participation

This Certificate of Participation is Hereby Awarded to

*RICHARDS, D*

For Outstanding Participation in the 2005 Saturday Softball League.

B. HENARES
Recreation Supervisor



# SHARE A BEAR

## O. Richards

This certificate is to thank you for your monetary contribution to the Third Annual Correctional Training Facility *"Share a Bear"* Teddy Bear Drive.

Your generous contribution has warmed the hearts of many needy children in our community.



P. SKINNER, SERGEANT
"Share A Bear" Coordinator
Correctional Training Facility



J. SOLIS
Warden
Correctional Training Facility

# Certificate of Training

This document certifies that

Daniel Richards

has successfully completed

# BREAKING THE BARRIERS

Education featuring Gordon Graham of the Pacific Institute, Inc.

Issued this 1st day of July 1992

Program Coordinator

Facilitator

The Pacific Institute

# PROJECT CHANGE

## Diploma of Graduation

### Be It Known That

*D. Richards*

has satisfactorily completed a 44 week course in Anger Management and is hereby awarded this certificate

Given at Soledad, CA this __20th__ day of __June__, Two Thousand __03__

— J. Stenner
Sponsor
Ser. No. 0218

— J. Selvidge, CCII
Coordinator

NAME and NUMBER     I/m Richards,   CDC No. E-00575                     CDC-128-B [Rev.:

I/m Richards, CDC No. E-00575, has voluntarily participated in the Project C.H.A.N.G.E. program. Project C.H.A.N.G.E. is an in-depth program that provides inmates with the tools to learn to live successfully within a community setting. I/m Richards was an active participant and has completed all of his assignments in a timely fashion. He has completed a 44 week course of study which includes: self-esteem & assertiveness, goal setting, anger management, coping skills, stress reduction, tolerance, parenting, domestic violence, life skills, and parole & release. I/m Richards is to be commended for using his spare time to better himself and has received a certificate of completion for this course.

Orig:  C-File
  cc:  Writer                  J. Stenner, Sponsor
       File                    CTF North Library
       Inmate                  CTF North Facility

DATE   June 20, 2003          (LAUDATORY - PROJECT C.H.A.N.G.E)        GENERAL CHRONC

# Certificate of Proficiency

Industry: Furniture

This is to certify that

## D Richards

Has achieved proficiency
in the following occupational category

Institution: Correctional Training Facility

CDC#: E-00575

| Job Title/Specialty | D.O.T. No.* | No. of Hours |
|---|---|---|
| Cut-Off-Saw Operator (Wood) | 667.682-022 | 1,500 + |

* US Department of Labor, Dictionary of Occupational Titles

Supervisor

Date 07/21/06

General Manager (A), Prison Industry Authority

PIA

CALIFORNIA REPUBLIC

Proudly made in California
www.pia.ca.gov

CODE: **667.682-022**
TITLE(s): **CUT–OFF–SAW OPERATOR I (woodworking) alternate titles: cross-cut-saw operator; trimmer**

operator Operates one or more single- or multiple-blade circular saws to cut wood and wood products to specified lengths: Adjusts and secures ends and backstops on saw table, using wrench, or bolts saws to shaft and turns handwheels to space saws and stops, according to specified length of stock. Starts saw and places material to be cut on conveyor belt, drums, or feed chain that feeds stock into saws, or positions workpiece against end stop and under saw, synchronizing action with automatically descending blade, or pushes material on table and cuts wood, depending on type saw, utilizing one of following methods: (1) Pulls lever to swing saw through material. (2) Pushes moveable table past saw. (3) Depresses treadle to raise saw through slot in machine table. (4) Tilts table for angle cut and presses pedal to move saw through workpiece to cut stock. Replaces dull or damaged saw blades and lubricates machine, using wrench and grease gun. May examine material prior to cutting to determine what cuts will remove defects and produce maximum footage. May verify dimensions of stock cut and accuracy of cuts, using rule and square. May be designated according to type of saw used as Double-Cut-Off-Saw Operator (woodworking); Drum-Saw Operator (saw. & plan.); Swinging-Cut-Off-Saw Operator (woodworking); Table-Cut-Off-Saw Operator (woodworking); Tilting-Saw Operator (woodworking); Treadle-Cut-Off-Saw Operator (woodworking). May be designated: Equalizing-Saw Operator (woodworking); Multiple-Cut-Off-Saw Operator (millwork-plywood; wood. container); Timber Cutter (mine & quarry).

Exhibit "D"

FIZMM

## LIFE PRISONER EVALUATION REPORT
## SUBSEQUENT PAROLE CONSIDERATION HEARING
## DECEMBER 2005 CALENDAR

RICHARDS, DANIEL                                          E00575

### I.    COMMITMENT FACTORS:

A.    **Life Crime**: All relevant documents from the previous hearing including the transcripts have been considered and that information appears valid, and this writer has no further information to add.

　　1.    **Summary of Crime:** Remains the same as stated in the previous hearings.

　　2.    **Prisoner's Version:** Richards stated that his version remains the same as stated in the Probation Officer's Report.

　　3.    **Aggravating/Mitigating Circumstances:**

　　　　a.    **Aggravating Factors:** Remains the same as stated in the previous hearings.

　　　　b.    **Mitigating Factors:** Remains the same as stated in the previous hearings.

B.    **Multiple Crime(s):** N/A.

　　1.    **Summary of Crime:** N/A.

　　2.    **Prisoner's Version:** N/A.

### II.    PRECONVICTION FACTORS:

A.    **Juvenile Record:** Remains the same as stated in the previous hearings.

B.    **Adult Convictions and Arrests:** Documents from the previous hearings have been considered and that information remains valid.

C.    **Personal Factors:** Documents from the previous hearings have been considered and that information remains valid.

RICHARDS, DANIELS        E00575            CTF-SOLEDAD        DEC/2005

## III.    POSTCONVICTION FACTORS:

A.    **Special Programming/Accommodations:** None.

B.    **Custody History:** Documents from the previous hearings have been considered and that information remains valid. During the period of time since the last hearing, the prisoner has remained at Medium A custody and housed at CTF among the general population. He continues his assignment at the P.I.A. in Shop 4 as a Machine Operator.

C.    **Therapy and Self-Help Activities:** On 11/5/04, he participated in a two hour Video Instruction/Discussion relating to Community Entry. On 3/28/05, Richards completed the requirements for a self-help chrono by reading self-help books and writing reports on what he has learned.

D.    **Disciplinary History:** Richards remained disciplinary free during this review period. (See attached Disciplinary history Sheet).

E.    **Other:** Richards appeared before the BPT panel on 12/7/04 for his Subsequent Parole Consideration Hearing # 4. The BPT gave him a one year denial and made the following recommendations: Remain disciplinary free, Participate in self-help programs and earn positive chronos.

## IV.    FUTURE PLANS:

A.    **Residence:** Richards wishes to reside with his fiancé Maria Valdez. Her address is 303 North Rowan Avenue, Los Angeles, California 90063. Telephone number: (323) 262-6522. His alternative plans are to live with his grandmother who resides at 3713 East Michigan, Los Angeles, California 90062. Telephone number: (213) 264-5011.

B.    **Employment:** Richards plans to seek employment in the floor stripping, waxing and carpet care business. His parents Albert and Sarah own a business called "Albert and Friends". Telephone number: (818) 330-6005. Richards stated that he has other employment options such as: working in a restaurant called "Chalios" located at 3780, 1st Street, East Los Angeles, CA. 90063. In addition, he stated that Chalios is also located at 760 S. Atlantic Blvd, Los Angeles, CA 90022. Richards further stated that he would be able to seek employment, at "Chalia's Express Store", which is located at 3578 E. 1st Street, Los Angeles, California, 90063.

C.    **Assessment:** No unforeseeable problems at this time.

LIFE PRISONER EVALUATI_____ REPORT                                        3
SUBSEQUENT PAROLE CONSIDERATION HEARING
~~DECEMBER 2005 CALENDAR~~

VI.  **SUMMARY**:

A.  Prior to release the prisoner could benefit from: Remaining disciplinary free and continuing self-help programs when available.

B.  This report is based on an interview with the inmate on 8/1/05 lasting approximately one half hour and a complete review of his Central File lasting two hours.

C.  The prisoner was afforded an opportunity to examine his Central File per the Olson decision on 8/1/05, in which he declined.

D.  No accommodation was required per the Armstrong vs. Davis BPT Parole Proceedings Remedial Plan (ARP) for effective communication.

LIFE PRISONER EVALUAT,    REPORT
SUBSEQUENT PAROLE CONSIDERATION HEARING
DECEMBER 2005 CALENDAR

4

_____ 9/7/05
J. Palmer,                     Date
Correctional Counselor I


_____ 9/14/05
R. Leach,                      Date
Correctional Counselor II


_____ 9-14-05
R. Pope,                       Date
Facility Captain


_____ 9-20-05
D. S. Levorse,                 Date
Classification and Parole Representative

BOARD OF PRISON TERMS

STATE OF CALIFORNIA

LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

☐ DOCUMENTATION HEARING

☒ PAROLE CONSIDERATION HEARING

☐ PROGRESS HEARING

INSTRUCTIONS

TO CDC STAFF: DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT
TO BPT STAFF: FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY
ESTABLISHED, ie., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | |
|---|---|---|---|
| YEAR | BPT | PBR | REASONS |
| 10/04 to 8/05 (Present) | | | **PLACEMENT**: Richards remained at CTF and housed among the general population. **CUSTODY**: Medium A. **VOC. TRAINING**: None. **ACADEMICS**: None. **WORK RECORD**: Richards remained assigned to the PIA in Shop 4 as a Machine Operator. He received satisfactory to above average work grades for his performance per CDC 101's dated 4/1/04, 7/1/04, 8/1/04, 11/1/04 and 2/1/05. Supervisory comments: Richards continues to learn, and is a hard worker. He gets along well with others and completes his assigned tasks. |
| | | | **GROUP ACTIVITIES**: Richards received a CDC 128-B Laudatory chrono dated 11/5/04 for his participation in a 2 hour Video Instruction/Discussion relating to Community Entry. He completed the requirements for a self-help chrono dated 3/28/05, for reading self-help books and writing reports on what he has learned. **PSYCH. TREATMENT**: None. **PRISON BEHAVIOR**: Richards remained disciplinary free during this review period. **OTHER**: Richards voluntarily participated in the Project C.H.A.N.G.E. Program per CDC 128-B dated 6/20/03. He received a certificate for completing a 44-week course in Anger Management dated 6/2003. |

| CORRECTIONAL COUNSELOR'S SIGNATURE | | DATE 9/7/05 |
|---|---|---|
| RICHARDS, DANIEL | E00575 | CTF-SOLEDAD    DEC/2005 |

BPT 1004 (REV 7/86)

Page _1_

BOARD OF PRISON TERMS                                                                                    STATE OF CALIFORNIA
LIFE PRISONER: POSTCONVICTION PROGRESS REPORT

| ☐ | DOCUMENTATION HEARING |
| ☒ | PAROLE CONSIDERATION HEARING |
| ☐ | PROGRESS HEARING |

INSTRUCTIONS
TO CDC STAFF:  DOCUMENT EACH 12-MONTH PERIOD FROM THE DATE THE LIFE TERM STARTS TO PRESENT
TO BPT STAFF:  FOR EACH 12-MONTH INCREMENT APPLY THE GUIDELINES UNDER WHICH THE PAROLE DATE WAS ORIGINALLY
ESTABLISHED, i.e., 0-2 MONTHS FOR PBR AND 0-4 MONTHS FOR BPT. SEE BPT §§2290 - 2292, 2410 AND 2439.

| POSTCONVICTION CREDIT | | | |
| YEAR | BPT | PBR | REASONS |
|------|-----|-----|---------|
| 10/04 to 8/05 (Present) | | | **PLACEMENT**: Richards remained at CTF and housed among the general population. **CUSTODY**: Medium A. **VOC. TRAINING**: None. **ACADEMICS**: None. **WORK RECORD**: Richards remained assigned to the PIA in Shop 4 as a Machine Operator. He received satisfactory to above average work grades for his performance per CDC 101's dated 4/1/04, 7/1/04, 8/1/04, 11/1/04 and 2/1/05. Supervisory comments: Richards continues to learn, and is a hard worker. He gets along well with others and completes his assigned tasks. **GROUP ACTIVITIES**: Richards received a CDC 128-B Laudatory chrono dated 11/5/04 for his participation in a 2 hour Video Instruction/Discussion relating to Community Entry. He completed the requirements for a self-help chrono dated 3/28/05, for reading self-help books and writing reports on what he has learned. **PSYCH. TREATMENT**: None. **PRISON BEHAVIOR**: Richards remained disciplinary free during this review period. **OTHER**: Richards voluntarily participated in the Project C.H.A.N.G.E. Program per CDC 128-B dated 6/20/03. He received a certificate for completing a 44-week course in Anger Management dated 6/2003. |

| CORRECTIONAL COUNSELOR'S SIGNATURE | | DATE 9/7/05 |
| RICHARDS, DANIEL     E00575 | CTF-SOLEDAD | DEC/2005 |

## DISCIPLINARY SHEET

### CDC 128A's:

| | | |
|---|---|---|
| 02/08/89 | RJDCF | Absent from Academic Assign. |
| 02/15/89 | RJDCF | Absent from Academic Assign. |
| 02/22/89 | RJDCF | Absent from Academic Assign. |
| 05/06/89 | RJDCF | Absent from Academic Assign. |
| 06/13/89 | RJDCF | Verbal Warning (shower procedures). |
| 09/21/89 | RJDCF | Absent from his Assignment. |
| 03/14/90 | RJDCF | Absent from his Education Assignment. |
| 03/14/90 | RJDCF | Failed to Report to Work Assignment. |
| 08/11/90 | RJDCF | Reported Late to his Work Assignment. |
| 05/20/93 | CTF | Calls and Passes. |
| 07/20/95 | CTF | Possession of Another Inmate's Property. |

### CDC 115's:

| | | | |
|---|---|---|---|
| 05/17-05/18/83 | 3041 | RJDCF | Performance: Absent from Assignment. **Guilty:** Assessed 30 days loss of privileges. |
| 04/05/93 | 3041 | CTF-N | Refusal to Work. **Guilty:** Assessed 30 days loss of privileges. |
| 07/27/98 | 3041(b) | CTF-N | Making and Possession of Unauthorized Materials. **Guilty:** Assessed 30 days loss of red card privileges. |

Exhibit "E"

STATE OF CALIFORNIA
CALCULATION WORKSHEET
OBIS CREDIT CODE 32
CDC 1897M (04/00)

**Inmate copy**

DEPARTMENT OF CORRECTION

## CALCULATION WORKSHEET FOR INDETERMINATE PC SECTION 2931

This form is used to calculate the Minimum Eligible Parole Date (MEPD) for inmates serving indeterminate (ISL) terms eligible f
credit per Penal Code (PC) Section 2931. (Note: Inmates convicted of murder committed on/after June 3, 1998 are ineligible for credi
per PC Section 2933.2.) ISL PC Section 2931 terms are entered into the Offender Based Information System (OBIS) as a Credit Code 3.

| Section A - Original MEPD Calculation | | Section B - Participation Credit (PC) | | | |
|---|---|---|---|---|---|
| 1. Start Date | 11-7-88 | 1. CDC Conduct Credit (Section A, Line 11) | 1632 | | |
| 2. Plus Time Imposed | + 15 yrs. | 2. Divide Line B-1 by 4, equals Participation Credit | 408 | | |
| 3. Minus Pre/Postsentence Credit | = 11-7-03  579 | Any fractions over 0.5 are rounded up and fractions under 0.5 are rounded down. When the fraction is exactly 0.5, the PC is rounded down and the BC is rounded up per DOM Section 73030.8.10. | | | |
| 4. Minus Vested Credit (1/2 postsentence credit) | = 4-7-02  4  = 4-3-02 | Participation Credit Losses/Restorations | | | |
| | | Date of CDC 115 | Loss | Restored | Net Loss |
| 5. Plus Dead Time | + 0 | | | | |
| 6. Equals Maximum Eligible Parole Date | = 4-3-02 | | | | |
| 7. Minus Start Date (Line A-1) | 11-7-88 | 3. Net PC Losses (cannot exceed Line B-2): | | | |
| 8. Equals days to serve | = 4895 | Section C - Behavior Credit (BC) | | 408 | |
| 9. Minus Dead Time | - 0 | 1. Participation Credit (Section B, Line 2) | | | |
| 10. Equals Days Where Credit May Be Applied | = 4895 | 2. Multiply Line C-1 by 3, equals Behavior Credit | 1224 | | |
| 11. Equals CDC Conduct Credit (divide Line A-10 by 3, round up) | = 1632 | Behavior Credit Losses/Restorations | | | |
| | | Date of CDC 115 | Loss | Restored | Net Loss |
| 12. Maximum Eligible Parole Date (Line A-6) | 4-3-02 | | | | |
| 13. Minus CDC Conduct Credit (Line A-11) | - 1632 | | | | |
| 14. Equals Original MEPD | = 10-14-97 | 3. Net BC Losses (cannot exceed Line C-2): | | | |

| Section D: Calculating Adjusted MEPD | | | |
|---|---|---|---|
| Original MEPD (from Section A, Line 14) | | | |
| Plus Net PC and BC Losses (Line B-3 plus Line C-3) | + | | |
| Equals Adjusted MEPD (cannot exceed Maximum Eligible Parole Date) | = | | |

Maximum Eligible Parole Date (from Section A, Line 6)

| CALCULATED BY (Name and Title) | | DATE 1-28-2005 |
|---|---|---|
| INMATE'S NAME | CDC NUMBER E00575 | LOCATION CTF |

*Line B-2 plus Line C-2 must equal Line A-11/B-1.

Exhibit "F"

# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DEPT 100

| Date: 05/09/05 | | | |
|---|---|---|---|
| Honorable: DAVID S. WESLEY | Judge | G. ARMENTA | Deputy Clerk |
| NONE | Bailiff | NONE | Reporter |

(Parties and Counsel checked if present)

BH003232
IN RE
DANIEL RICHARDS,
PETITIONER,
ON HABEAS CORPUS

Counsel for Petitioner:  (NO APPEARANCES)

Counsel for Respondent:

Nature of Proceedings:       ORDER RE WRIT OF HABEAS CORPUS

The Court has read and considered the petition for a Writ of Habeas Corpus filed March 3, 2005.

Petitioner was convicted of second-degree murder and sentenced to a term of 15 years to life in state prison. (Petitioner's Exhibit A.)

There never was any promise by the Court that he would be released at any specific date. The sentence as imposed was for a minimum of 15 years and a maximum of life in prison. Petitioner is not prejudiced because the punishment for first-degree murder also calls for a maximum of life in prison. If petitioner had been found suitable for parole, he could have been released from prison sooner than one sentenced for first-degree murder.

Petitioner references to the matrix, a legislative enactment of suggested terms intended to serve as a starting point for the Board's consideration of an inmate's suitability for parole, is unavailing. (Cal. Code Regs., tit. 15, § 2400, et. seq.) The terms in the matrix are guidelines only (Cal. Code Regs., tit. 15, § 2401) and as indicated in § 2402, "regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel, the prisoner will pose an unreasonable risk of danger to society if released from prison."

Petitioner is not helped by *Apprendi v. New Jersey* (2000) 530 US 466, 491-493. Apprendi is not retroactive *(Murphy v. US* (2001) 268 F(3) 599, 601.)

The petition for relief is denied.

A copy of this minute order is mailed via United States Mail addressed as follows:

Daniel Richards (E-00575)
East Dorm 54-U
P.O. Box 689
Soledad, CA  93960-0689

| Minutes Entered |
|---|
| 05/09/05 |
| County Clerk |

Exhibit "G"

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

COURT OF APPEAL - SECOND DIST.

F I L E D

JUN 1 6 2005

JOSEPH A. LANE _____ Clerk

J. BELCHER _____ Deputy Clerk

|  |  |
|---|---|
| In re | B183460 |
| DANIEL RICHARDS | (Super. Ct. No. BH003232) |
| on | (David S. Wesley, Judge) |
| Habeas Corpus. | **O R D E R** |

THE COURT:

The court has read and considered the petition for writ of habeas corpus, filed June 6, 2005. The petition is denied. (*In re Dannenberg* (2005) 34 Cal.4th 1061, 1097-1098 [a life prisoner has no vested right in receiving less than the maximum sentence].)

_____     _____     _____
TURNER, P.J.         ARMSTRONG, J.         KRIEGLER, J.

Exhibit "H"

S135414

# IN THE SUPREME COURT OF CALIFORNIA

**En Banc**

---

In re DANIEL RICHARDS on Habeas Corpus

---

Petition for writ of habeas corpus is DENIED. (See *In re Dannenberg* (2005) 34 Cal.4th 1061, 1084, 1091.)

George, C.J., was absent and did not participate.

SUPREME COURT
**FILED**

MAR 2 2 2006

Frederick K. Ohlrich Clerk

DEPUTY

---

MORENO

Acting Chief Justice

# Exhibit "I"

HISTORY

1. Amendment of section title filed 10-27-77 as an emergency; effective upon filing. Certificate of Compliance included (Register 77, No. 44).

## § 2373.  Nonlife 1168 and ISL Prisoners: Parole Consideration Hearing Rights.

(a) Multijurisdiction Prisoners Located in California. At all hearings at which a prisoner is being considered for parole, all multijurisdiction prisoners located in California shall have the rights specified in Sections 2245–2255.

(b) Multijurisdiction Prisoners Located Outside California. At all hearings at which a prisoner is being considered for parole all multijurisdiction prisoners located outside California shall have the rights specified in Section 2367. The hearing shall be a telephone hearing.

(c) Record. The record of any parole consideration hearing shall be a tape recording. Until July 1, 1978, for all multijurisdiction ISL prisoners, the record shall be a written summary of the hearing prepared at the hearing by department staff. After July 1, 1978, the record shall be a tape recording.

HISTORY

1. Repealer of former Section 2373 and renumbering of Section 2374 to Section 2373 filed 6–11–79; effective thirtieth day thereafter (Register 79, No. 24). For history of former section, see Register 77, No. 44.

## Article 11.    Parole Consideration Criteria and Guidelines for Murders Committed on or After November 8, 1978, and Specified Attempted First Degree Murders Committed on or After January 1, 1987

### § 2400.  Scope of Article.

The criteria and guidelines in this article apply to prisoners sentenced to prison for first and second degree murders committed on or after November 8, 1978 and attempted first degree murders where the perpetrator is sentenced for life under the provisions of Penal Code Section 664, effective January 1, 1987. The guidelines in this article are based on the public's expressed intent in amending Penal Code Sections 190 and 664 that a person convicted of first or second degree murder or attempted first degree murder, as specified should be incarcerated for an extended period of time.

The prisoner's minimum eligible parole date is established by statute. The amount of good conduct credit that a prisoner sentenced for first or second degree murder may earn to reduce the minimum eligible parole date is established by statute. (Penal Code Sections 2930–2933.) Life prisoners convicted of attempted first degree murder do not earn these credits; their minimum eligible parole date will be established pursuant to Penal Code Section 3046. The Department of Corrections will determine the minimum eligible parole date. The length of time a prisoner must serve prior to actual release on parole is determined by the board. The amount of postconviction credit a prisoner may earn to reduce the length of time prior to release on parole is determined by the board. This article implements Penal Code Section 3041 and concerns only the board's exercise of discretion in determining whether a prisoner is suitable for parole and, if so, when the prisoner should be released on parole.

The standards for the Department's action in reducing the minimum eligible parole date and the standards for the board's decision whether to reduce the period of confinement are different. The Department's decisions under Penal Code Sections 2930–2933 do not affect the board's decision concerning postconviction credit under these rules.

A prisoner committed for first or second degree murder or attempted first degree murder or attempted first degree murder will have documentation hearings as provided in Section 2268. The prisoner will have documentation hearings as provided in Section 2269.1, but no specific amount of postconviction credit will be granted until the board has established a period of confinement.

Although many of the sections in this article are the same as the sections in Article 5, they are repeated in this article to avoid confusion between the rules applicable to prisoners who committed murders on or before November 7, 1978 and these rules which apply to prisoners committed murders on or after November 8, 1978, and those who committed attempted murder on or after January 1, 1987. The suitability criteria are the same for both groups. The guidelines for establishing the periods of confinement are different because of the change in the minimum term for first degree murder and the change from a determinate to an indeterminate term for second degree murder and attempted first degree murder. The provisions for adjusting the terms for other offenses are also different because of the change in Penal Code Section 669 which permits courts to impose sentences consecutive to life terms (Stats. 1978, 579, eff. 1/1/79).

As used in this article, "life prisoner(s)" refers only to persons committed to prison for first or second degree murders committed on or after November 8, 1978, or to persons committed to prison for life for attempted murders committed on or after January 1, 1987.

NOTE: Authority cited: Section 5076.2, Penal Code. Reference: Sections 664, 2930–2933, 3040, 3041, 3046 and 5076.1, Penal Code.

HISTORY

1. New Article 11 (Sections 2400–2411) filed 9–8–81; effective thirtieth thereafter (Register 81, No. 37).

2. Amendment filed 6–14–84; effective thirtieth day thereafter (Register 84, 24).

3. Amendment filed 11–13–85; effective thirtieth day thereafter (Register 85, 46).

4. Amendment filed 1–20–88; operative 2–19–88 (Register 88, No. 5).

### § 2401.  General.

A life prisoner shall be considered for parole for the first time at the initial parole consideration hearing scheduled as provided in Section 2268. A parole date shall be denied if the prisoner is found unsuitable for parole under Section 2402(c). A parole date shall be set if the prisoner found suitable for parole under Section 2402(d). A parole date set under this article shall be set in a manner that provides uniform terms for offenses of similar gravity and magnitude with respect to the threat to the public.

In setting the parole date the panel shall consider the Sentencing Rules for the Superior Courts. The panel shall also consider the criteria and guidelines set forth in this article for determining the suitability for parole and the setting of parole dates, considering the number of victims of the crime for which the prisoner was sentenced and any other circumstances in mitigation or aggravation.

The terms in this article are guidelines only. The suggested terms serve as the starting point for the board's consideration of each case on an individual basis. The board may establish a term above or below the guidelines when warranted and reasons are stated on the record. A prisoner shall not be released before the minimum eligible parole date.

NOTE: Authority cited: Section 5076.2, Penal Code. Reference: Sections 3040 and 3041, Penal Code.

HISTORY

1. Amendment filed 8–12–82; effective thirtieth day thereafter (Register 82, No. 33).

2. Amendment filed 11–13–85; effective thirtieth day thereafter (Register 85, No. 46).

### § 2402.  Determination of Suitability.

(a) General. The panel shall first determine whether the life prisoner is suitable for release on parole. Regardless of the length of time served, a life prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.

(b) Information Considered. All relevant, reliable information available to the panel shall be considered in determining suitability for parole. Such information shall include the circumstances of the prisoner's social history, past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before, during

ing and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release. Circumstances which taken alone may not firmly establish unsuitability for parole may contribute to a pattern which results in a finding of unsuitability.

(c) Circumstances Tending to Show Unsuitability. The following circumstances each tend to indicate unsuitability for release. These circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate unsuitability include:

(1) Commitment Offense. The prisoner committed the offense in an especially heinous, atrocious or cruel manner. The factors to be considered include:

(A) Multiple victims were attacked, injured or killed in the same or separate incidents.

(B) The offense was carried out in a dispassionate and calculated manner, such as an execution–style murder.

(C) The victim was abused, defiled or mutilated during or after the offense.

(D) The offense was carried out in a manner which demonstrates an exceptionally callous disregard for human suffering.

(E) The motive for the crime is inexplicable or very trivial in relation to the offense.

(2) Previous Record of Violence. The prisoner on previous occasions inflicted or attempted to inflict serious injury on a victim, particularly if the prisoner demonstrated serious assaultive behavior at an early age.

(3) Unstable Social History. The prisoner has a history of unstable or tumultuous relationships with others.

(4) Sadistic Sexual Offenses. The prisoner has previously sexually assaulted another in a manner calculated to inflict unusual pain or fear upon the victim.

(5) Psychological Factors. The prisoner has a lengthy history of severe mental problems related to the offense.

(6) Institutional Behavior. The prisoner has engaged in serious misconduct in prison or jail.

(d) Circumstances Tending to Show Suitability. The following circumstances each tend to show that the prisoner is suitable for release. The circumstances are set forth as general guidelines; the importance attached to any circumstance or combination of circumstances in a particular case is left to the judgment of the panel. Circumstances tending to indicate suitability include:

(1) No Juvenile Record. The prisoner does not have a record of assaulting others as a juvenile or committing crimes with a potential of personal harm to victims.

(2) Stable Social History. The prisoner has experienced reasonably stable relationships with others.

(3) Signs of Remorse. The prisoner performed acts which tend to indicate the presence of remorse, such as attempting to repair the damage, seeking help for or relieving suffering of the victim, or indicating that he understands the nature and magnitude of the offense.

(4) Motivation for Crime. The prisoner committed his crime as the result of significant stress in his life, especially if the stress has built over a long period of time.

(5) Lack of Criminal History. The prisoner lacks any significant history of violent crime.

(6) Age. The prisoner's present age reduces the probability of recidivism.

(7) Understanding and Plans for Future. The prisoner has made realistic plans for release or has developed marketable skills that can be put to use upon release.

(8) Institutional Behavior. Institutional activities indicate an enhanced ability to function within the law upon release.

NOTE: Authority cited: Section 5076.2, Penal Code. Reference: Section 3041, Penal Code.

## § 2403. Base Term.

(a) General: The panel shall set a base term for each life prisoner who is found suitable for parole. The base term shall be established solely on the gravity of the base crime, taking into account all of the circumstances of that crime. If the prisoner has been received in prison for more than one murder committed on or after November 8, 1978 the base crime is the most serious of the murders considering the facts and circumstances of the crime. If the prisoner has been sentenced to prison for murders committed before November 8, 1978 and for murders committed on or after November 8, 1978 the base offense shall be the most serious of the murders committed on or after November 8, 1978.

The base term shall be established by utilizing the appropriate matrix of base terms provided in this section. The panel shall determine the category most closely related to the circumstances of the crime. The panel shall impose the middle base term reflected in the matrix unless the panel finds circumstances in aggravation or mitigation.

Provided, however in cases of attempted murder, after determining the category as specified, the panel shall impose one–half the middle base term, unless the panel finds circumstances in aggravation or mitigation.

If the panel finds circumstances in aggravation or in mitigation as provided in Sections 2404 or 2405, the panel may impose the upper or lower base term provided in the matrix by stating the specific reason for imposing such a term. A base term other than the upper, middle or lower base term provided in the matrix may be imposed by the panel if justified by the particular facts of the individual case and if the facts supporting the term imposed are stated.

(b) Matrix of Base Terms for First Degree on or after November 8, 1978.

CIRCUMSTANCES

| FIRST DEGREE MURDER Penal Code § 190 (6 years and does not include past conviction credit as provided in § 2290) | A. Indirect Victim died of causes related to the act of the prisoner but was not directly assaulted by prisoner with deadly force; e.g. shock producing heart attack; a crime partner actually did the killing. | B. Direct or Victim Contribution Death was almost immediate or resulted at least partially from contributing factors from the victim; e.g. victim initiated struggle or had goaded the prisoner. This does not include victim acting in defense of self or property. | C. Severe Trauma Death resulted from severe trauma inflicted with deadly intensity; e.g. beating, clubbing, stabbing, strangulation, suffocation, burning, multiple wounds not resulting in immediate death or actions calculated to induce terror in the victim. | D. Torture Victim was subjected to the prolonged infliction of physical pain through the use of nonlethal injury prior to act resulting in death |
|---|---|---|---|---|
| I. Participating Victim Victim was accomplice or otherwise implicated in a criminal act with the prisoner during which or as a result of which the death occurred, e.g., crime partner, drug dealer, etc. | 25–26–27 | 26–27–28 | 27–28–29 | 28–29–30 |
| II. Prior Relationship Victim was involved in a personal relationship with prisoner (spouse, family member, friend, etc.) which contributed to the motivation for the act resulting in death. If victim had a personal relationship but prisoner hired and/or paid a person to commit the offense, see Category IV. | 26–27–28 | 27–28–29 | 28–29–30 | 29–30–31 |
| III. No Prior Relationship Victim had little or no personal relationship with prisoner, or motivation for act resulting in death was related to the accomplishment of another crime; e.g. death of victim during robbery, rape, or other felony. | 27–28–29 | 28–29–30 | 29–30–31 | 30–31–32 |
| IV. Threat to Public Order or Murder for Hire The act relating to the victim's death constituted a threat to the public order (include the murder of a police officer, prison guard, public official, fellow patient or prisoner, any killing within an institution, or any killing where the prisoner hired and/or paid another person to commit the offense) | 28–29–30 | 29–30–31 | 30–31–32 | 31–32–33 |

SUGGESTED BASE TERM

(c) Matrix of Base Terms for Second Degree Murder on or after November 8, 1978.

CIRCUMSTANCES

| SECOND DEGREE MURDER Penal Code § 190 (6 years and does not include past conviction credit as provided in § 2290) | A. Indirect Victim died of causes related to the act of the prisoner but was not directly assaulted by prisoner with deadly force; e.g. shock producing heart attack; a crime partner actually did the killing. | B. Direct or Victim Contribution Death was almost immediate or resulted at least partially from contributing factors from the victim; e.g. victim initiated struggle or had goaded the prisoner. This does not include victim acting in defense of self or property. | C. Severe Trauma Death resulted from severe trauma inflicted with deadly intensity; e.g. beating, clubbing, stabbing, strangulation, suffocation, burning, multiple wounds inflicted with a weapon not resulting in immediate death or actions calculated to induce terror in the victim. |
|---|---|---|---|
| I. Participating Victim Victim was accomplice or otherwise implicated in a criminal act with the prisoner during which or as a result of which the death occurred, e.g. crime partner, drug dealer, etc. | 15–16–17 | 16–17–18 | 17–18–19 |
| II. Prior Relationship Victim was involved in a personal relationship with prisoner (spouse, family member, friend, etc.) which contributed to the motivation for the act resulting in death. If victim had a personal relationship but prisoner hired and/or paid a person to commit the offense, see Category IV. | 16–17–18 | 17–18–19 | 18–19–20 |
| III. No Prior Relationship Victim had little or no personal relationship with prisoner, or motivation for act resulting in death was related to the accomplishment of another crime; e.g. death of victim during robbery, rape, or other felony. | 17–18–19 | 18–19–20 | 19–20–21 |

SUGGESTED BASE TERM

NOTE: Authority cited: Section 5076.2, Penal Code. Reference: Sections 3040 and 3041, Penal Code.

HISTORY

1. Editorial correction filed 10–8–81; effective thirtieth day thereafter (Register 81, No. 41).

2. Amendment of subsection (a) filed 1–20–88; operative 2–19–88 (Register 88, No. 5).

§ 2404.  Circumstances in Aggravation of the Base Term.

(a) General. The panel may impose the upper base term or another term longer than the middle base term upon a finding of aggravating circumstances. Circumstances in aggravation of the base term include:

(1) The crime involved some factors described in the appropriate matrix in a category higher on either axis than the categories chosen as most closely related to the crime;

(2) The victim was particularly vulnerable;

(3) The prisoner had a special relationship of confidence and trust with the victim, such as that of employee-employer;

(4) The murder was committed to preclude testimony of potential or actual witnesses during a trial or criminal investigation;

(5) The victim was intentionally killed because of his race, color, religion, nationality or country or origin;

(6) During the commission of the crime the prisoner had a clear opportunity to cease but instead continued;

(7) The manner in which the crime was committed created a potential for serious injury to persons other than the victim of the crime;

(8) The murder was wanton and apparently senseless in that it was committed after another crime occurred and served no purpose in completing that crime;

(9) The corpse was abused, mutilated or defiled;

(10) The prisoner went to great lengths to hide the body or to avoid detection;

(11) The murder was committed to prevent discovery of another crime;

(12) The murder was committed by a destructive device or explosives;

(13) There were multiple victims for which the term is not being enhanced under Section 2407;

(14) The prisoner intentionally killed the victim by the administration of poison;

(15) The prisoner intentionally killed the victim by lying in wait;

(16) The prisoner occupied a position of leadership or dominance over other participants in the commission of the crime, or the prisoner induced others to participate in the commission of the crime;

(17) The prisoner has a history of criminal behavior for which the term is not being enhanced under Section 2407;

(18) The prisoner has engaged in other reliably documented criminal conduct which was an integral part of the crime for which the prisoner is currently committed to prison;

(19) The prisoner was on probation or parole or was in custody or had escaped from custody at the time the crime was committed;

(20) Any other circumstances in aggravation including those listed in the Sentencing Rules for the Superior Courts.

NOTE: Authority cited: Section 5076.2, Penal Code. Reference: Sections 3040 and 3041 Penal Code.

§ 2405.   Circumstances in Mitigation of the Base Term.

(a) General. The panel shall impose the lower base term or another term shorter than the middle base term upon a finding of mitigating circumstances. Circumstances in mitigation of the base term include:

(1) The crime involved some factors described in the appropriate matrix in a category lower on either axis than the categories chosen as most closely related to the crime;

(2) The prisoner participated in the crime under partially excusable circumstances which do not amount to a legal defense;

(3) The prisoner had no apparent predisposition to commit the crime but was induced by others to participate in its commission;

(4) The prisoner tried to help the victim or sought aid after the commission of the crime or tried to dissuade a crime partner from committing other offenses;

(5) The prisoner was a passive participant or played a minor role in the commission of the crime;

(6) The crime was committed during or due to an unusual situation unlikely to reoccur;

(7) The crime was committed during a brief period of extreme mental or emotional trauma;

(8) The prisoner has a minimal or no history of criminal behavior;

(9) Any specific factors in mitigation, including those listed in the Sentencing Rules for Superior Courts.

NOTE: Authority cited: Section 5076.2, Penal Code. Reference: Sections 3040 and 3041, Penal Code.

§ 2406.   Adjustment for Weapons, Great Loss and Prior Prison Terms.

(a) General. Effective January 1, 1979, Penal Code Section 669 was amended to permit the court to impose enhancements under Penal Code Sections 12022, 12022.5, 12022.6 and 667.5 consecutive to a life sentence (Stats. 1978, Ch. 579). Since the court has discretion whether to impose or strike the punishment upon a finding that the prisoner used a deadly or dangerous weapon, was armed with a firearm, used a firearm, caused great loss or served prior prison terms, the board shall consider as false, the court's action in determining the adjustment under this section.

(b) Punishment Imposed by the Court. If the court imposed the consecutive punishment for the enhancement, the board shall not add an additional adjustment for using a deadly or dangerous weapon, being armed with a firearm, using a firearm, causing great loss in committing the murder, or having served a prior prison term.

(c) Punishment Stricken by Court. If the court struck the punishment upon a finding of circumstances in mitigation, the board shall consider any circumstances in mitigation. The board may add an adjustment for using a deadly or dangerous weapon, being armed with a firearm, using a firearm, causing great loss or having served a prior prison term. The suggested adjustment is one-half the punishment that was stricken by the court.

(d) No Allegation or Finding. If the board finds that the prisoner used a deadly or dangerous weapon, was armed with a firearm, used a firearm, caused great loss or served a prior prison term although that fact was not found to be true at the time of the prisoner's conviction, the board may add an adjustment based on that finding. The adjustment should be less than the adjustment suggested in subdivision (c) of this section.

In adding adjustments for prior prison terms under this subsection, the panel should consider the length of time between the prisoner's release from custody and commission of a new offense.

NOTE: Authority cited: Section 5076.2, Penal Code. Reference: Sections 669, 3040, 3041, 12022, 12022.5, 12022.6 and 12022.7, Penal Code.

§ 2407.   Adjustments for Other Offenses.

(a) General. Effective January 1, 1979 Penal Code Section 669 was amended to permit the court to impose sentences for other crimes to be served consecutively to a life sentence (Stats. 1978, Ch. 579). Since the court has discretion to order that the sentences for more than one crime be served consecutively, the board shall consider the court's action in determining the adjustment pursuant to this section.

(b) Multiple Convictions.

(1) General. The board shall not add adjustments for convictions for which the prisoner has been pardoned or which have been reversed by an appellate court.

(2) Consecutive Life Sentences Imposed by the Court. If the court imposed consecutive life sentences the board shall determine the base crime and base term as provided in Section 2403(a). The board shall add adjustments for the remaining life crimes. The adjustment for each remaining life crime shall be a period of time commensurate with the nature of the crime but no less than the period of parole ineligibility for the crime. In no case will the parole date for consecutive sentences be earlier than the parole date for concurrent sentences.

(3) Concurrent Life Sentences Imposed by the Court. If the court imposed concurrent life sentences, the board may add an adjustment because the prisoner has been convicted of more than one crime. The suggested adjustment is the greater of:

(A) Time served on the nonbase life crime prior to reception on the base offense; or

(B) The following adjustment:

1. First degree murder: 13 years for a first degree murder committed on or after November 8, 1978.

2. Second degree murder: 8 years for a second degree murder committed on or after November 8, 1978.

3. One-half the period of parole ineligibility for other life crimes.

(4) Consecutive Nonlife Sentences Imposed by the Court. If the court imposed consecutive nonlife sentences the Board shall not add additional adjustment for the nonlife crime.

(5) Concurrent Nonlife Sentences Imposed by the Court. If the court imposed concurrent nonlife sentences, the board may add an adjustment because the prisoner has been convicted of more than one crime. The suggested adjustment is the greater of:

(A) Time served for the nonlife crime prior to reception on the life offense; or

(B) One-half the determinate term imposed by the court; or

(C) One–half the term that would be established under Section 2271(c) for crimes which carry a sentence of one year and one day.

Note. Amendment cited: Section 5076.2, Penal Code. Reference: Sections 669, 1170, 3040 and 3041, Penal Code.

HISTORY

1. Amendment of subsection (h)(3)(B) filed 11–13–85; effective thirtieth day thereafter (Register 85, No. 46).

## § 2408.  Circumstances in Aggravation of the Adjustment for Other Crimes.

Circumstances which may justify imposition of an adjustment for another crime higher than that suggested in Section 2407 include:

(a) Pattern of Violence. A victim was seriously injured or killed in the course of the other crime, or there was a substantial likelihood of serious injury or death resulting from the acts of the prisoner.

(b) Numerous Crimes. The other crime was one of a series of crimes which occurred during a single period of time, showing a pattern of similar conduct resulting in convictions, but not resulting in adjustments under Section 2407.

(c) Crimes of Increasing Seriousness. The prisoner has committed multiple crimes which indicate a significant pattern of increasingly serious criminal conduct.

(d) Independent Criminal Activity. The other crime and its objective were independent of the base crime or the other crime was committed at a different time and place, indicating a significant pattern of criminal behavior rather than a single period of aberrant behavior.

(e) Status. The prisoner was on probation or parole or was in custody or had escaped from custody when the crime was committed.

(f) Vulnerability. The victim was particularly vulnerable.

(g) Other. The other crime included any other circumstances in aggravation including those listed in the Sentencing Rules for the Superior Courts.

Note. Authority cited: Section 5076.2, Penal Code. Reference: Sections 669, 1170, 3040 and 3041, Penal Code: Sentencing Rules for the Superior Courts.

## § 2409.  Circumstances in Mitigation of the Adjustment for Other Crimes.

Circumstances which may justify imposition of an adjustment for another crime lower than that suggested in Section 2407, or which may justify no adjustment, include:

(a) Successful Completion of Probation or Parole. The prisoner's performance on probation or parole for the other crime was good, and the prisoner was free of criminal convictions for a reasonable period of time following completion of probation or parole.

(b) Insignificant Prior Record. The other crime indicates an insignificant pattern of prior criminal behavior. For example, the other crime is unrelated to the principal offense in time, in the kind of criminal conduct involved, or in the apparent motivation or cause of the criminal conduct.

(c) Probation. The prisoner was granted probation after conviction of the other crime.

(d) Other. The other crime included any other circumstances in mitigation including those listed in the Sentencing Rules for the Superior Courts.

Note. Authority cited: Section 5076.2, Penal Code. Reference: Sections 669, 1170, 3040 and 3041, Penal Code: Sentencing Rules for the Superior Courts.

## § 2410.  Postconviction Credit.

(a) General. Life prisoners may earn postconviction credit for each year spent in state prison from the date the life term starts. Prior to the initial parole consideration hearing life prisoners shall have documentation hearings as provided in Section 2269.1. At the documentation hearings, the board shall document the prisoner's performance, participation, behavior and other conduct as specified in subsection (c) of this section. Credit shall not be granted or denied at these hearings. The documentation shall be used by the panel which establishes a parole date to determine how much, if any, credit should be granted for the years served prior to the establishment of the parole date. Once a parole date is established,

postconviction credit for time served since the last hearing shall be sidered at the progress hearings scheduled as provided in Section

The board shall consider each case individually in determining amount of credit. This section provides guidelines for granting cred a panel may grant more or less credit as appropriate.

(b) Amount of Credit. Postconviction credit shall be granted to prisoners in a manner which allows similar amounts of time to prise in similar circumstances. The suggested amount of postconviction c is zero to 4 months for each year served since the date the life term st: excluding any time during which service of the life term is tolled.

The board may grant more or less than 4 months annual postconvic credit when the prisoner's performance, participation or behavior rants such adjustment of credit. Less than 4 months credit may be gra if the prisoner fails to meet the general expectations set forth in Sec 2410(c). More than 4 months credit may be granted if the prisoner d onstrates exceptional performance in a work assignment, exceptic participation in self–help or rehabilitative programs or other exemp conduct. If the panel grants more than 4 months of postconviction cr for any year, the case shall be reviewed as provided in Secti 2041–2043.

(c) Criteria. In determining the amount of postconviction credit t granted, the panel shall consider the following:

(1) Performance in Institutional Work Assignments. All life prise are presumed to work and to perform satisfactorily in work assignme (see CDC Rules 3040 and 3041). Lack of a work assignment shall necessarily prevent the granting of postconviction credit. The panel sh consider the nature and availability of work assignments at the insti tion, the prisoner's custody status, and any other impediments to the p oner's receiving work assignment.

(2) Participation in Self–Help and Rehabilitative Programs. All l prisoners are presumed to participate in programs for self developme (refer to CDC Rules 3040 and 3041). Lack of program participation sh not necessarily prevent the granting postconviction credit. The pan shall consider the nature and availability of programs at the institutic the prisoner's custody status, and any other impediments to the prisone participation in programs.

(3) Behavior in the Institutional Setting. All life prisoners are pr sumed to behave in a disciplinary–free manner, in accordance with sta law and departmental regulations (refer to CDC Rules 3000–3021 However, a minor disciplinary offense shall not necessarily prevent t granting of postconviction credit.

(d) Credit Not Granted. No annual postconviction credit shall l granted in the case of any prisoner who commits serious or numerous i fractions of departmental regulations, violates any state law, or engage in other conduct which could result in rescission of a parole date (see So tion 2451).

Consistent unsatisfactory performance in work assignments, consi tent failure to engage in program participation, or consistent overall nega tive behavior demonstrated by numerous minor disciplinary reports ma; individually or cumulatively, justify the withholding of annual postcor viction credit which otherwise could have been granted.

(e) Change in Parole Date. Once postconviction credit is granted f particular year of imprisonment, the credit shall be applied to any nev term established after rescission or reconviction after a reversal.

Note. Authority cited: Section 5076.2, Penal Code. Reference: Sections 3040 an 3041, Penal Code. In re Stanley, 54 Cal.App.3d 1030 (1976).

## § 2411.  Fixing a Parole Date.

(a) Total Period of Confinement. The terms established for the base crime and any adjustments shall be added together resulting in a total pe riod of confinement. The total period of confinement shall be reduced by any postconviction credit granted under Section 2410. This results in the adjusted period of confinement.

(b) Period of Prison Confinement. Any preprison credit shall be de ducted from the total period of confinement as provided in Section 2341–2343. This results in the total period of prison confinement. The to

tal period of prison confinement shall be reduced by any postconviction credit granted under Section 2410. This results in the adjusted period of prison confinement.

(c) Release Date. The adjusted period of prison confinement and any time at large shall be added to the date the life term starts. This results in the parole date. For purposes of determining the parole date, the life terms starts on:

(1) Consecutive Life Sentences. The date the prisoner was received under Penal Code Section 2900 or 1203.2a for the earliest life sentence if the prisoner is sentenced to prison with consecutive life sentences.

(2) Concurrent Life Sentences. The date the prisoner was received under Penal Code Section 2900 or 1203.2a for the earliest life sentence used in calculating the parole date if the prisoner is sentenced to prison with concurrent life sentences.

(3) Consecutive Nonlife Sentences for Crimes or Enhancements. The date the prisoner completed serving the nonlife sentence or the sentence for the consecutive enhancement under Penal Code Section 669 if the prisoner is sentenced to prison with nonlife sentences which are consecutive to life sentence or with court imposed consecutive enhancements.

(4) Concurrent Nonlife Sentences. The date the prisoner was received for the life crime under Penal Code Section 2900 or 1203.2a, if the prisoner is sentenced to prison with nonlife sentences which are concurrent to the life sentences. If the panel added any adjustments for the nonlife crimes and the prisoner was received for those crimes prior to the date he was received for the life crime, the time served for those nonlife crimes prior to the date the life term starts shall be deducted from the adjustment for the nonlife crime.

NOTE: Authority cited: Section 5076.2, Penal Code. Reference: Sections 669, 1203.2a and 2900, Penal Code.

HISTORY

1. Amendment of subsection (b) filed 11-13-85; effective thirtieth day thereafter (Register 85, No. 46).

# Article 12. Parole Consideration Criteria and Guidelines for Habitual Offenders Sentenced to Life Terms under Penal Code Section 667.7

## § 2420. Scope of Article.

The criteria and guidelines in this article shall apply to prisoners sentenced to a term of 20 years to life as habitual offenders under Penal Code Section 667.7 for crimes committed on or after January 1, 1982. The guidelines in this article shall be construed to be based on the public's expressed intent in adding Section 667.7 to the Penal Code that a person convicted of a felony in which the person inflicts great bodily injury or who personally uses force likely to produce great bodily injury, and who has served two or more prior prison terms for specified crimes should be incarcerated for an extended period of time.

The general statement in Section 2400 regarding the differences between the minimum eligible parole date and the parole release date shall be complied with as if incorporated herein.

A prisoner committed as a habitual offender shall have his initial parole consideration hearing in the thirteenth month prior to the minimum eligible parole date. The prisoner shall have documentation hearings as provided in Section 2269.1, but no specific amount of postconviction credit shall be granted until the board has established a period of confinement.

NOTE: Authority cited: Section 5076.2, Penal Code. Reference: Sections 667.7, 2930-2933, 3040 and 3041, Penal Code.

HISTORY

1. New Article 12 (Sections 2420-2429.1) filed 6-14-84; effective thirtieth day thereafter (Register 84, No. 24).

## § 2421. General.

A habitual offender shall be considered for parole for the first time at the initial parole consideration hearing. A parole date shall be denied if

the prisoner is found unsuitable for parole under Section 2422(c). A parole date shall be set if the prisoner is found suitable for parole under Section 2422(d). A parole date set under this article shall be set in a manner that provides uniform terms for offenses of similar gravity and magnitude with respect to the threat to the public.

In setting the parole date the panel shall consider the Sentencing Rules for the Superior Courts. The panel shall also consider the criteria and guidelines set forth in this article for determining suitability for parole and the setting of parole dates, the circumstances of the crimes for which the prisoner was sentenced, and any circumstances in aggravation or mitigation.

In setting the base period of confinement, the panel shall consider the circumstances of the current and prior offenses resulting in the conviction as a habitual offender, including the number of prior prison terms for specified crimes and the extent of injury to the victim of the current offense. The panel may then make adjustments to the base period of confinement for other factors.

The circumstances tending to show suitability and unsuitability, and the circumstances in aggravation and mitigation contained in this article shall be construed as guidelines only. The panel may make findings outside the guidelines when warranted in the individual case and reasons are stated on the record.

NOTE: Authority cited: Section 5076.2, Penal Code. Reference: Sections 667.7, 3040 and 3041, Penal Code.

## § 2422. Determination of Suitability.

(a) General. The panel shall first determine whether the prisoner is suitable for release on parole. Regardless of the length of time served, a prisoner shall be found unsuitable for and denied parole if in the judgment of the panel the prisoner will pose an unreasonable risk of danger to society if released from prison.

(b) Information Considered. At all parole consideration hearings for habitual offenders the panel shall consider the information described in Section 2281(b).

(c) Circumstances Tending to Show Unsuitability. The panel shall consider those circumstances listed in Section 2281(c) which the panel finds are appropriate to the case of a habitual offender. The panel may make other findings when warranted by the circumstances of an individual case and reasons are stated in the record.

(d) Circumstances Tending to Show Suitability. The panel shall consider those circumstances listed in Section 2281(d) which the panel finds are appropriate to the case of a habitual offender. The panel may make other findings when warranted by the circumstances of an individual case and reasons are stated in the record.

NOTE: Authority cited: Section 5076.2, Penal Code. Reference: Sections 667.7 and 3041, Penal Code.

## § 2423. Base Term.

(a) General. The panel shall set a base term for each habitual offender who is found suitable for parole. The base term shall be established based on the circumstances of the series of prior and current offenses which resulted in conviction as a habitual offender, considered as a whole. The panel shall set a base term which it finds to be appropriate in an individual case after consideration of the Circumstances in Aggravation listed in Section 2424 and the Circumstances in Mitigation listed in Section 2425, and any other circumstances which appear to be important in the judgment of the panel.

NOTE: Authority cited: Section 5076.2, Penal Code. Reference: Sections 667.7 and 3041, Penal Code.

## § 2424. Circumstances in Aggravation of the Base Term.

Circumstances in aggravation of the base term include but are not limited to:

(a) Criminal History.

(1) The current offense or offenses and the offenses underlying the prior prison terms are violent offenses as defined in Penal Code Section 667.5(c).

Daniel Richards, E-00575
Correctional Training Facility
P.O. Box 689 / East Dorm 8-Up
Soledad, CA. 93960-0689



PRIORITY
MAIL

www.usps.gov

LABEL 107-R, OCT 1997



U.S. POSTAGE
PAID
LOS ANGELES,CA
90031
MAY 23 08
AMOUNT

**$6.75**
00101153-06

0000        94102

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
San Francisco Division
450 Golden Gate Ave. / P.O. Box 36060
San Francisco, CA.
94102-3483